**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **JUSTIN KRAGE, ET AL.,** | **:** | **CIVIL ACTION NO. 5:19-CV-00321-MTT** |
| | **:** | |
| **Plaintiffs,** | **:** | |
| | **:** | |
| **Vs.** | **:** | |
| | **:** | |
| **MACON-BIBB COUNTY GEORGIA,** | **:** | |
| **ET AL.,** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

**BRIEF IN SUPPORT OF MACON-BIBB COUNTY'S**
**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant Macon-Bibb County, Georgia ("the County") hereby respectfully moves for this Honorable Court to grant Summary Judgment in favor of the County as to each and every claim filed by Plaintiffs against the County in the above-captioned matter.

**Introduction**

Plaintiffs are deputized employees of Defendant Bibb County Sheriff's Office ("the BCSO"). They are not County employees. Despite there being no employment relationship between Plaintiffs and the County, Plaintiffs' Complaint alleges that Plaintiffs are entitled to compensation from the County for overtime wages allegedly owed during time Plaintiffs spent "on-call" while working for the BCSO. Plaintiffs' claims are based on an erroneous interpretation and application of the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. § 201 et. seq., and Sections 6.06 and 7.05 of the Macon-Bibb County Government Policies and

Procedures Manual (adopted on December 31, 2013) (the "Manual") and an October 6, 2017 Directive of Sheriff Davis. [Dkt. 1 ¶ 1].

Plaintiffs allege that the FLSA and the Manual entitle them to overtime compensation. Plaintiffs' FLSA allegation is specifically based on 29 U.S.C. § 207 providing that an employee's maximum workweek shall be 40 hours unless the employee receives overtime compensation. The Manual allegation is specifically based on Sections 6.06 and 7.05 of the Manual providing that compensation should be paid to County employees for on-call time.

However, these claims against the County are premised upon the existence of an alleged employment relationship between the Plaintiffs and the County. Such a relationship does not exist and has never existed according to the Georgia Constitution and established case law. Plaintiffs' Complaint and testimony erroneously conflate the County and the BCSO as "employers." In fact, the County and the BCSO are legally separate and distinct entities that are distinguished by their independent governmental functions. Under the Georgia Constitution, they are prohibited from interfering with one another. Therefore, Plaintiffs cannot be County employees.

The County is entitled to summary judgment as to every claim asserted by the Plaintiffs in accordance with case law clearly establishing that the County is not and cannot be the employer of the Sheriff's deputies. Because Plaintiffs' Complaint against the County is completely dependent upon the existence of an alleged employment relationship that does not exist under Georgia law, summary judgment should be granted.[1]

---

[1] The County anticipates that the BCSO will file its own motion showing that Plaintiffs are not entitled to compensation for their standby time while on call.

## Summary Judgment Standard

The summary judgment standard has been consistently stated as follows:

"A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. A factual dispute is genuine only if a reasonable jury could return a verdict for the nonmoving party. The burden rests with the moving party to prove that no genuine issue of material fact exists. The party may support its assertion that a fact is undisputed by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . . . When the nonmoving party has the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim. The moving party simply may show that there is an absence of evidence to support the nonmoving party's case. Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." [2]

## Statement of Undisputed Material Facts

The Plaintiffs are sworn deputies and employees of the BCSO.[3] The Plaintiffs were hired by the BCSO.[4] If the Plaintiffs are ever fired, they can only be fired by the BCSO.[5] The Plaintiffs are paid out of funds in the budget for the BCSO, and Sheriff David Davis has the sole and final authority to determine how the BCSO's budget is spent including the wages that are paid to the Plaintiffs as his deputies.[6]

Because the Plaintiffs are officers of the law, the BCSO has the sole and ultimate authority to determine the time, place, and manner in which the Plaintiffs perform their duties as

---

[2] *Certain Underwriters at Lloyd's London v. Witham*, 139 F. Supp. 3d 1367, 1374 (M.D. Ga. 2015) (internal quotations and citations omitted).
[3] (Krage Dep. 60:4-5); (Renfroe Dep. 15:8-13); (Baker Dep. 11:3-6); (Robinson Dep. 23:11-13); (Thompson Dep. 28:4-8); (Moore Dep. 12:24-13:9); (Shockley Dep. 13:24-12:1); (Vamper Dep. 11:12-14); (Bridger Dep. 20:20-22); (Vann Dep. 14:3-5); (Powell Dep. 20:16-18); (Parrott; 18:18-21); (Joiner Dep. 10:2-5); (Hester Dep. 10:24-11:2); (Miller Dep. 22:25-23:2); (McCane Dep. 16:7-11); (Shurley Dep. 14:6-8); (LeBeuf Dep. 12:8-12); (Malone Dep. 11:13-18); (Putnam Dep. 13:8-13).
[4] (David J. Davis Aff. ¶ 9.)
[5] (David J. Davis Aff. ¶ 9.)
[6] (David J. Davis Aff. ¶¶ 11 & 12.)

Sheriff's deputies.[7] The written rules and procedures governing employee conduct for every department of the BCSO including those in which Plaintiffs are assigned to work, are established by the BCSO with Sheriff David Davis' sole and final approval.[8] The BCSO determines everything from how Plaintiffs are required to dress for work, to how they are required to investigate crimes, interrogate suspects, gather evidence, and comport themselves as officers of the law.[9]

The BCSO exclusively sets Plaintiffs' work schedules.[10] Included in this, the BCSO exclusively determines when Plaintiffs are and are not on-call.[11] The County has never assigned any Plaintiff a job, duty, project, work schedule, or on-call assignment.[12] Such assignments have only ever been given to Plaintiffs by the BCSO.[13]

When the BCSO assigns Plaintiffs to be on-call, the BCSO has the sole authority to determine the rules, restrictions, and requirements placed upon Plaintiffs as on-call deputies.[14] The County has never exercised any authority over the Plaintiffs' on-call duties.[15] For example, the BCSO policies are that while Plaintiffs are on-call, if they are required to respond to a call, they must respond to the call within one hour.[16] The BCSO's one-hour response policy is double

---

[7] (David J. Davis Aff. ¶¶ 5, 6, & 7.)
[8] (David J. Davis Aff. ¶ 5.)
[9] (David J. Davis Aff. ¶ 5.)
[10] (David J. Davis Aff. ¶ 6.)
[11] (David J. Davis Aff. ¶¶ 5 & 7.)
[12] (Krage Dep. 27:2-24); (Renfroe Dep. 32:25-34:35); (Baker Dep. 39:21-24); (Robinson Dep. 42:4-10); (Thompson Dep. 35:19-21); (Moore Dep. 24:4-30:16); (Shockley Dep. 52:23-57:9); (Vamper Dep. 61:14-23); (Bridger Dep. 68:14-69:20); (Vann Dep. 36:25-39:4); (Powell Dep. 24:2-14); (Parrott Dep. 28:1-17); (Joiner Dep. 35:3-39:8); (Hester Dep. 20:5-24:12); (McCane Dep. 23:5-15); (Shurley Dep. 25:6-26:21); (LeBeuf Dep. 27:17-30:11); (Malone Dep. 37:7-10); (Putnam Dep. 24:1-25:20).
[13] *Id*.
[14] (David J. Davis Aff. ¶ 5.)
[15] (David J. Davis Aff. ¶¶ 5 & 7); (Macon-Bibb County Dep. 62:18-63:6).
[16] (Krage Dep. 118:4-16); (Renfroe Dep. 64:8-18); (Baker Dep. 58:3-5); (Robinson Dep. 71:14-18); (Thompson Dep. 47:14-17); (Moore Dep. 40:7-42:20); (Shockley Dep. 35:7-40:20); (Vamper Dep. 37:8-38-25); (Bridger Dep. 40:5-41:17); (Vann Dep. 45:11-47:19); (Powell Dep. 55:4-58:20); (Parrott; 55:24-57:25); (Joiner Dep. 50:22-52:12); (Hester Dep. 38:1-40:4); (Miller Dep. 40:2-9); (McCane Dep. 57:20-59:10); (Shurley Dep. 44:1-45-24); (LeBeuf Dep. 62:21-24); (Malone Dep. 76:1-5); (Putnam Dep.49:22-51:12).

the time allowed by the County's on-call policy which states that on-call employees are required to respond to a call within thirty minutes.[17] Plaintiffs admitted that they have never been required to respond to a call within thirty minutes,[18] and Plaintiffs' supervisors confirmed Plaintiffs' unanimous testimony.[19] No Plaintiff has ever been disciplined or reprimanded for failing to respond to a call within the County's thirty-minute requirement because the Plaintiffs are not County employees.[20] Furthermore, the Manual which contains the County's on-call policy, that has never been enforced against the Plaintiffs, explicitly states, "[t]his manual is for informational purposes only and is not intended as an employment contract or guarantee of benefits."[21]

The BCSO has exercised and does exercise its sole discretion in the administration of on-call policies, and deputies within the different BCSO units have different requirements placed upon them under the authority of Sheriff David Davis.[22] For example, every member of the SWAT team is required to be on-call twenty-four hours per day, every day.[23] However, because there are several SWAT members, every SWAT team member is not required to respond to every SWAT team call out.[24] SWAT team members have discretion to determine when they will respond to a call.[25] This means that SWAT team members can consume alcohol even when they are on-call, and if a call out occurs after they have consumed alcohol, they are permitted to

---

[17] *Id*; (*Compare* Moore Dep. Ex. 11 p. 12 *with* Moore Dep. Ex. 12 p. 111); (Moore Dep. 40:7-42:20,).
[18] *Id*.
[19] (Rutherford Dep. 60:3-62:15); (Senter Dep. 56:2-24); (Davis Dep. 53:4-55:22); (Williams Dep. 40:4-7); (Clausen Dep. 37:20-39:3); (Krage Dep. 118:4-19); (Renfroe Dep. 64:16-18); (Baker Dep. 58:3-8); (Robinson Dep. 74: 25-75:3); (Thompson 47:4-13); (Moore 42:9-20); (Shockley Dep. 37:24-40:20); (Vamper Dep. 38:14-20); (Bridger Dep. 41:8-17); (Vann Dep. 46:2-10); (Powell Dep. 56:4-58:23); (Parrot Dep. 57:6-20); (Joiner Dep. 51:11-22); (Hester Dep. 39:9-40:4); (Miller Dep. 53:8-55:8); (McCane Dep. 58:18-59:4); (Shurley Dep. 45:9-24); (LeBeuf Dep. 77:21-79:11); (Malone 76:1-5); (Putnam Dep. 49:22-51:12).
[20] *Id*.
[21] (Krage Dep. Ex. 4 p. 6).
[22] (David J. Davis Aff. ¶¶ 5 & 7.)
[23] (Senter Dep. 25:9-30:19).
[24] *Id*.
[25] *Id*.

abstain from responding to that call.[26] On the other hand, members of the Criminal Investigation Division are required to abstain from drinking any alcohol any time when they are on-call.[27] The BCSO makes these rules, not the County.[28] The BSCO has discretion to enforce its on-call policies without any regard to or input from the County.

The BCSO is also the only authority that determines what the Plaintiffs are allowed to do when they are scheduled to be on call. When the Plaintiffs are on-call, the BCSO allows them to leave the office.[29] When Plaintiffs are on call, the BCSO allows them to go home, go to church, go to family events, enjoy hobbies, run errands, watch television, cook dinner, do chores, play golf, spend time with their kids, and conduct many more activities unrelated to their employment.[30] The Plaintiffs are allowed to use their issued work vehicle while conducting these out-of-office, personal activities which makes it easier for Plaintiffs to respond if the Plaintiffs have to respond to a call.[31] The Plaintiffs are also allowed to modify their on-call schedules by switching with other deputies and requesting leave in advance of their on-call shifts.[32] The County has no say in what the Plaintiffs are allowed to do or are restricted from doing while on-call.[33] This means that, even though Sheriff David Davis chooses to engage the County for

---

[26] *Id.*
[27] *Id.*
[28] (David J. Davis Aff. ¶¶ 5 & 7.)
[29] (Krage Dep. 140:23-142:20); (Renfroe Dep. 62:3-63:2); (Baker Dep. 54:17-56:25); (Robinson Dep. 30:19-32:5); (Thompson Dep. 41:25-45:16); (Moore Dep. 42:21-43:20); (Shockley Dep. 41:2-4); (Vamper Dep. 57:4-12); (Bridger Dep. 38:21-39:12); (Vann Dep. 48:25-49:16); (Powell Dep. 61:10-62:25); Joiner Dep. (63:4-9); (Hester Dep. 32:25-34:5); (Miller Dep. 62:20-63:5); (McCane Dep. 45:18-48-9); (Shurley Dep. 47:15-49:24); (LeBeuf Dep. 70:22-71:20); (Malone Dep. 76:8-84:6); (Putnam Dep. 51:16-18).
[30] *Id.*
[31] *Id.*
[32] (Krage Dep. 157:17-159:6); (Renfroe Dep. 57:9-59:11); (Baker Dep. 64:3-65:13); (Robinson Dep. 42:21-45:14); Thompson Dep. 58:5-60:10); (Moore Dep. 37:1-22); (Shockley Dep. 59:24-60:7); (Vamper Dep. 45:7-20); (Bridger Dep. 41:22-44:2); (Powell Dep. 60:9-23); (Parrott Dep. 39:24-40:22); (Joiner Dep. 55:19-56:1); (Hester Dep. 60:14-20); (McCane Dep. 51:7-53:17); (Shurley Dep. 53:1-20); (LeBeuf Dep. 81:18-21); (Malone Dep. 72:10-74:4); (Putnam Dep. 46:24-49:3).
[33] (David J. Davis Aff. ¶¶ 5-7.)

administrative assistance and even the procurement of some BCSO equipment such as vehicles,[34] the BCSO has the final say over how the Plaintiffs perform their job duties or use BCSO equipment.[35]

The Plaintiffs' employment relationship with the Sheriff, is constitutional in Georgia, and the County does not and cannot delegate power or authority to the BCSO. The County is an entity completely independent of the BCSO. The BCSO alone can hire and fire its deputies who are considered employees of only the BCSO.[36] O.C.G.A. § 15-16-23 gives the Sheriff exclusive authority to hire deputies. There is no statutory authority or any other law by which the County can hire, employ, or otherwise control a sheriff's deputy. These undisputable facts are well entrenched in Georgia's Constitution, statutes, and case law. [37]

## **Argument and Citation to Authority**

### a. **Summary judgment should be granted to the County because, as a matter of law, Plaintiffs could not have been and were not employed by the County.**

Whether a defendant holds the legal status of an "employer" is a question of law to be resolved by the Court.[38] Summary judgment should be granted as to all of Plaintiffs' claims for unpaid compensation against the County because the County was not and cannot be Plaintiffs' employer.[39] Plaintiffs make the unfounded allegation that Plaintiffs were employed by the County and the BCSO. However, this assertion is legally impossible. Because Plaintiffs are not employees of the County, Plaintiffs' claims against the County should be dismissed.

---

[34] (David J. Davis Aff. ¶ 11.)
[35] (David J. Davis Aff. ¶¶ 5, 6 & 7.)
[36] (David J. Davis Aff. ¶¶ 4 & 9.)
[37] *Cunningham v. Fulton Cty., Georgia*, No. 19-11269, 2019 WL 4795484, at *1 (11th Cir. Oct. 1, 2019).
[38] See *Spears v. Choctaw Cnty. Comm'n*, No. 07-0275-CG-M, 2009 WL 2365188, at * 6 (S.D. Ala. July 30, 2009).
[39] In fact, the County and the BSCO agree that Plaintiff's employer was only the BCSO and not the County. [Dkt. 5 ¶ 2]; [Dkt. 6 ¶ 21].

The law is clear that the County cannot be an employer of a sheriff's deputy under the FLSA. The FLSA defines "employee" as "any individual employed by an employer."[40] An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency,..."[41] To "employ" is defined as to "suffer or permit to work."[42]

To further define the employment relationship, the Supreme Court of the United States has held that a judicial determination regarding an employment relationship under the FLSA should be assessed in light of the "economic reality" of the relationship between the parties.[43] The economic realities test considers the following factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."[44]

The economic realities test has been evaluated in detail by the United States District Court of the Southern District of Alabama in *Spears v. Choctaw County Commission*, when, in a case almost identical to the one at bar, Judge Granade granted summary judgment in favor of Choctaw County.[45] There, a sheriff's deputy brought employment claims against Choctaw County for unpaid compensation seeking relief under the FLSA. The deputy asserted that Choctaw County set certain rules that applied to his eligibility for vacation, sick leave, and other personnel policies. He alleged that Choctaw County issued his paychecks and tax documents, handled payroll and workers' compensation, explained health benefits, and influenced pay rates through the sheriff's budget. These

---

[40] 29 U.S.C. § 203(e)(1).
[41] 29 U.S.C. § 203(d).
[42] 29 U.S.C. § 203(g).
[43] *Spears v. Choctaw Cnty. Comm'n*, No. 07-0275-CG-M, 2009 WL 2365188, at * 6 (S.D. Ala. July 30, 2009)(citing *Goldberg v. Whitaker House Co¬op., Inc.*, 366 U.S. 28, 33, (1961)).
[44] *Id*.
[45] *Id*.

facts are identical to and are as equally insufficient as the facts alleged by the Plaintiffs in this case. Despite such evidence, even interpreted in the light most favorable to the sheriff's deputy, the district court did not find evidence sufficient to support an employment relationship under the economic realities test. The court evaluated every factor pertaining to the employee relationship in painstaking detail, and concluded that, under facts indistinguishable from the present case, "the great weight of the factors support the conclusion that [Choctaw County] is not [the sheriff deputy's] employer."[46]

Both Georgia state law and the economic realities test support finding that the County is not an "employer" of Plaintiffs. Clear Georgia precedent establishes that the "economic realities test" cannot be satisfied, so an employment relationship does not exist. Indeed, "[i]t is well-settled in Georgia that a county and its commissioners are without authority over the sheriff or his deputies."[47] In Georgia, no county has the power to supervise, control, discipline, hire, or fire sheriff's deputies. A county cannot determine the rate of pay or direct the sheriff's department how to spend its budget.[48] Because the law precludes county interference with the employment relationship between the sheriff's office and its deputies, the prongs of the economic realities test cannot ever be satisfied, and a county cannot be considered an employer of a sheriff's deputy.

The fact that separation between the County and the sheriff's office is deeply entrenched in Georgia's law is further evidence that the economic realities test cannot be satisfied. In Georgia, a sheriff "is an elected, constitutional officer; he is subject to the charge of the General Assembly and not an employee of the county commission."[49] In fact, "Georgia's Constitution has created the sheriff's office as a separate entity, the independence of which is protected from certain forms of

---

[46] *Id.*
[47] *Duffey v. Bryant*, 950 F. Supp. 1168, 1174 (M.D. Ga. 1997).
[48] *Griffies v. Coweta Cty.*, 272 Ga. 506, 508, 530 S.E.2d 718, 720 (2000).
[49] *Randolph Cnty. v. Wilson*, 250 Ga. 482, 396 S.E. 2d 903 (Ga. 1990).

encroachment by the county's government."[50] County governing authorities are precluded from controlling or affecting the sheriff's office or its personnel.[51] Moreover, Georgia law explicitly states that "employees of constitutionally elected officers of a county are considered employees of the elected officer and not employees of the county, as represented by the local governing authority."[52] This clear separation, which has been affirmed and reaffirmed multiple times in Georgia, shows that it is impossible for the economic realities test to be satisfied, and an employment relationship cannot exist between the County and Plaintiffs.

The Eleventh Circuit has previously reached this conclusion holding that under Georgia law, a county "does not, and cannot, direct the Sheriff ... how to hire, train, supervise, or discipline his [employees] what polices to adopt, or how to operate his office."[53] Further, "the Northern District of Georgia has thoroughly examined the issue and determined that sheriffs and their officers are not a division or subunit of the county in which they reside or of that county's governing body under the Georgia Constitution and Georgia State Code."[54] There is not a single case in Georgia holding that a County is an employer of a sheriff's deputy under the FLSA.

Case law clearly establishes that a county is not an employer of sheriff's office personnel for the purposes of the FLSA. In *Kicklighter v. McIntosh Cnty. Bd. Of Comm'r*, it was held that McIntosh County is not an employer, for the purposes of FLSA, under the Georgia Constitution.[55] In *Brickey v. County of Smyth*, former county sheriff's deputies failed to show that a county had power to hire or fire them, to set the rate or method of pay, or to supervise or otherwise control them and,

---

[50] *Lawson v. Lincoln Cnty.*, 292 Ga. App. 527, 529, 664 S.E. 2d 900, 902 (Ga. App. Ct. 2008).

[51] Ga. Const. Art IX, §2,¶ 1; *Manders v. Lee*, 338 F.2d 1304, 1311 (11th Cir 2003).

[52] *Boswell v. Bramlett*, 274 Ga. 50, 51, 549 S.E.2d 100 (Ga. 2001).

[53] *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1347 (11th Cir. 2003); *see also Manders*, 338 F.3d at 1308.

[54] *Bennett v. Chatham Cnty. Sheriff's Dep't*, No. cv-406-203, 2008 WL 628908, at *5 n.2 (S.D. Ga. March 5, 2008); *see also Redding v. Tuggle*, No. 1:05-cv-2899-WSD, 2006 WL 2166726, at *6 (N.D. Ga. 2006) ("In the instant case, Clayton County's liability under federal law hinges on whether under state law Clayton County wields control over the sheriff and [his Office] in their employment decision-making functions. The Court finds it does not.").

[55] *Kicklighter v. McIntosh Cnty. Bd. Of Comm'r*, No. 214-088 2016 WL 722157, (S.D. Ga. Feb. 19, 2016).

thus, the county was not employer under FLSA.[56] In *Taylor v. County of Fluvanna*, the court held that the county commission was not an employer under FLSA when it did nothing more than maintain payroll records for sheriff's deputies.[57] And finally, it is instructive to consider the in depth analysis of *Spears v. Choctaw County Commission*, where the court found that a county commission was not an employer of a deputy sheriff under the FLSA because the commission could not hire and fire the plaintiff and did not supervise or control the plaintiff's schedule or conditions of employment despite the fact that the commission determined the rate of pay and maintained employment records of the plaintiff.[58]

In the instant case, Plaintiffs' employment claim is utterly lacking any factual basis demonstrating that the County exercised any authority consistent with the economic realities test. Plaintiffs cannot point to any fact supporting a finding that there would be an employment relationship between Plaintiffs and the County. Thus, summary judgment in the County's favor is entirely appropriate because the County is not an employer under the FLSA.

**b. Under an almost identical fact pattern, the Eleventh Circuit has recently held that a county is not an employer of employees of a sheriff's office, and therefore, a county could not be sued under the FLSA predicated on an employment relationship.**

In *Cunningham v. Fulton Cty., Georgia,* more than 500 current and former employees of the Fulton County Sheriff's Office sued Fulton County for its alleged failure to pay overtime compensation owed under the FLSA and due because of an employment relationship with Fulton County.[59] The sheriff's-office employees also sued the Fulton County Sheriff's Office. The district court granted Fulton County's motion to dismiss finding that the law is clear that an employment

---

[56] *Brickey v. County of Smyth*, 944 F.Supp. 1310 (W.D.Va. 1996).
[57] *Taylor v. County of Fluvanna*, 70 F. Supp. 2d 655 (W.D. Va. 1999).
[58] *Spears v. Choctaw Cnty. Comm'n*, No. 07-0275-CG-M, 2009 WL 2365188, at * 6 (S.D. Ala. July 30, 2009).
[59] *Cunningham v. Fulton Cty., Georgia*, No. 19-11269, 2019 WL 4795484, at *1 (11th Cir. Oct. 1, 2019).

relationship between Fulton County and the sheriff's-office employees cannot exist. The Eleventh Circuit affirmed.[60]

In its opinion the Eleventh Circuit stated "A complaint must 'state a claim to relief that is plausible on its face,' meaning it must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged' to survive a motion to dismiss."[61] The   sheriff's-office employees' complaint was dismissed because "[I]n Georgia, counties delegate no power or authority to sheriffs – they are separate entities independent of the sheriff's office."[62] "Sheriffs alone hire and fire their deputies."[63]   Because of this, the Eleventh Circuit concluded that the sheriff's-office employees could not have been Fulton County employees, and it affirmed the district court's dismissal of the claims against Fulton County.[64]

Here, Plaintiffs' claims are nearly identical to those of the sheriff's-office employees in *Cunningham*. Plaintiffs' claim that the County is liable to them for unpaid compensation under the FLSA and under an alleged employment relationship with the County. But, *Cunningham* supports the conclusion that an employment relationship between the County and Plaintiffs cannot exist. Therefore, by virtue of Plaintiffs' Complaint and all of the facts and evidence in this case, summary judgment should be granted in favor of the County.[65]

**c.  The Manual cannot serve as the basis for finding the existence of an employment relationship, contract, or agreement between the County and Plaintiffs.**

It is unclear whether Plaintiffs have asserted an employment relationship between themselves and the County based on the Manual irrespective of the FLSA. If Plaintiffs have asserted such a

---

[60] *Id*.
[61] *Id*, (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 129 S.Ct. 1973, 173 L.Ed.2d 868 (2009).
[62] *Id*.
[63] *Id*.
[64] *Id*.,
[65] See *Cunningham v. Fulton Cty., Georgia*, No. 19-11269, 2019 WL 4795484, at *2  (11th Cir. Oct. 1, 2019).

claim, summary judgment should still be granted because the Manual cannot be a basis of any such employment relationship.

The Manual clearly states, "[t]his manual is for informational purposes only and is not intended as an employment contract or guarantee of benefits."[66]   A policy or handbook such as this does not create and contract or quasi-contract right.[67] In *Johnson v. Fulton County*, several firefighters brought contract and quasi-contract claims against Fulton County claiming that the Fulton County employee handbook guaranteed certain pay raises. In deciding whether the handbook created any specific or comprehensive terms of employment, the court reviewed the handbook as a whole and relied heavily upon language showing that the handbook was not comprehensive. Accordingly, the trial court granted summary judgment in favor of Fulton County finding that no contract or quasi-contract claims could be based on the handbook.[68]

Here, clear language exists showing that the Manual is not intended to bind the County to any specific terms of employment. The Manual states,

> "This personnel policy manual is being provided to you as source information for a variety of human resources, issues, programs, and policies. This manual is for informational purposes only and is not intended as an employment contract or guarantee of benefits. Macon-Bibb County Government (MBCG) reserves the right to alter, amend, modify, change or delete any of the policies, practices or benefits described in this manual at any time, with or without notice."[69]

This language is clear that the Manual is not intended as a binding contract.

Alternatively, even if the Manual were somehow a contract, it would be void. The *Johnson* court also held that any purported pay requirement set forth in the handbook cannot legally bind future county authorities. Relying on *Int'l Bhd. of Police Officers Local No. 471*

---

[66] (Krage Dep. Ex. 4 p. 6).
[67] *Johnson v. Fulton Cty.*, 235 Ga. App. 277, 277, 509 S.E.2d 355, 356 (1998).
[68] *Id*.
[69] (Krage Dep. Ex. 4 P. 6);

*v. Chatham Cty.*,[70] the court in *Johnson* held that "OCGA § 36–30–3(a) provides that one council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government. The appropriating process is a legislative function and the law prohibits a local governing authority from binding itself or its successors so as to prevent free legislation."[71]

This rule was also upheld in *City of McDonough v. Campbell*,[72] where the City of McDonough entered into an employment contract guaranteeing severance pay to the city's chief building inspector under a previous administration. Upon the election of the succeeding mayor, the city terminated the contract. The building inspector demanded severance, and when it was refused, he sued. The Supreme Court of Georgia found that the building inspector's employment contract was void stating,

> OCGA § 36–30–3(a) provides: 'One council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government.' This prohibition applies equally to both the enactment of ordinances and the execution of governmental contracts. The intent of the prohibition is to allow future municipal governments to legislate freely in matters such as operating budgets. To the extent that a governmental contract impinges on a municipality's ability to legislate freely, the contract is ultra vires and void.[73]

The Supreme Court of Georgia went on to address the policy considerations behind the restriction against binding successor administrations stating,

> The right of future elected officials to carry out the mandate of the electorate by exercising fiscal management must not be limited except by clear and valid legislation. The purpose and effect of the cases which comprise the evolution of this subject matter is to strike a balance in the public interest. On one side of the scale is the practical necessity of long-range commitments and fair dealing by the governing authority with persons contracting with a municipality. On the other side is the necessity of a public policy dictating that one governing authority must not be allowed to impose a long-term mortgage upon the taxable assets of a

---

[70] 232 Ga. App. 507, 508, 502 S.E.2d 341, 342 (1998).
[71] *Id.*
[72] 289 Ga. 216, 217, 710 S.E.2d 537, 538 (2011).
[73] *Id.*

political subdivision without clear and valid enabling legislation. If one city council is allowed to establish a series of pay increases extending to the terms of future councils, the balance of the scale could not be maintained.[74]

Here, the Manual is not a contract. Therefore, it is not binding. But, even if the Manual were a contract, it would be void under O.C.G.A. § 36-30-3(a). Otherwise, the Manual would create long-term relationships with employees limiting the authority of the successor local governments to modify those relationships. For example, if the County were to adopt a new policy manual, employees hired previously by the County under the 2013 Manual could seek to enforce the provisions of the 2013 Manual that would no longer be in effect. This hypothetical "contract right" would directly violate O.C.G.A. 36-30-3(a) by binding future government counsels to previous employment terms such as on-call pay.

## <u>CONCLUSION</u>

For the reasons stated herein and throughout, the County cannot be held liable under the FLSA because it is not the employer of Plaintiffs. By that same token, the County is not bound by any terms of employment with Plaintiffs under the Manual or otherwise because such a relationship is unlawful. Therefore, summary judgment should be granted in favor of the County of all Plaintiff's claims.

**(signatures to follow)**

---

[74] *Id.*

Respectfully submitted,

This the 13th day of May 2021.

/s/ *Duke R. Groover*
DUKE R. GROOVER
State Bar No. 313225
/s/ *G. Grant Greenwood*
G. GRANT GREENWOOD
State Bar No. 309166
/s/ *Christopher R. Conley*
CHRISTOPHER R. CONLEY
State Bar No. 907964
*Attorneys for Macon-Bibb County, Georgia*

JAMES-BATES-BRANNAN-GROOVER, LLP
231 Riverside Drive, Suite 100
Post Office Box 4283
Macon, Georgia 31208-4283
dgroover@jamesbatesllp.com
ggreenwood@jamesbatesllp.com
cconley@jamesbatesllp.com

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on May 13, 2021, I electronically filed this DEFENDANT MACON-BIBB COUNTY, GEORGIA'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT using the CM/ECF system which automatically will send email notification of such filing to the following attorneys of record:

Stephen M. Welsh, Esq.
Buzzell, Welsh & Hill, LLP
200 Third Street
Post Office Box 1017
Macon, Georgia 31202-1017
*Attorney for Plaintiffs*

Virgil L. Adams, Esq.
Dawn Maynor Lewis, Esq.
Adams, Jordan & Herrington, P.C.
577 Mulberry Street, Suite 1250
Macon, Georgia 31202-0928
*Attorneys for Bibb County Sheriff's Office*

This the 13th day of May 2021.

/s/ *Duke R. Groover*
DUKE R. GROOVER
State Bar No. 313225
/s/ *G. Grant Greenwood*
G. GRANT GREENWOOD
State Bar No. 309166
/s/ *Christopher R. Conley*
CHRISTOPHER R. CONLEY
State Bar No. 907964
Attorneys for Macon-Bibb County, Georgia

JAMES-BATES-BRANNAN-GROOVER, LLP
231 Riverside Drive, Suite 100
Post Office Box 4283
Macon, Georgia 31208-4283
dgroover@jamesbatesllp.com
ggreenwood@jamesbatesllp.com
cconley@jamesbatesllp.com