

DEFENDANT'S EXHIBIT 1
PENGAD 800-631 AV 8/4/2020

# Call-Out Log

## 2017

| DATE | TIME | Case Number | Location | Victim | Event Details | Status | Case Officer |
|---|---|---|---|---|---|---|---|
| Jan-2 | | 2017-625 | I-475 South at Eisenhower Pkwy | Michael Dye | Single vehicle crash, driver killed | Investigating | Krage |
| Jan-2 | | 2017-754 | Shurling Dr at Kitchens St | Rasheba Norwood | Near head-on crash with semi, Suburban crossed centerline suspected DUI, Suburban driver killed | Investigating | Renfroe |
| Jan-3 | 8:10 | 2017-1123 | I-16 W at I-75 N | Arthur Francis | Rear end between two commercial trucks, driver killed | Investigating | Renfroe |
| Jan-9 | | 2017-3495 | Jeffersonville Rd at Millerfield Rd | Sheena Hogan | DUI driver crossed centerline trying to stop woman driving an Explorer with a male passenger both were involved with. DUI driver killed | Investigating | Renfroe |
| Jan-14 | | 2017-5596 | Bass Rd at Winchester Dr | Christopher Gavin | GSP took call from Riley | No Further Action | GSP 326 |
| Jan-22 | | 2017-8596 | I-75 S at Hardeman | Shannon Cadwell | GSP took call as I was enroute. LT Davis authorized | No Further Action | GSP 326 |
| Jan-31 | | 2017-12043 | Pionono Ave at Pionono Dr | Michael Hughes | PED crossing in darkness | Investigating | Renfroe |
| Feb-1 | | 2017-12439 | Eisenhower Pkwy at Harrison Rd | Sharri Barfoot | PED UI, crossing in darkness, walked directly in path of vehicle | No Further Action | TOT Patrol |
| Feb-6 | | 2017-14228 | Shurling Dr at Print Pl | Anne Kamar | Vehicle failed to yield while making left turn, driver killed | Investigating | Renfroe |
| Feb-12 | | 2017-16714 | Gray Hwy at Lexington St | Charles Collier | Vehicle failed to yield when turning out of Burger King, driver killed | Investigating | Renfroe |
| Feb-21 | | 2017-020108 | I-16 E Mile 4 | Abby Baggett | 4 car wreck on I-16, vehicles stopped for construction, Ram hauling trailer plowed into cars. | Investigating | Krage |
| Feb-21 | | 2017-20206 | Nisbet Rd at Chambers Rd | Victor Bravilo | PED UI, ran out in front of vehicle, PED involved in a domestic | No Further Action | TOT Patrol |
| Mar-1 | 6:53 | 2017-22978 | Pionono Ave at Dewey St | John Michael Neal | PED crossing in darkness | Investigating | Renfroe |
| Mar-3 | 7:21 | 2017-23607 | 2242 Ingleside Ave | Alta Foster and Fetus | Single vehicle crash, driver killed | Investigating | Renfroe |
| Mar-4 | | 2017-24361 | Plantation Way at Peake Rd N | Jennifer Tidwell | PED in roadway | No Further Action | TOT Jeff Howell |
| Mar-11 | | 2017-27279 | Rocky Creek Rd at Jennifer Dr | UNK | Single vehicle overturn, no serious injury. | No Further Action | TOT Patrol |
| Mar-16 | | 2017-29116 | Shurling Dr at Walnut Creek Rd | Mary King | T-Bone w/commercial vehicle, driver killed | Investigating | Renfroe |
| Apr-6 | | 2017-31501 | Jean St at Mathis St | Jeremy Perron | ATV rider lost control and overturned | Investigating | Krage |
| Apr-20 | | 2017-43822 | 700 block Forest Hill Rd | Jacquelena Valentine | Severely autistic child ran out into traffic, Vic pushed child out of the way and was hit herself | Investigating | Krage |
| Apr-20 | | Unknown | US 80 in Lizella | Unknown | Initially requested by SGT Patel for saturation. Cancelled when GSP 179 arrived and advised he would work the crash | No Further Action | TOT GSP 179 |
| Apr-20 | | Unknown | Baconsfield Kroger | PED | Called by Cpl Smathers. He asked if we had to be notified of every PED crash with injuries. He advised there were no serious injuries. | No Further Action | Cpl Smathers |
| Apr-25 | 8:40 | 2017 | 247 at Broadway | Unknown | Assist Deputy Jeff Howell in skid analysis | No Further Action | Dep Howell |
| Apr-30 | | Unknown | 75 | Unknown | Called by Cpl Dunn. Asking for advise on how to handle a crash involving a towed vehicle | No Further Action | Cpl Dunn |
| May-6 | | 2017-50978 | 3500 Riggins Mill Road | Melissa Reid | Reid turned in front of another car causing near head-on crash. Crack pipes found, Blood drawn by Dep Howell | No Further Action | Dep Howell |
| May-9 | | 2017-051392 | I-75 SB at Hardeman Ave | Johnny Hughes | Dodge interupted brake down in traffic. Motorcycle rear ended the Dodge. Motorcyclist very critical. | Investigating | Krage |
| May-19 | 8:44 | 2017-55676 | I-75 SB at Hartley Bridge Road | Portia Krebely | Single veh, RV driver fell asleep, struck median wall, overturned then caught fire. Passenger was flown to Augusta Burn Center where she passed 5/21/17 | Investigating | Krage |
| May-26 | | 2017-58553 | Tom Hill Sr Blvd | Charles Ray Brown | Ped in roadway, tahoe pulls out from Star Bucks in front of a car, slam avoids Tahoe but strikes ped | Investigating | Renfroe |
| May-26 | | 2017-058741 | I-75 South at Hartley Bridge Road | Mary Frum | Elderly driver appears to have a medical event, Toyota Rav 4 behind her tries to avoid but slips bumps of Honda, Honda slides into trees | Investigating | Krage |
| May-27 | | 2017-59201 | Hawkinsville Road [247] at Avondale Mill Road | Janice Outlaw | Semi truck making left turn onto Avondale Mille Road with green arrow, Van runs red light hitting the trailer, front seat passengers of van deceased | Investigating | Krage |
| Jun-18 | | 2017-69000 | Riverside Dr at I-475 S (Butler Toyota) | Alfred Haut | Singer car crash. Driver speeding, lost control, overturned and was ejected. Driver killed, no passengers | Investigating | Krage |
| Jun-27 | | 2017-72567 | Lake Tobosofkee at Moseley Dixon Rd | George Lloyd | Boater crashed his boat into the shore, DUI | Investigating | Krage |
| Jun-30 | 1:15 | 2017-73587 | I-475 North mile 4 | Judith Stacy | SUV crashed on the shoulder, family tried to run to the other side of the highway. Woman struck and killed by 18-wheeler | Investigating | Krage |
| Jul-6 | 5:00 | N/A | N/A | N/A | Lt Rutherford called Renfroe asking for FARO scanner, we don't have it yet. | N/A | Renfroe |
| Jul-7 | 8:30 | 2017-73205 | Fulton Mill Road near Clayts Circle | David Lawing | Ped ran out in front of vehicle. Serious injury | Investigating | Krage |
| Jul-11 | 6:00 | 2017-78246 | Hawkinsville Road near Allen Road | Christopher Todd | motor scooter driver lost control, struck by vehicle, while on ground was struck a second time by unknown vehicle. | Investigating | Krage |
| Jul-11 | | 2017-78460 | I-16 East at Ocmulgee East BLVD exit 6 | Multiple fatalities | 18-Wheeler drove into stopped traffic killing 4 people | Investigating | Krage |
| Jul-28 | | 2017-85726 | Eisenhower Pkwy at Second St | Michael Williams | dump truck struck PED crossing at intersection. PED seriously injured | Investigating | Krage |
| Jul-29 | | 2017-86327 | Wesleyan Dr behind 5050 Riverside Dr | Unknown | Head-on collision, at fault driver deceased | Investigating | Renfroe |
| Aug-14 | 2:30 | 2017-92719 | 4285 Pionono Ave | Richard Moore | driver struck curb. Exited vehicle, slipped and fell striking his head on curb | TOT Patrol | Beltran |
| Aug-19 | | 2017-95080 | Napier Ave | Ella Russel | PED non-fatal. Renfroe called to | Investigating | Renfroe |
| Aug-21 | | 2017-95925 | Vineville Ave at Brookdale Ave | | SUV turned left from right lane, striking motorcycle in left lane. Motorcycle seriously injured | Investigating | Moseley |
| Sep-2 | | 2017-100725 | Emery Hwy by Mike Adam's | Russia Little | Ped walking on dark roadway in dark clothing, struck by car | Investigating | Krage |
| Sep-7 | | 2017-102600 | Broadway at Estaville Ave | Cynthia Wade | Driver lost control, struck corner of building. Passenger seriously injured | Investigating | Krage |
| Sep-21 | | 2017-108099 | I-75 N at I-475 N | Heather Harrod | Driver lost control, went airborne from I-475 N, landing on I-75 N, Ejected | Investigating | Krage |
| Sep-22 | | 2017-109331 | 175 S between Arkwright and Pierce | Jon Lott | driver struck rear of slow moving 18 wheeler | Investigating | Renfroe |
| Sep-24 | 2:45 | 2017-110034 | I-75 N at Sardis Church Road | Bradford Johnson | ped in roadway, left disabled vehicle on shoulder and began walking across the Interstate when he was hit by an 18 wheeler | Investigating | Renfroe |
| Sep-25 | | Unknown | Poplar St train tracks | Unk | scanned scene for CID | TOT CID | Shirley |
| Sep-29 | | 2017-110523 | I-75 S at Sardis Church Road | Johnny Daniel | Ped exited family car, mentally unstable, attempted suicide by running in front of a van. Family witnessed | Investigating | Krage |
| Sep-30 | | 2017-112716 | Ogelsbee Place | Tommy Glover | nonfatal, motorcycle traveling high rate of speed, struck car backing out of driveway | Investigating | Renfroe |
| Nov-8 | | 2017-124380 | Gray Hwy at Graham Road | Frank Pittman | PED walked out in front of vehicle. Dark, no lights. PED deceased | Investigating | Moseley |
| Nov-8 | | N/A | Napier Ave | Unknown | Assisted Monroe County and GSP with crash resulting from 10-80. | TOT GSP | Trooper Story |
| Nov-9 | | 2017-128885 | I-475 S at Thomaston Road | Casey Daniely | Vehicle struck by stolen 18-wheeler. Crashed into trees and Daniely seriously injured. 18-wheeler fled the scene. | Investigating | Moseley |
| Nov-19 | | 2017-132651 | Bass Rd near Mabel White Church | Stephen Thomas | Commercial box truck lost control and struck a power pole | Investigating | Renfroe |
| Nov-19 | | 2017-132762 | Private drive off Joe Tamplin Blvd | Marcus Threatt | Motorcyclist was "trick riding", lost control of his motorcycle and was thrown | Investigating | Renfroe |
| Nov-27 | | 2017-135694 | I-75 S at Sardis Church Road | Jecovesia Hayward | Toyota drifted onto shoulder and struck parked 18-wheeler. Front seat passenger ejected and deceased | Investigating | Renfroe |
| Dec-1 | 0:27 | 2017-136906 | Forsyth St at Hardeman Ave | Nathaniel Clowers | Called by Cpl Dunn. Advising of crash but did not call to scene. | tot | patrol |

| DATE | TIME | Case Number | Location | Victim | Event Details | Status | Case Officer |
|---|---|---|---|---|---|---|---|
| Dec-11 | 8:18 | 2017-140735 | I-75 S at Pionono Avenue | Cornelius Eble | Driver lost control exiting interstate. Traveled off road, fell into swamp. Landed inverted. Driver drown in his seatbelt. | Investigating | Koage |

# Call-Out Log

### 2019

| DATE | TIME | Case Number | Location | Victim | Event Details | Status | Case Officer |
|---|---|---|---|---|---|---|---|
| Jan-8 | | 2019-1825 | Hartley Bridge Near Houston Rd | Ralph Doani | PED walking in roadway struck by car. NON-Fatal | Complete | Renfroe |
| Jan-15 | 1:45 | 2019-5069 | Pio Nono Ave at Pio Nono Cir | Vickie Parks | PED attempting to flag down a truck. Truck struck her and left. Hit & Run | Investigating | Krage |
| Jan-24 | 6:20 | 2019-8254 | Allen Rd | Michael Brown | PED dancing in the middle of the road struck by pickup struck. NON-Fatal | Complete | Renfroe |
| Feb-1 | | 2019-11023 | Wesleyan Dr at Rivoli Dr | Norman Havill | Suspected DUI driver ran the stop sign on Wesleyan Dr, crossed Rivoli and went airborne off the embankment. He landed by the railroad and died at Navicent | Complete | Krage |
| Feb-16 | | 2019-16937 | Mercer University Dr at Summerhill Dr | James Spicer | SUV turned onto Mercer from Summerhill. 280 feet beyond the intersection she was hit in the rear by a speeding vehicle. NON-FATAL | Complete | Krage |
| Feb-25 | 3:30 | 2019-19920 | 4770 Pio Nono Ave | Antonio Lowe Jr | Vehicle could not maintain the curve from 247 onto Pio Nono. Lost control and hit a sign pole. | Complete | Renfroe |
| Mar-9 | | 2019-24505 | 2700 Block of Napier Ave | Marcus Cacewell | Single vehicle collision, lost control of his vehicle attempting to navigate a right hand curve. Left the roadway and struck a large tree. Died at the scene. | Complete | Krage |
| Mar-9 | | 2019-24521 | Mercer Uni @ N Atwood Dr | 2 Gichael Brown | PED Brown was attempting to cross Mercer University Dr. | Complete | Krage |
| Mar-9 | | 2019-23447 | Hartly Bridge @ I-75 South | Felton Tyler | A GMC attempted a left hand turn from Hartly Bridge onto I-75 south. A Dakota traveling the opposite direction struck the GMC in the intersection. | Investigating | Renfroe |
| Mar-15 | | 2019-26795 | Eisenhower at Fulton Mill | William Trice | A Chevrolet Impala turned left in front of a F-150 and was hit. Impala driver critically injured. | Investigating | Krage |
| Mar-16 | | 2019-27163 | I-75 S @ Eisenhower | Samuel and Judy Simmons | Driver, Samuel, appeared to have a medical event which caused him to leave the road and hit a tree. He died at the scene. Judy died later at Navicent. | Complete | Krage |
| Mar-25 | | 2019-30545 | Jeffersonville Rd near Millerfield Rd | Charlton White | PED was walking down Jeffersonville Rd in a lane of travel. Poor lighting conditions as well as heavy rain. Struck by RAM 1500. Ped died at the scene. | Complete | Krage |
| Mar-28 | | 2019-31358 | Hartley Bridge Near Barfield Rd | John Jones | John Jones attempted to back out of his driveway. Ember traveling on Hartley Bride was unable to stop and struck the vehicle. NO-FATAL | Complete | Krage |
| Mar-30 | | 2019-32373 | Sardis Church Rd @ Frank Amerson Pkwy | LeRie Henderson | Motor traveling west on Sardis Church struck a Jeep making left hand turn from Frank Amerson Pkwy onto Sardis Church. | Investigating | Renfroe |
| Mar-31 | 2:00 | 2019-32462 | Hawkinsville Rd near the county line | Nacarya Gallemore | Honda Accord reportedly traveling at a high rate of speed left the roadway and ejected the driver. Driver died on scene. | Complete | Krage |
| Apr-10 | | 2019-36531 | Eisenhower Parkway at Log Cabin Drive | Felicia Stribling | Jonathon Conlan ran his red light and hit Stribling. Conlan was DUI and charged with DUI and Serious Injury by Vehicle | Complete | Krage |
| Apr-13 | | 2019-37361 | Eisenhower Parkway at Lavetta Drive | Anthony Neal | Neal was on a motorcycle when a car pulled out in front of him. Speed is suspected on the motorcycle. Neal died at the scene. | Investigating | Krage |
| Apr-14 | | 2019-38293 | 3401 Houston Avenue | 5 year old | A 5 year old ran out into the road after a ball. He ran into the side of a car and was run over by this tire. Child stable and nearly uninjured | TOT Dep Wasztyl | Wasztyl |
| Apr-24 | | 2019-42230 | Emery Hwy at Lakeside Dr | Eric Ashley | A car turned left in front of Ashley's motorcycle. They collided and Ashley did not survive. | Complete | Renfroe |
| May-3 | | 2019-45930 | I-75 S between Eisenhower and Rocky Creek | Torrence Lockhart | A SUV driven by Lockhart blew a tire and lost control. He traveled into the shoulder where he hit a tree and caught fire. | Complete | Krage |
| May-17 | | 2019-51707 | Bloomfield Road | Armled Reeves | A bicycle was crossing Bloomfield Road when the was hit by a car. The car was driven by Logan Yarbrough and was speeding. | Investigating | Krage |
| May-24 | 0:00 | 2019-54252 | 3500 Mercer University Drive | Roland Holt | Holt crossed the centerline and went head on with a Jeep Cherokee. Holt had been drinking at Sparks and died at Navicent. | Investigating | Renfroe |
| May-28 | 0:00 | 2019-56145 | Rocky Creek @ St Charles Pl | Sherrod Fuller | Fuller crossed the center line into oncoming traffic and struck a Coca-Cola delivery truck | Investigating | Renfroe |
| Jun-4 | | 2019-59039 | Mercer Rd at Griffin Dr | Augustine Vega | PED Vega stepped into the road to retrieve a ladder and was hit and killed. | Investigating | Krage |
| Jun-7 | | 2019-60404 | First Ave at Monroe St | Juvenile | Crash related to a pursuit by Sgt Johnson. We responded but turned over to GSP. | T.O.T. GSP | TPR Moskaly |
| Jun-10 | | 2019-61475 | 4300 Block of Pionono | Henry Brown | PED Brown was intoxicated and in the lane of travel. He was hit by Arthur Shellman who left the scene but turned himself in the next morning. | Investigating | Krage |
| Jul-4 | | 2019-70815 | 1500 Block Barton Ave | Shonqueankay McAdoo | McAdoo was the passenger on a motor scooter which was hit by an SUV driven by Broderick Pinson. Pinson was arrested for DUI by Sgt Johnson HEAT. | Investigating | Krage |
| Jul-20 | 6:30 | 2019-76744 | Natchez Trace | Robert Bryan | Single vehicle crash, driver lost control of his moped and crashed. | Investigating | Moseley |
| Jul-20 | | 2019-76847 | Bloomfield Rd and Brownley | Ava Harris | Vehicle contained 6 children ran a red light and hit a car turning left. Serious Injury to a 9 year old. | Investigating | Renfroe |
| Aug-8 | | 2019-86031 | Hawkinsville and Houston Rd | Victoria Phillips | Single vehicle crash, driver lost control and overturned | Investigating | Renfroe |
| Aug-17 | | 2019-87503 | Mercer U @ Macon Mall | Stacy Harris | A Lexus Rx350 made a left hand turn into the Macon Mall. Harris struck the side and later died at the Hospital. | Investigating | Krage |
| Aug-17 | | 2019-87583 | Riverside Dr near New Mall | William Peyton Jr | Single vehicle crash. Driver lost control in a curve and his infant was seriously injured. Driver charged with Too Fast for Conditions by Dep Holmes. | Closed, T.F.C citation | Krage/Holmes |
| Sep-4 | | 2019-94043 | 6000 block Bethel Church Rd | Infant Lowe | A car pulled out from a stop sign, failing to yield to a motorcycle. Motorcycle was not speeding and driver of the car (Jody Woodard) charged with VM2. | Investigating | Krage |
| Sep-9 | | 2019-95634 | Holley Rd at S Lizella Rd | Dontreal Lewis | | Investigating | Krage |
| Sep-11 | 7:00 | 2019-96228 | Pierce Ave near Riverside Dr | Jason Simmons | PED walked out directly in front of a car with disregard to a warning by a witness that a car is coming. PED died a few days later at Navicent. | Investigating | Krage |
| Sep-13 | | 44-0067-2019 | Forest Hill Rd | Joseph Masluk | Single car crash. Mercer Uni student. GSP Trooper Staff was first on scene and handled the crash. | TOT GSP | TPR Staff |
| Sep-26 | | 2019-101843 | Gray Hwy at Hall St | Carol Reese | PED walked out into traffic and was hit. | Investigating | Renfroe |
| Sep-29 | 9:00 | Unk | Houston Ave at Rocky Creek | Unk | Motorcycle driving recklessly ran into a truck. Sgt Chris Paul called asking for input and decided to handle it himself. | Investigating | Sgt Paul |
| Sep-29 | 9:30 | 2019-102788 | 247 Southbound near the county line | Emanual Tidwell | Jessy Tidwell lost control of his car and crashed into the woods. His 10 year old son was killed | Investigating | Krage |
| Oct-12 | 5:50 | 2019-107555 | I-75 N just before I-16 | Ashley Levanich | PED darting in and out of traffic. Recently released from psych at Navicent. Terry Payne arrested for Hit and Run. | Investigating | Krage |
| Oct-28 | | 2019-113382 | I-75 at Hardeman Ave | Unk | PED crash on the Interstate. GSP 179 Moskaly handled. | Closed | GSP 179 |
| Oct-30 | 7:45 | 2019-113793 | 7600 block Hawkinsville Rd | Rodriequs Roberson | Driver had a medical event and crossed the center line. He went nearly head-on with another car. Driver was nearly injured. | Investigating | Krage |
| Nov-8 | | 2019-117316 | Mercer Uni Dr near Ebenezer Church Rd | Debra and Daniel Davis | Two PEDS stepped off the center median into the path of an SUV. SUV driver swerved but still hit the PEDs. | Investigating | Krage |
| Nov-8 | | 2019-117350 | Jones Rd at J Drive | Wilber Gildersleeve | A car left it's stop sign turning left in front of a motorcycle. Motorcyclist died the following Monday at Navicent. | Investigating | Krage |
| Nov-27 | | 2019-123980 | 3200 Block Mercer University Drive | unborn child | Tiesha Reynolds turned left into front of a car when appears to have been speeding. Her unborn child did not have a detectable heart beat at the hospital. She delivered the child deceased. | Investigating | Krage |
| Dec-2 | 0:30 | 2019-125381 | I-475 N at I-75 N | Emily Ortiz Mira | Single vehicle rollover. Driver swerved into guard rail. 5 month old Emily was not properly restrained and ejected. | Investigating | Renfroe |
| Dec-5 | | 2019-126532 | I-75 N at Hartelybridge | Anthony Andrews | Acura was traveling south in the north lanes. Navicent technicians party at Sharp bub and got on I-75 traveling south in the north lanes. He collided with and seriously | Investigating | Krage |
| Dec-8 | | 2019-126023 | 1100 block Gray Highway | Robert King | Ped King was crossing Gray Highway when he was hit by BSO LT. | Investigating | Krage |

48

# Call-Out Log

## 2020

| DATE | TIME | Case Number | Location | Victim | Event Details | Status | Case Officer |
|---|---|---|---|---|---|---|---|
| Jan-8 | | 2020-2473 | 247 and Allen Rd | Seth Backham | PED walking in left turn lane hit by car. PED admitted fault at hospital. | Open | Krage |
| Jan-14 | | 2020-4062 | Forest Hill Rd at Glenbrook Rd | Andrew Emory | Medical event caused vehicle to leave the road and go into a ditch. Driver deceased at scene. | Open | Krage |
| Jan-14 | | 2020-4720 | 247 and Walden Rd | Mia Cumbie | Cumbie failed to yield on a left turn onto 247 causing the crash. Cumbie seriously injured. | Open | Renfroe |
| Jan-28 | 6:30 | 2020-4549 | Riverside Dr at I-75 S | William Money Jr | Car entering I-75 S entrance ramp turned in front of motorcycle. Speed suspected on the motorcycle. | Open | Krage |
| Jan-31 | | 2020-10306 | 5500 block Hawkinsville Rd | Christopher Easton | PED in the center turn lane of 247 in the dark, unlighted, and wearing dark clothing. Pick-up truck crosses the center turn lane to enter south bound traffic and hits the PED. | Open | Renfroe |
| Feb-7 | | 2020-13148 | Hartley Bridge at School Rd | John Abbott | A RAM truck swerved to avoid another car and hit a Honda flt head on. Mr Abbott was seriously injured. | Open | Renfroe |
| Feb-17 | 1:55 | 2020-16650 | Napier Ave near Habersham Ave | Shakayla Hill | Juveniles in a stolen car ran from Deputies and crashed. 14 yead old female was ejected and killed. Driver Lecedric Gray charged with Murder. | Open | Krage |
| Feb-20 | | 2020-17831 | Wimbish Rd at Stanton Blvd | Delores Austin | Medical event caused vehicle to leave the road and go into a ditch. Driver deceased at scene. | Open | Renfroe |
| Mar-13 | | 2020-25559 | 550 Gray Hwy | Robert Williams | Ped struck while crossing the street near Mcdonalds | Open | Krage |
| Mar-15 | | 2020-26246 | Arkwright Rd @ Arkwright Dr | Elton Odom | Moto lost control on a corner and landed by train tracks. | Open | Krage |
| Mar-18 | | 2020-26643 | Forsyth Rd near Rivoli Dr | Kenterrous Taylor | Responding to a call, driver lost control of vehicle. | Open | Krage |
| Mar-23 | | 2020-28855 | 125 Embassy Ct | Joan Bonnat | Ped exited her vehicle while in drive and the vehicle rolled over her. | Open | Renfroe |
| Apr-9 | | 2020-34534 | Eisenhower @ Houston Ave | Carlos Coleman | Lincoln Towncar on Houston Ave struck Nissan truck on Eisenhower. Killed Passenger in Towncar | Open | Renfroe |
| Apr-19 | | 2020-37843 | I-75 at I-475 North | Justice McGriff | Driver lost control of vehicle while changing lanes. Vehicle struck railing and overturned ejecting two rearseat passengers, killing one. | Open | Renfroe |
| Apr-30 | | 2020-41388 | I-75 N at MM 171 | Clifford Scott | Scott having vehicle mechanical issues stalled out on interstate. ER Semi rearended the vehicle. | Open | Renfroe |
| May-8 | | 2020-44080 | 4381 Tom's Mart | Robert Williams | Driver pulls into Toms Mart for Williams to use the restroom. On attempting to enter the vehicle, falls under the vehicle and gets run over. | Open | Krage |
| Nov-10 | | 2020-44087 | 7200 Block Zebulon Rd | Cherry Welker, Kensley Foster | Traveling at a high rate of speed left the roadway and went sideways. | Open | Krage |
| May-17 | | 2020-47618 | I-475 N mm 5 | Sammie Edwards | vehicle becomes disabled in the roadway. Another vehicle avoided a collision and struck a wall, the driver got out to check and was struck by another vehicle. | Open | Krage |
| May-27 | | 2020-51139 | Sardis Church Rd @ Barfield Rd | Xander Abshire, Kimberly Hampton | Stolen truck traveling on Sardis Church Rd exits roadway and ejects 2. 2 dead 1 serious injury. | Open | Renfroe |
| | | | | | | | |
| | | | | | | | |

19



# Office of the Sheriff • Bibb County, Georgia

# Sheriff David J. Davis

P.O. Box 930 • Macon, Georgia 31202-0930 • (478) 746-9441
*www.bibbsheriff.org*

**TO:**     All Bibb County Sheriff's Office Personnel

**FROM:**  Sheriff David J. Davis

**DATE:**   October 6, 2017

**RE:**     **DIRECTIVE / ON CALL PAY GUIDELINES**

Effective Sunday, October 8, 2017 Civilians, Deputies, Corporals, Sergeants and Lieutenants will be eligible for "Stand-by" pay if they are required to be on call.

1. On call status may be assigned to Bibb County Sheriff's Office employees only by supervisors holding the rank of major or higher.

2. An employee who is required to be on call will be eligible for two additional "stand-by" hours, paid at his/her regular hourly rate, for each week day on which he/she is on call.

3. An employee who is required to be on call will be eligible for four additional "stand-by" hours, paid at his/her regular hourly rate, for each Saturday, Sunday or Holiday he/she is on call.

4. On-call time ("Stand-by") is not time actually worked and will not be considered when calculating overtime.

5. The rate of pay for actual work time while on call shall be in accordance with MBCG pay policy regarding overtime pay. An employee who has not met the threshold for required overtime shall be paid his/her regular rate until he/she meets the required threshold.

6. On call pay is determined on a daily basis. If on call and not physically called out, then stand by pay is recorded for that day. In the event the on-call employee must respond to a call during the on-call time, he/she will subtract the time spent responding to the call from the "stand-by" allowance for that day. If a "stand-by" balance remains, the employee will be paid his/her regular hourly rate for the "stand-by" balance, and additional regular or overtime for the actual time spent responding to the call.



**DEFENDANT'S EXHIBIT**
2

(Ex. 1: An employee is on call on a Tuesday, during the work week, receiving 2 hours "stand-by" pay, and is called into work. The employee works 3 hours. The employee will be paid additional regular or overtime for 3 hours worked, and will not be paid any "stand-by" pay.)

(Ex. 2: An employee is on call on a Saturday, receiving 4 hours "stand-by" pay, and is called into work.  The employee works 3 hours.  The employee will be paid additional regular or overtime for 3 hours work, and will be paid regular time for 1 hour of "stand-by" pay.)

7. On call pay is not affected by additional hours worked which are directly adjacent to the employee's regularly scheduled work day.  Such hours are not subtracted from the "stand-by" allowance for that day.

_____
Sheriff David J. Davis

DJD/ej

**Thompson, Jesse**

| | |
|---|---|
| **From:** | Gresham, Cindy |
| **Sent:** | Friday, October 13, 2017 3:50 PM |
| **To:** | BSO - All Users |
| **Subject:** | Update: On-call pay |

**Since the announcement of a new on-call policy for Bibb County Sheriff's Office personnel, numerous unanticipated concerns have arisen.**

**In order to insure fairness to all, we are turning to the County attorneys for advice before proceeding. Until this process has been completed, the on-call policy, as well as on-call pay for ALL BCSO employees, is suspended until further notice.**

*Cindy Gresham*
*Executive Assistant to Sheriff Davis*
Bibb County Sheriff's Office
P. O. Box 930
Macon, GA 31202-0930
Phone: (478) 621-5601
Fax: (478) 621-5561
cgresham@maconbibb.us

The information contained in this email message is privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is unlawful and strictly prohibited. If you have received this communication in error, please immediately delete it from your computer and notify the sender, by replying to the message.

1



DEFENDANT'S
EXHIBIT
3

DEFENDANT'S EXHIBIT
4
PENGAD 800-631-6989



**Macon-Bibb County Government**

# Policies and Procedures Manual

*Approved and Adopted, December 31, 2013*

Krage, et al-000219

**SECTION 4:  PERFORMANCE MANAGEMENT** ....................................................61

4.01   Disciplinary Action ..................................................................................62

4.02   Employee Problem Solving Procedure .....................................................74

4.03   Evaluations and Compensation Decisions................................................85

**SECTION 5:  EMPLOYEE BENEFITS**.................................................................91

5.01   Employee Assistance Program..................................................................92

5.02   Employee Service Awards.........................................................................93

5.03   Health and Welfare Benefits .....................................................................94

5.04   Holiday Pay ...............................................................................................98

5.05   Retirement Benefits .................................................................................100

**SECTION 6:  EMPLOYEE RESPONSIBILITIES** ..............................................101

6.01   Arrest, Indictment, Conviction...............................................................102

6.02   Attendance and Absenteeism...................................................................104

6.03   Customer Service ....................................................................................107

6.04   Employee Dress Code..............................................................................109

6.05   Health and Safety....................................................................................110

6.06   On Call Policy.........................................................................................111

6.07   Second Jobs ............................................................................................112

6.08   Solicitation .............................................................................................113

6.09   Tobacco Use And Cessation ...................................................................115

6.10   Travel .....................................................................................................116

6.11   Work Place Violence ..............................................................................126

6.12   Zero Tolerance Drug and Alcohol Free Workplace ...............................128

**SECTION 7:  COMPENSATION**.........................................................................140

7.01   Anniversary Date and Bridging of Service .............................................141

7.02   Compensatory Time ................................................................................142

Approved and Adopted, December 31, 2013                    MBCG Policies and Procedures

Krage, et al-000221

## SECTION 1:  MACON-BIBB COUNTY GOVERNMENT

| POLICY | NUMBER |
|---|---|
| Introduction | 1.01 |
| Applicability of Policies | 1.02 |
| Constitutional Officers, Elected Officials and Their Employees | 1.03 |
| Election of Coverage by Constitutional Officers or Elected Officials | 1.04 |
| Equal Opportunity Employment and Harassment Policies | 1.05 |
| Code of Ethics | 1.06 |
| Open Door Policy | 1.07 |
| Emergency Procedures | 1.08 |
| Inclement Weather | 1.09 |

Krage, et al-000223

## 1.02

# APPLICABILITY OF POLICIES TO THE OFFICES OF CONSTITUTIONAL OFFICERS AND INDEPENDENT ELECTED OFFICIALS

It is the policy of the MBCG that where Constitutional Officers and independent elected officials wish for the employees of their respective offices to be covered by this Policies and Procedures Manual, a written election form shall be completed by such officials and submitted to the Mayor and County Commission for consideration and approval.

If employees of Constitutional Officers or independent elected officials desire to determine whether a particular official has opted in to this Manual, they may do so by contacting the Human Resources Department.

Krage, et al-000225

**1.04**

# ELECTION OF COVERAGE BY A CONSTITUTIONAL OFFICER OR INDEPENDENT ELECTED OFFICIAL

I hereby make the following election regarding the MBCG Policies and Procedures Manual (select ONE):

☐ I elect to have the employees of my office be governed by and subject to all terms of the MBCG Policies and Procedures Manual; **OR**

☐ I elect to have the employees of my office be governed by and subject to the terms of the MBCG Policies and Procedures Manual, **EXCEPT** the sections relating to hiring, discipline, and the MBCG Employee Problem Solving (grievance) Procedure; **OR**

☐ I elect **NOT** to have the employees of my office be governed by and subject to the terms of the MBCG Policies and Procedures Manual. I understand that by making this election, MBCG is not responsible for administering any employment policies and procedures of my office.


_____

*Signature*


_____

*Printed Name*


_____

*Elected Office*


_____

*Date*

Approved and Adopted, December 31, 2013                    MBCG Policies and Procedures

Krage, et al-000227

## 1.05

The Human Resources Director shall serve as the Equal Employment Opportunity Officer and shall, in that capacity, be authorized to investigate complaints of discrimination or violations of this policy.

**Managerial accountability for equal employment opportunity**
In order to insure the accountability of supervisors, department heads, and directors in accomplishing equal opportunity employment, any willful or intentional violation of MBCG's policies on equal employment opportunity shall result in disciplinary action up to and including termination of employment.

### Non-discrimination
The MBCG is firmly committed to a policy of non-discrimination in employment and to achieving equal opportunity for all applicants and employees. There shall be no discrimination exercised on the basis of race, national origin, color, genetic information, religion, age, disability, sex (except where age, sex, or physical condition is a bona fide occupational qualification), veteran status, sexual orientation or political affiliation with respect to the recruiting and examination of applicants, hiring of eligible applicants, or in any personnel transactions affecting employees, including but not limited to, training, promotion and fitness of the individual, and other conditions of employment.

If employees believe that they have been discriminated against or subjected to unlawful harassment, they should immediately address their complaint to their supervisor, department head or elected official, or the Human Resources Department. Once a complaint is received, the Human Resources Director or his/her designee will initiate an investigation.

### Unlawful Harassment
The MBCG and all constitutional officers and elected officials are committed to a work environment that promotes equal employment opportunities and is free from discriminatory practices, including harassment.

It is illegal and against MBCG policy for persons to harass, threaten, or intimidate other employees on the basis of their sex, race, genetic information, religion, disability, national origin or age, or for any other reason.

Approved and Adopted, December 31, 2013                                    MBCG Policies and Procedures

Krage, et al-000229

## 1.05

- Unwanted sexual advances;

- Promising, directly or indirectly, a reward if the person complies with a sexually-oriented request;

- Threatening, directly or indirectly, to retaliate against a person if the person refuses to comply with a sexually-oriented request or advance;

  o Denying, directly or indirectly, an employee an employment-related opportunity if the employee refuses to comply with a sexually-oriented request; denying a contract employees, vendors or citizens a normal service to which they are entitled if they refuse to comply with a sexually oriented request;

- Engaging in sexually suggestive physical contact, touching, impeding, assaulting, or blocking movements of another person;

- Displaying, storing, or transmitting pornographic or sexually-oriented material using MBCG equipment or facilities;

- Displaying pictures, posters, calendars, graffiti, objects, promotional materials, reading materials, computer websites, e-mails, mobile phone pictures or messages, or other suggestive materials that are sexually demeaning or pornographic;

- Possessing or bringing into the MBCG work environment any sexually demeaning, pornographic or other suggestive material to read, display or view at work;

  1. Indecent exposure;

  2. Visual conduct that includes making sexual gestures;

  3. Verbal conduct that includes making or using derogatory comments, epithets, slurs or jokes of a sexual nature; verbal commentaries about an individual's body; sexually degrading words used to describe an individual; suggestive or obscene letters, notes or invitations.

Krage, et al-000231

**1.06**

# CODE OF ETHICS

The Mayor and County Commission hereby adopt an ordinance establishing a code of ethics. The code of ethics establishes a standard of conduct for MBCG officials and employees who are expected to discharge their duties impartially and their affairs so as to foster public confidence in the integrity of MBCG. To that end, MBCG officials and employees are prohibited from attempting to realize personal financial gain through MBCG service or employment by conduct inconsistent with the proper discharge of their duties. Engagement in any business or transaction with MBCG or having a financial interest or private interest, direct or indirect, in any MBCG contract or proposed contract may be a conflict of interest adverse to the proper discharge of the duties of a MBCG official or employee and the best interest of the MBCG.

In addition, the following circumstances, though not an exhaustive list, are specifically deemed in conflict with and adverse to the proper discharge of official duties of MBCG officials and employees:

- Using public office for private gain;

- Giving undue preferential treatment to any business entity or person;

- Knowingly impeding government efficiency or economy;

- Receiving gifts, other than campaign contributions, complimentary services, free vacations or travel having more than a nominal value and which are calculated to influence the decision of the officers or employees as to any business dealing with the MBCG;

- Attempting to influence the actions or conduct of a MBCG official or employee on behalf of a business entity in which the MBCG official, employee, or family member has a financial or property interest;

- Obligating the MBCG without proper authority.

Krage, et al-000233

## 1.06

confidential information for actual or anticipated financial gain; and requires disclosure of potential conflicts of interest or interests adverse to the MBCG.

The entire text of the MBCG ethics ordinance, including definitions and penalties for violation, is codified in Sections _____ through _____ of the MBCG Code of Ordinances.

Krage, et al-000235

**1.08**

## EMERGENCY PROCEDURES

The MBCG will make every effort to respond to emergency situations in a manner which protects employees, visitors, and the public. Procedures have been established for response to certain types of emergencies; details are available from your department head, MBCG security, or the Risk Management staff. Employees should familiarize themselves with those established procedures for specific emergency response. The following general guidelines apply to any emergency situation which may arise:

1. All employees must respond to a building evacuation alarm immediately. Each department is assigned an area in which employees are to meet once they have evacuated the building. Each department head should designate a backup area for meeting in the event that the primary area is not safe.

2. All department heads should assign a "captain" for their respective department who will be charged with insuring that all employees in their department has evacuated the building. Once employees have left the building, the captain will account for all employees in their department. Employees should notify their department captain that they are exiting the building.

3. Should employees require assistance in exiting the building, they should notify their supervisor and department head in advance of any emergency. For MBCG employees, individuals who would require assistance on a long term or indefinite basis should be registered with MBCG security. Employees with temporary or short term injuries or other situations for which they would require assistance to exit the building should be reported to MBCG security if assistance is not available in their department.

Krage, et al-000237

**1.09**

## INCLEMENT WEATHER

1. **Leave procedures during hazardous and inclement conditions**
   The safety of our employees is a primary concern of the MBCG. Toward this end, all employees are requested to exercise safety precautions when reporting to work during inclement and hazardous weather.

2. **Payment for hazard and inclement conditions**
   Employees will be paid for days missed from work due to hazardous and inclement conditions when MBCG officials make an official decision to close MBCG buildings.

   Employees reporting to work during hazardous conditions will be paid normal pay for hours worked. Employees who are not able to report to work due to situations beyond their control when MBCG buildings are open, will be required to take annual leave first and sick leave second (if no annual leave is available). This will also be the case for partial absences that are weather related.

   If an MBCG building is open for part of the day, only employees who report to work during the time in which MBCG buildings are open will be paid for the portion of the day during which the MBCG buildings are closed. Employees who are absent from work for the entire day will be allowed to use annual leave, if such leave is available.

3. **Use of leave time**
   Annual leave will be taken first and sick leave second (if no annual leave is available) if MBCG buildings are officially open and employees are unable to report to work. Employees who have banked compensatory time may use such time to be paid for time in which they are unable to report to work due to inclement weather or hazardous conditions. If accumulated leave is not available, employees who are unable to report to work due to inclement weather or hazardous conditions must take leave without pay.

Approved and Adopted, December 31, 2013                    MBCG Policies and Procedures

Krage, et al-000239

# SECTION 2:  HUMAN RESOURCES

| POLICY | NUMBER |
|---|---|
| **Classification of Employees** | **2.01** |
| **Employment At Will** | **2.02** |
| **Job Postings** | **2.03** |
| **Nepotism** | **2.04** |
| **Separation From Employment** | **2.05** |
| **Background Checks** | **2.06** |

**Approved and Adopted, December 31, 2013**                    **MBCG Policies and Procedures**

23

Krage, et al-000241

## 2.01

**Temporary or contract**: Persons hired on a temporary basis to handle excess workloads, special projects, or to provide for a short-term need. These persons are generally hired by Human Resources through a temporary personnel agency. Contract employees must furnish an Employee Identification Number (EIN) with their invoices, and must meet all Internal Revenue Service (IRS) guidelines for contract employees.

Krage, et al-000243

**2.03**

## JOB POSTING

1. Only positions which are open and which have been duly approved and funded by the County Commission will be posted. All such positions will be posted by the Human Resources Department.

2. Positions will be posted on MBCG's web site, and may or may not be advertised in other ways. At the discretion of the department head, and with the concurrence of the Human Resources Department, a position may be posted as an "Internal Posting Only" such that the position is not open to applicants not currently working for MBCG. Similarly, a position may be posted as a "Department Posting Only" with the result that only applications from employees currently working in that department will be accepted.

3. Open positions will be posted for a minimum of seven (7) working days. This time period may be extended if an ample number of qualified applicants have not applied. MBCG only accepts applications and resumes for open, posted positions of employment. All applicant inquiries must be made either online or through the Human Resources Department.

4. MBCG reserves the right to not process an application from any person who does not meet the minimum requirements for the position. Current MBCG employees who are not probationary employees and who are not under any active corrective or disciplinary warning beyond a verbal warning may apply for any open position which is posted County-wide or on a public basis.

5. If a current employee of MBCG is selected for a posted position, the hiring manager and the employee's current manager will collaborate to determine a release date for the employee to transfer to the new position. If a release date has not been determined, or if the release date is more than two (2) weeks beyond the date the employee was selected for the new position, Human Resources should be notified.

Krage, et al-000245

**2.04**

---

## NEPOTISM

The MBCG has proscribed and enforces the following conditions and restrictions to govern the hiring of relatives of full-time, part-time, and temporary MBCG employees:

For purposes of this policy, relatives include spouse, child, grandchild, great-grandchild, parent, grandparent, great-grandparent, brother, sister, nephew, niece, aunt, uncle, step-child, and step-parent. These relationships shall also include half or adoptive relatives, and relatives of spouse.

- **Relatives of Macon-Bibb Mayor and County Commission**
  Unless otherwise provided herein, relatives of the MBCG Mayor and County Commission are excluded from employment in any MBCG department.

- **Relatives of staff of the Mayor, County Commission, County Manager, Assistant County Manager, Finance Department, Risk Management Department, Information Technology Services, Purchasing Department, and Human Resources Department**
  Unless otherwise provided herein, relatives of employees in the departments listed above are not eligible for employment in any MBCG department. Relatives of employees in other MBCG departments are excluded from employment in the above-listed departments.

- **Relatives of supervisory employees**
  Relatives of MBCG employees who work in any supervisory capacity shall not be employed in any capacity in the department in which the supervisory employee works; these individuals may be employed in other Macon-Bibb County departments where all other requirements of this policy are satisfied.

- **Relatives of non-supervisory employees**
  Relatives of non-supervisory employees shall not be promoted or hired into a supervisory position in the same department in which their relative works.

Approved and Adopted, December 31, 2013                                    MBCG Policies and Procedures

---

Krage, et al-000247

**2.05**

## SEPARATION FROM EMPLOYMENT

All separations of employees from positions of employment with MBCG shall be designated as one of the following types, and should be accomplished in the manner indicated:

1. Resignation
2. Disability
3. Retirement
4. Reduction in force
5. Dismissal
6. Death

### 1. Resignation:

All employees of MBCG who wish to terminate their employment with Bibb County should provide their department head with a minimum of two (2) weeks' notice of their intention to resign, unless the department head has established a policy requiring a longer notice period where work is of a technical nature in the department. The resignation should be forwarded to the Human Resources Director or Assistant Director of Human Resources. An employee who does not provide the required two (2) weeks notification shall have recorded on his/her service record that he/she resigned without giving proper notice, unless the department head approves a shorter notice requirement.

After an employee's resignation has been submitted, if the employee's general attitude, punctuality, and overall job performance levels decline, the department head will make the resignation effective immediately. In accordance with MBCG's attendance policies, three (3) consecutive days of unreported or unauthorized absence from work will be deemed as compulsory resignation due to job abandonment.

### 2. Disability:

An employee may be separated from his/her employment for disability when the employee is not able to perform the required job duties because of a physical

Approved and Adopted, December 31, 2013                                      MBCG Policies and Procedures

Krage, et al-000249

**2.06**

## BACKGROUND CHECKS

The MBCG requires a criminal background check for all full-time, part-time, and temporary employees, including interns upon hire once a conditional offer of employment has been extended by the Employment Officer.

Although a disqualification is possible, in accordance with federal and state laws, a previous conviction does not automatically disqualify an applicant from consideration for employment with MBCG. Depending on a variety of factors (for example, the nature of the position, the nature of the conviction, age of the candidate when the illegal activity occurred), the candidate may still be eligible for employment with MBCG.

However, if an applicant attempts to withhold information or falsify information pertaining to previous convictions, the employee will be disqualified from further employment consideration in a position with MBCG due to falsification of an application.

An offer of employment may be extended to an applicant prior to the completion of the criminal conviction check. However, the applicant's first day of work in the position must not be prior to the satisfactory completion of the criminal background check.

**NOTE:** **Bibb County Sheriff's Office applicants are required to complete a background check at the time of completion of the application and an internal affairs background investigation will be completed before employment consideration is offered.**

Krage, et al-000251

**3.01**

# AMERICANS WITH DISABILITIES ACT

**Nondiscrimination Statement, Grievance Procedure & Effective Communications
Pursuant to the Americans with Disabilities Act of 1990,
Section 504 of Rehabilitation Act of 1973, and ADA Amendments Act of 2008**

In accordance with the requirements of Title II of the Americans with Disabilities Act of 1990 ("ADA"), Section 504 of the Rehabilitation Act of 1973, and the ADA Amendments Act of 2008, MBCG will not discriminate against qualified individuals on the basis of disability in the areas of employment, public accommodations, State and local government services, and telecommunications. Subtitle A of title II of the ADA protects qualified individuals with disabilities from discrimination on the basis of disability in the services, programs, or activities of all State and local governments. Consistent with the final rule, MBCG has designated a responsible employee and has adopted a grievance procedure for those individuals wishing to file a grievance.

Section 35.170 provides that any individual who believes that he or she or a specific class of individuals has been subjected to discrimination on the basis of disability by a public entity may, by him or herself or by an authorized representative, file a complaint under this part within 180 days of the date of the alleged discrimination. Filing the complaint with any Federal agency will satisfy the requirement for timely filing.

The MBCG has designated an employee of the Human Resources Department to coordinate its efforts to comply with and carry out its responsibilities under subtitle A, including any investigation of any complaint communicated to it alleging its noncompliance with this part or alleging any actions that would be prohibited by this part.

*(Compliance Officer Name)*
*(Physical Address)*
*(City, State, Zip Code)*
*(Telephone)*
*(Email Address)*

Approved and Adopted, December 31, 2013                    MBCG Policies and Procedures

Krage, et al-000253

## 3.01

sent to the *Coordination and Review Section, P.O. Box 66118, Civil Rights Division, U.S. Department of Justice, Washington, D.C. 20035-6118.* Complaints may also be filed with the *U.S. Department of Health and Human Services, 200 Independence Avenue, S.W., Washington, D.C. 20201.*

Any citizen who elects to first file a complaint with MBCG's Compliance Officer is advised that the above 180-day deadline for filing a written complaint with a Federal agency still applies.

In compliance with the ADA and related laws and regulations, MBCG will ensure that communications with individuals who have hearing, speech, vision, communication, and cognitive limitations are as effective as communications with others in the delivery of its programs, services, and activities. Upon the request of a qualified individual with a disability affecting hearing, vision, speech or cognitive limitations, MBCG will furnish appropriate auxiliary aids and services where necessary to afford such an individual an equal opportunity to participate in and have access to MBCG programs, services, and activities.

A qualified individual who anticipates participation in any MBCG program, service, or activity should make a request for an auxiliary aid or service within 48 hours of the time the aid or service is needed. The qualified individual's authorized representative may make the request for aid or service on his/her behalf. MBCG may make reasonable requests for documentation regarding the disability and the appropriateness of, or need for, a specific auxiliary aid. MBCG will evaluate each request for an auxiliary aid or service on a case-by-case basis. Decisions for granting or denying an auxiliary aid or service will not be based on any generalized rules or broad policies, but may include evaluation of whether another equally effective means of communication is available.

Auxiliary aids and services may include:

1. Information presented in visual formats produced in 18 point print, audio tape format, or Braille for the visually impaired;

2. Qualified readers for the visually impaired;

3. Telecommunications devices for the hearing or speech impaired;

Krage, et al-000255

**3.02**

## BREAK TIME FOR NURSING MOTHERS

It is the policy of MBCG to comply with the provision of the Patient Protection and Affordable Care Act ("PPACA") which amended Section 7 of the Fair Labor Standards Act ("FLSA") to require reasonable break time for an employee to express milk for her nursing child for one (1) year after the child's birth each time such employee has need to express the milk. In addition, the PPACA requires the provision of a place, other than a bathroom, which is shielded from view and free from intrusion by co-workers and the public, and which may be used by an employee to express breast milk.

While the FLSA does not require that break periods taken for the purpose of expressing milk be compensated, where an employer already provides compensated break periods, an employee who uses that break time to express milk must be compensated in the same way that other employees are compensated for break time. In addition, the FLSA's general requirement that the employee must be completely relieved from duty or else the time must be compensated as work time applies. (Refer to definition of "hours worked," MBCG Personnel Policy Manual, "Overtime pay").

The MBCG provides a dedicated space for use of nursing mothers. While the Federal law mandates break time to express milk only for employees who are not exempt from overtime pay requirements under FLSA, MBCG  recognizes the importance of this act of nurture for maternal and infant health, and will provide breaks to all nursing mothers irrespective of their status under FLSA.

Questions regarding application of this policy should be directed to the Human Resources Department.

Krage, et al-000257

**3.03**

## HIPAA Definitions

1. **Covered Entity** is a health plan, health care clearinghouse, or health care provider that transmits any health information electronically in connection with a covered transaction.

2. **Breach** is the unauthorized acquisition, access, use, or disclosure of protected heath information which compromises the security or privacy of such information.

   > *Exceptions*: Disclosures where the recipient of the information would not reasonably have been able to retain the information, unintentional acquisition, access, or use of the information by employees or persons acting under the authority of a covered entity or business associate, inadvertent disclosures among persons similarly authorized to access protected health information.

3. **Business Associate** is a person who performs functions or activities on behalf of, or certain services for, a covered entity that involve the use or disclosure of individually identifiable health information.

   > *Examples*: third party administrators or pharmacy benefit managers for health plans, claims processing or billing companies, transcription companies, and persons who perform legal, actuarial, accounting, management, or administrative services for covered entities and who require access to protected health information.

4. **Protected Health Information** is the individually identifiable health information held or transmitted in any form by HIPAA covered entities and business associates.

5. **Unsecured Protected Health Information** is protected health information that is not secured through the use of a technology or methodology specified by the Secretary of HHS.

   > *Covered entities and business associates that implement the specified technologies and methodologies with respect to protected health information are not required to provide notifications in the event of a*

Krage, et al-000259

**3.03**

# HIPAA Breach and Notification

The Health Information Technology for Economic and Clinical Health ("HITECH") Act requires HIPAA covered entities to provide notification to affected individuals and to the Secretary of the Department of Health and Human Services ("HHS") following the discovery of a breach of unsecured protected health information. In the event of a breach of unsecured protected health information at or by a business associate of a covered entity, HITECH requires the business associate to notify the covered entity. Breach notification requirements are also imposed upon vendors of personal health records and their third party service providers.

**Procedure**
In the event of a breach of unsecured PHI which compromises the security or privacy of the PHI, MBCG must make the following determinations, and adhere to the following procedure to notify affected individuals and HHS, where appropriate, that a breach has occurred.

- Determine whether notification is necessary by determining whether a use or disclosure of unsecured protected health information violated HITECH.

  o Was the information secured?

  o Was the disclosure of the information incident to an otherwise permissible use or disclosure?

- Determine whether the violation compromises the security or privacy of the protected health information.

  o Does the disclosure pose a significant risk of financial, reputational, or other harm to the individual?

- Determine who impermissibly used or to whom the information was impermissibly disclosed.

Krage, et al-000261

## 3.03

- A covered entity shall send the required notification without unreasonable delay **and in no case later than sixty (60) calendar days after the date the breach was discovered by the covered entity.**

  - o A breach is discovered on the first day that the covered entity learns of the breach, or by the exercise of reasonable diligence would have been known to the covered entity.

  - o A covered entity may take a **reasonable time** to investigate the circumstances surrounding the breach, in order to collect and develop the information that is required to be included in the notice to the individual.

    - ▪ Where an investigation is completed earlier than sixty (60) days, the covered entity must provide notice as soon as reasonable.

    - ▪ **Where an investigation is completed and the covered entity determines that a breach did not occur, notification is not required.**

- The notice to each individual shall include:

  - o A brief description of what happened, including the date of the breach and the date of the discovery of the breach, if known;

  - o A description of the types of unsecured protected health information that were involved in the breach (i.e., whether full name, Social Security number, date of birth, home address, account number, diagnosis, disability code, or other types of information were involved);

    - ▪ DO NOT INCLUDE A LISTING OF THE ACTUAL PROTECTED HEALTH INFORMATION THAT WAS BREACHED (e.g., a list of individual Social Security numbers);

  - o Any steps individuals should take to protect themselves from potential harm resulting from the breach;

Krage, et al-000263

## 3.03

- Additional notice in urgent situations may be needed and should be completed by:

  - If the breach involves 500 or more individuals of a state or jurisdiction, the covered entity must provide notice to prominent media outlets. *Notice to the media outlets is used to supplement notice to each individual and may not be used as substituted notice.*

    - Notice must be made to the prominent media outlets in the same time frame as written notice to each individual as discussed above.

- Notification to the Secretary of HHS must be completed:

  - When the breach involves 500 or more individuals (without regard for whether the individuals are in the same state or jurisdiction);

    - *THIS NOTICE MUST BE DONE IMMEDIATELY. Immediately under HITECH means the covered entity must notify the Secretary of HHS concurrently as to when each individual is notified.*

  - When the breach involves less than 500 individuals the covered entity may keep a log of such breaches and submit them to the secretary annually.

- A business associate must notify the covered entity to which the breached information relates.

  - If the information relates to more than one covered entity, the business associate must notify all possible covered entities that may have been affected.

  - A business associate shall send the required notification to the covered entity without unreasonable delay and in no case later than sixty (60) calendar days after the date the breach was discovered by the covered entity.

    - A breach is discovered by a business associate on the first day that the covered entity learns of the breach, or by the exercise of reasonable diligence would have been known to the covered entity.

Krage, et al-000265

## 3.03

### Appropriate notice of breach

*Although there is not a page limitation on the notice, the notice should be written at an appropriate reading level and use clear language and syntax. The notice should not include language that distracts the individual from the purpose of the notice.*

*The covered entities who are obligated to comply with Title VI of the Civil Rights Act of 1964, the Rehabilitation Act of 1973, and/or the Americans with Disabilities Act of 1990 should take steps that those with limited English proficiency and disabilities are able to read and understand the notice and be willing to provide the notice in alternate mediums to ensure the individuals understand the implications of the notice.*

### Delay of notice to support criminal investigation

*If a law enforcement official determines that notice of a breach of unsecured protected health information would impede a criminal investigation, notice can be delayed for up to thirty (30) days.*

### Administration

a. The MBCG will train its workforce concerning this policy and MBCG's procedures regarding the privacy of PHI as necessary and appropriate for the workforce member to carry out his/her duties and specific job functions.

b. Then MBCG will refrain from intimidating or retaliatory acts against any individual for the exercise of rights established in the breach notification.

c. The MBCG will mitigate, to the extent practicable, any harmful effect that is known by MBCG to have occurred as a result of a use or disclosure of PHI in violation of HIPAA privacy rules.

d. The MBCG will maintain documentation required to meet the burden of proof of MBCG in the event of a use or disclosure of PHI in violation of HIPAA, and will retain such documentation for a period of not less than six (6) years.

Krage, et al-000267

**3.04**

## LIMITED ENGLISH PROFICIENCY

The MBCG recognizes the importance of effective and accurate communication between its personnel and the citizens of Macon-Bibb County . Language barriers can impede effective and accurate communication in a variety of ways. Language barriers can sometimes inhibit or even prohibit individuals with Limited English Proficiency ("LEP") from accessing and/or understanding important rights, obligations, and services, or from communicating accurately and effectively in difficult situations. Ensuring meaningful communication ability between MBCG personnel and all segments of the Macon-Bibb County community serves the interest of both.

The purpose of this policy is to establish effective guidelines for communication with LEP persons in compliance with Title VI of the Civil Rights Act of 1964 and Executive Order 13166. MBCG is committed to ensuring compliance with Title VI of the Civil Rights Act of 1964 and all related regulations and directives. MBCG  assures that no person shall on the grounds of race, color, national origin, gender, age, genetic information, or disability be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any Macon-Bibb County-provided or Macon-Bibb County supported service, program, or activity. MBCG also assures that every effort will be made to prevent discrimination through the impacts of its programs, policies, and activities on minority populations. Accordingly, MBCG will take reasonable steps to provide meaningful access to services for person with LEP.

As a normal part of the conduct of county government, MBCG has committed to ensuring that LEP citizens conducting business with MBCG, participating in services provided by or supported by MBCG, or appearing in judicial proceedings will be able to engage in those activities, where appropriate, while speaking the Spanish language. MBCG is prepared to add other languages when they meet the required LEP threshold.

"According to U.S. Census Bureau information estimates for 2011, MBCG's population is 155,753. Of that total, an estimated 2.9 percent is comprised of persons of Latino or Hispanic origin. An estimated 5.2 percent of MBCG's population speaks a language other than English at home. While MBCG has not maintained data to formally

Krage, et al-000269

**3.05**

## PRIVACY

It is the policy of MBCG to comply with all laws and regulations with respect to privacy and protection of confidential and personal information including the Health Insurance Portability and Accountability Act (HIPAA), as well as with standard professional practices of protection of confidential and personal information. Employees are expected to be sensitive to confidentiality and privacy issues and to perform job duties in a manner consistent with legal and standard practices.

The following procedures with regard to employee privacy apply to all MBCG employees:

    a. Personal information such as home address and telephone numbers, names of family members, health conditions of employees or family members, personal financial information, and personal identity information, i.e., Social Security Number or Federal Identification Number shall be protected and shall not be released to any individual, vendor, or agency without a legitimate need to know, without express written permission from the employee or affected individual, or unless required by law.

        ▪ Records containing personal information shall be secured as appropriate. In no circumstance shall records containing personal information be left open or unattended where unauthorized persons may access the information.

        ▪ Individuals requesting personal information should provide personal identification, i.e., photo identification, government credentials, badge, etc. and legitimate proof of authority, i.e., warrant, court order, signed authorization from person whose information is requested.

        ▪ If there is any doubt as to whether personal information or documents containing personal information should be released, employees should contact the Department Head, Human Resources Department, or the legal staff.

Krage, et al-000271

## 3.05

- Even where permission has been granted to reveal medical information, casual conversations and gossip concerning the person should be avoided.

- Upon receiving notification that an employee or employee's family member has a serious illness or is hospitalized, the manager or supervisor should inquire as to what information the employee would like for co-workers or other employees to know. As long as the employee gives permission for release of information, it is appropriate for co-workers or other employees to send cards, notes, or flowers. Visiting the person or preparing meals for his/her family may also be appropriate, but must be authorized by the affected employee in advance.

Krage, et al-000273

## 3.06

The MBCG Compliance Officer will keep the original and forward a copy to the respective Title VI coordinator of the department against whom the complaint is filed. The complainant may be represented by an attorney or other representative of his/her own choosing and may bring witnesses and present testimony and evidence in the course of any subsequent investigation.

All complaints must be filed with the MBCG Compliance Officer unless complaints are filed with external entities first. The Compliance Officer will notify the respective Title VI department coordinator of the filed complaint. The complaint must be filed no later than 180 calendar days after the alleged discriminatory incident.

The Compliance Officer will investigate complaints against all other departments, in conjunction with and under the advice of MBCG's Attorney or his designee, and will make a finding based on the investigation. The investigation may include a discussion of the complaint with all affected parties to determine the problem.

The Compliance Officer will maintain a Title VI Complaint Log detailing the type and status of each complaint. The Complaint Log shall be maintained in a locked filing cabinet and shall be maintained for a period of three (3) years. The log shall include a case file number and shall indicate the date of receipt; nature of complaint; and disposition of the complaint.

Complaint files shall include a copy of the written complaint or a summary of the oral complaint; a record of contacts made and information obtained during the investigation; and other related correspondence from the complainant, agency or organization against whom the complaint was made. Complaints shall be held strictly confidential to the extent allowable by law.

When the investigation is concluded, the Compliance Officer, in cooperation with MBCG's Attorney or his designee, will prepare a written report of findings. Should this report include a finding of Title VI violation, proposed remedial action shall also be included in the report.

The final report will include the following:

1. The written complaint containing the allegation, basis, and date of filing

Krage, et al-000275

## 3.06

2. The appeal must specifically cite the portion(s) of the finding with which the complainant disagrees and his/her reason(s) for disagreement.

3. The Compliance Officer will forward this appeal within seven (7) days to the MBCG Civil Rights Unit for review.

4. The review of the finding by the Civil Rights Unit will be based on the entire record.

5. The Civil Rights Unit must complete the appeal review within thirty (30) calendar days after receipt of the appeal.

The Civil Rights Unit will forward written findings to the complainant, the Compliance Officer, MBCG's Attorney, MBCG's Mayor and County Commission.

Krage, et al-000277

# SECTION 4:  PERFORMANCE MANAGEMENT

| POLICY | NUMBER |
|---|---|
| Disciplinary Action | 4.01 |
| Employee Problem Solving Procedure | 4.02 |
| Evaluation of Employee Performance and Compensation Decisions | 4.03 |

Approved and Adopted, December 31, 2013

MBCG Policies and Procedures

61

Krage, et al-000279

## 4.01

**Disciplinary Action**

A. Disciplinary action shall be taken as expeditiously as possible and as soon as a final determination is made that a violation has occurred. This normally should not require more than five (5) days after the occurrence is established or after a determination is made that discipline is to be based on multiple disciplinary actions which have occurred over a five year period of time. If disciplinary action is delayed for administrative review or investigation purposes, the employee should normally be notified and advised that the imposition of disciplinary action is being considered.

B. A department head, subject to the procedural rights of employees stated herein, shall have the following options for disciplinary action:

   1. Verbal warning with documentation to file;

   2. Written reprimand;

   3. Reduction of compensation/rank within the range provided in the pay plan;

   4. Suspension without pay for up to 30 working days;

   5. Demotion of one or more pay grades, including possible transfer;

   6. Discharge.

The department head shall consult with the Human Resources Director or his/her designee before suspending, reducing pay, demoting or terminating an employee.

C. Employees may not be disciplined for exercising their civil rights guaranteed by the constitution and laws, and to that end shall not be disciplined for such things as:

Approved and Adopted, December 31, 2013                    MBCG Policies and Procedures

Krage, et al-000281

## 4.01

**Applying Disciplinary Action**

Disciplinary action can range from a verbal warning up to and including termination of employment, depending on the severity of the offense and the employee's past record of job performance and/or any prior disciplinary actions. It is the responsibility of all managers and supervisors to apply this policy with consistency. If a supervisor or manager is contemplating disciplinary action, he or she should contact Human Resources for guidance. A Human Resources representative may make recommendations or provide guidance in applying disciplinary action; the ultimate determination of the level of disciplinary action to be imposed, however, remains with the manager/supervisor.

The MBCG reserves the right to apply or begin disciplinary action at any level. Active previous disciplinary action will be taken into account when considering disciplinary action, whether the new incident is similar in nature to the previous incident(s) or not. Managers and supervisors will also consider the severity and nature of the offense, repeat violation, and the overall circumstances of the incident when evaluating application of disciplinary action.

*The guidelines, lists of offenses, and suggested penalties set forth below are not to be considered absolute, but as guidelines dependent on the severity of the offense and the employee's past record of job performance. The lists represent some, but not all, offenses which will result in disciplinary action.* The Human Resources Department will assist supervisors and department heads in investigation of incidents and in determining the appropriate disciplinary action to be applied.

Krage, et al-000283

## 4.01

17. Discourteous treatment of the public, visitors, or other employees

18. Failure to follow any internal or departmental policies and procedures

19. Failure to cooperate in any way in an administrative investigation conducted by any department, elected office, or by the Macon-Bibb County Attorney or his/her designee. This includes, but is not limited to, providing false or incomplete information, withholding information, failure to be available for an interview, refusal to be interviewed, failure to maintain confidentiality when instructed, and any conduct that hinders or interferes with the investigation.

20. Violation of computer usage, social media, or telephone usage policy

21. Violation of the anti-idling policy

Generally, commission of a Group I offense will result in a documented verbal warning, unless the offense is a repeat violation or the incident is determined to be intentional or severe enough to warrant a higher level of disciplinary action. In such instances, Group I offenses may result in a written warning or final warning, with or without suspension from employment without pay, or in a paid suspension from employment pending discharge investigation.

## Group II Offenses

1. Threatening, intimidating, coercing or using abusive language toward fellow employees, supervisors, or the public

2. Sleeping during working hours unless otherwise provided for certain jobs, and with permission of the supervisor

3. Consumption or possession of alcohol or other intoxicants on the job

4. Gambling or engaging in games of chance on the job

5. Leaving the job during regular work hours without permission

Krage, et al-000285

**4.01**

including, but not limited to, employment applications, accident records, purchase orders, time records, work records, expense reimbursement requisitions and administrative records

4.  Sexual, race, gender, or other harassment in violation of Macon Bibb County's harassment policies

5.  Making false claims or misrepresentations in an attempt to obtain sickness or accident benefits, worker's compensation benefits, or unemployment compensation benefits

6.  Insubordination through discourtesy, including, but not limited to, the use of abusive language to anyone with whom employee may have contact on the job, including citizens, vendors, other employees, or management employees

7.  Insubordination through the refusal to perform work assigned or to comply with written or verbal instructions of the supervisor or Macon-Bibb County officer

8.  Unauthorized possession of any weapon, firearm, or explosive on the job (possession of explosive must be job-related and authorized by the County Commission or the supervising Macon-Bibb County officer)

9.  Theft, attempted theft, or unauthorized removal of property belonging to Macon-Bibb County, a co-worker, or a citizen

10. The use, possession or sale of any illegal drugs or hallucinogens while on the job or on Macon-Bibb County property

11. Habitual inefficiency, incompetence, or inadequate performance

12. Use or attempted use of political influence or bribery to secure an advantage in any matter

Krage, et al-000287

## 4.01

1. Breaches of any security procedure implemented by MBCG or any official or employee under its authority;

2. Divulging information which threatens the security of MBCG personnel or property;

3. Sabotage of any property or equipment of MBCG through intentional misconduct or gross negligence;

4. Committing or threatening to commit an act of violence against any employee, supervisor, elected official, appointed official, or any other agent of Macon-Bibb County;

5. Sexual or racial harassment of an employee or citizen conducting business with Macon-Bibb County;

6. Reporting to work in possession of or under the influence of intoxicants;

7. Intentionally discriminating against an applicant or employee in the terms or conditions of his/her employment or harassing a person on the basis of race, handicap, age, national origin, genetic information, or sexual orientation;

8. Retaliation against an employee for exercising rights under these policies or any state or federal law; opposing any practice made unlawful by Title VII; making a charge, testifying, assisting, or participating in a Title VII proceeding or investigation; or engaging in any action which dissuades a reasonable employee from making or supporting a charge of discrimination.

Approved and Adopted, December 31, 2013                              MBCG Policies and Procedures

Krage, et al-000289

## 4.01

**Record of Disciplinary Action**

In **all cases** of disciplinary action, **including verbal warnings**, the Notice of Disciplinary Action form or a disciplinary memorandum/letter shall be completed, and will include the following information:

1. Nature of the Offense-circumstances, date, time, etc.
2. Previous applicable discussions/training or active warnings in file
3. Future expectations for the employee's performance
4. Consequences of future infractions

The employee will be provided with a copy of the completed form or disciplinary memorandum/letter and will be asked to sign to acknowledge receipt of the copy. The employee shall be provided with an opportunity to respond in writing to the disciplinary action. Such written response must be provided within five (5) business days and will be placed in the employee's personnel file.

**Right of Appeal**

Any employee who has received disciplinary action, including termination of employment for a stated cause, shall have the right to appeal the disciplinary action by filing a grievance in accordance with the MBCG Employee Problem Solving Procedure, provided that (1) the appeal meets the definition of a grievance as provided in the Employee Problem Solving Procedure; (2) the employee is a covered employee as provided by the Employee Problem Solving Procedure; (3) the appeal does not fall into one of the "non-addressed" issues as defined by the Employee Problem Solving Procedure; and (4) all other requirements of the Employee Problem Solving Procedure are met.

This appeal provision shall not give any employee legitimate expectation of continued employment.

Krage, et al-000291

## 4.02

Constitutional officer or independent elected official desires to determine whether a particular official has opted in to this Manual, he/she may do so by contacting the MBCG Human Resources Department.

Employees who are members of the Mayor's executive staff are not covered by this policy, and shall work at the pleasure of the Mayor.

### Non-addressed Issues

The following issues are not covered by this procedure, and are not subject to the filing of any employee grievance:

1. Issues which are pending or have been concluded by other administrative or judicial procedures;

2. Work assignments which do not result in a demotion or salary reduction unless the complainant alleges unlawful discrimination in the making of such assignment;

3. Budget allocations and expectations in organizational structure, including the person or number of persons assigned to particular jobs or units;

4. The content or rating of a performance appraisal except when the employee alleges unlawful discrimination in the making of the appraisal;

5. The selection of an individual by the Mayor and County Commission to fill a position through appointment, promotion or transfer except when the employee alleges that the appointment, promotion or transfer was characterized by unlawful discrimination;

6. Any matter which is not within the jurisdiction or control of the appointing authority;

7. Internal security practices established by the appointing authority or the Mayor and/or County Commission;

8. Decisions, policies, practices, resolutions or ordinances made or passed by the

Krage, et al-000293

## 4.02

- **Human Resources Department**

  It is the responsibility of the Human Resources Director and the Human Resources staff to assist Macon-Bibb County employees at all levels of management, and to assist elected officials who have opted in to coverage for his/her employees under this manual by execution of an Election Form by an Elected Official contained herein, in the interpretation and application of procedures in order to prevent unfair or inequitable treatment of employees through improper application of policies, rules and procedures. If any employee of a MBCG elected official desires to determine whether a particular elected official has opted in to this Manual, he/she may do so by contacting the MBCG Human Resources Department.

- **Human Resources Representative or Staff Member**

  The Human Resources representative or staff member will assist the complainant in the interpretation of this policy; assist the complainant in resolving his or her complaint and/or request for hearing; and generally advise the complainant, if requested, during the problem solving process. If the complainant retains an attorney to represent him or her during the course of the procedure, the Human Resources representative or staff member will refer that attorney to the office of Macon-Bibb County's attorney for assistance.

### Procedural Requirements

### Step 1: Discussion with Supervisor

An employee who in good faith believes that he/she has a complaint under this policy should first discuss the problem with the employee's immediate supervisor within five (5) working days after the occurrence of the event. The supervisor should attempt to resolve the problem promptly, and in a fair and amicable manner. Within five (5) working days after the employee brings a complaint to the supervisor's attention, the supervisor, having obtained all of the facts, shall give the employee a decision along with a full verbal explanation of the reasons for the decision. If no solution is readily apparent, if the five (5) day deadline for a decision cannot be met, or if the outcome is not satisfactory to the employee, the employee should proceed to Step 2 of the problem solving procedure.

Krage, et al-000295

## 4.02

While employees of MBCG Constitutional officers and independent elected officials are not specifically covered under this Personnel Policy Manual unless such elected official has opted in to full coverage for his/her employees under this manual by execution of an Election Form by a Constitutional Officer or Elected Official contained herein, they are covered by all applicable federal and state laws, including those governing equal opportunity and non-discrimination.

### Step 3: Request for Hearing

- **Time for filing**: An employee must file a request for a hearing with the Department of Human Resources within ten (10) working days after receipt of the written decision by the Department Head made pursuant to Step 2 above.

- **Contents of request**: The request for hearing shall contain a statement describing what is being appealed; the request shall be filed on a form provided by the Department of Human Resources.

- **Hearing Officer**: Upon receipt of the employee's choice of strike, the Human Resources Department will, within three (3) business days, furnish the Macon-Bibb County attorney with the list of the remaining panel members. The Macon-Bibb County attorney or his/her designee, upon receipt of the list, will have five (5) business days to notify the Human Resources Department in writing which panel member, he/she chooses to strike.

- **Referral to Hearing Officer**: Within five (5) business days after receipt of the Macon-Bibb County attorney's strike from the hearing officer panel of attorneys, the Department of Human Resources will refer the request for hearing to the hearing officer. The hearing officer will determine if the case is covered under the MBCG Employee Problem Solving Procedure and if all procedural requirements have been met. If the request for hearing has been properly filed, the hearing officer will notify the employee of the date, time and place of the hearing. The hearing officer will also notify the Macon-Bibb County attorney of the date, time

Krage, et al-000297

**4.02**

9. Require the attendance of witnesses/employees. Employees appearing as witnesses shall be released from their duty without loss of pay and without effect on their service rating. An employee who is designated as a witness by either the department head or by the employee may be disciplined for failure to appear at the hearing. No person shall directly or indirectly use or threaten to use an official authority or other influence which would tend to discourage a person from testifying;

10. Arrange a pre-hearing conference for the purpose of reviewing the matter being appealed and establishing stipulations and agreements to expedite the hearing.

- **Hearing Procedures**: In the hearing of a complaint, proceedings shall be informal but orderly. The following procedures shall prevail:

    1. The hearing officer shall read or cause to be read the complaint and specifications as contained in the employee problem solving form.

    2. The stipulations as to any facts not in dispute shall be entered into the record.

    3. Each party shall be given the opportunity to make a brief opening statement identifying the issues and stating what is to be proven.

    4. All witnesses shall testify under oath or affirmation.

    5. Each party may conduct such examination of the witnesses as shall be required for a full and true disclosure of the facts. This includes the right to cross-examine witnesses adverse to any party's position. In addition, the hearing examiner may examine the witnesses.

    6. Official notice may be taken of facts generally recognized by the public. In addition, official notice may be taken of technical facts within any specialized knowledge of the hearing officer. Parties shall be notified either before or during the hearing of the material officially noted, and they shall be afforded an opportunity to contest the material so noticed.

Approved and Adopted, December 31, 2013

Krage, et al-000299

## 4.02

- **Evidentiary Rules**: With respect to all hearings before the hearing officer, the following rules regarding the evidence shall govern:

  1. Formal, legal rules of evidence shall not be strictly applied. Evidence may be admitted if it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs. The hearing officer shall follow the Georgia Rules of Evidence regarding privileges recognized by state law.

  2. Irrelevant, immaterial or unduly repetitious evidence may be excluded. Objections to evidentiary offers shall be made and ruled upon by the hearing officer.

  3. When a hearing will be expedited and the interest of the parties will not be prejudiced thereby, any part of the evidence may be received in written form, including but not limited to the use of depositions, interrogatories, and affidavits or written statements.

  4. The burden of proof shall be on the party requesting the hearing. That party shall have the right to open and conclude the hearing.

  5. Documentary evidence may be received in the form of copies. However, upon request and at the discretion of the hearing officer, parties shall be given the opportunity to compare with the original document.

  6. The hearing officer's decision should be supported by substantial evidence. Substantial evidence is that degree of relevant evidence that a reasonable mind, considering the record as a whole, might accept as adequate to support a conclusion that the matter asserted is true.

- **Appointment and Compensation of Hearing Officers**
  An independent, impartial hearing officer shall be selected to hear the case and conduct the hearing set forth herein. The Mayor or County Commission shall provide a list of three (3) attorneys, each of whom shall have been licensed and a member of the State Bar of Georgia for at least ten (10) years. The employee and Macon-Bibb County attorney, or his/her designee, shall each strike one name from the list and the remaining name shall be appointed as the hearing officer.

Approved and Adopted, December 31, 2013          MBCG Policies and Procedures

Krage, et al-000301

**4.03**

## EVALUATION OF EMPLOYEE PERFORMANCE
## AND COMPENSATION DECISIONS

This policy applies to all full-time and part-time MBCG employees.

The MBCG has established a uniform method of evaluating an employee's job performance for the purpose of employee development and any merit step increase(s) to which the employee may become entitled. Official performance appraisals for both full-time and part-time employees will be completed after an employee has completed six (6) months of service with Macon Bibb County, or after completion of six (6) months in a new position. All employees will receive official performance appraisals annually thereafter.

New employees who have completed six (6) continuous months of service (probationary period) may receive their first merit step increase at the end of this six (6) month period with a satisfactory performance evaluation, provided that the County Commission have approved merit increases for that fiscal year.

Managers or supervisors may choose to delay an employee's official performance appraisal if the employee has been absent or on leave for a significant period of time during the relevant review period. Any such decision to delay a performance appraisal should be communicated to the Human Resources Department.

Merit step increases are given for salary advancement as a means of compensating employees for achievement, to encourage careers with Macon Bibb County, and to provide employee incentive. Merit increases are not automatic, but are based upon formal performance appraisals by supervisors and are granted only when the quality of work performance meets or exceeds standards, and when the County Commission authorizes salary increases.

Each year the Mayor and County Commission may determine whether to implement a market adjustment, based upon wage and salary surveys of benchmark positions, the economic marketplace, the local cost-of-living index, and economic/budgetary factors.

Krage, et al-000303

## 4.03

## DEFINITIONS

- **Employee**: All full-time permanent and part-time permanent employees on the payroll of Macon-Bibb County.

- **MBCG Performance Review Form**: The performance evaluation form to be completed on each MBCG full-time and part-time employee.

- **Merit Step Increase**: The pay increase granted per salary increase schedule if an employee's performance has met satisfactory or above performance standards and if the Mayor and County Commission have approved such increases for the requisite fiscal year.

- **Pay Change Period for Merit Step Increase**: Merit increases will be made effective during the pay period in which the merit step date falls if the department head has the MBCG Performance Review form completed and turned in to the Human Resources Department by the first day of the month in which the merit step date falls. This period occurs after successful completion of the requisite six (6) month probationary period and annually thereafter, unless the employee is promoted into a new position or the merit increase is held.

- **Satisfactory Performance Standard**: When an employee is performing the duties and responsibilities for his or her job at the level of efficiency for which he or she is being paid to perform.

- **Unsatisfactory Performance**: When the employee is not meeting the performance standards required for the compensation being paid.

- **Above Satisfactory Performance**: When an employee is exceeding the performance standards of a satisfactory performer. The type of performance should be noted in the comments section of the MBCG Performance Review form.

Krage, et al-000305

## 4.03

factors or circumstances that should be considered in evaluating his or her performance, (d) accepting constructive suggestions given by the evaluating supervisor or department head for the improvement of the employee's overall performance.

- **Human Resources Department**: Reviews all evaluations for conformity to guidelines; processes merit step increase requests provided that a performance in which merit step increase is eligible for consideration.

### Evaluation Period

Evaluations are normally based on observation of actual performance on the job for a one-year period, with the exception of the performance evaluation conducted after completion of the first six (6) months of service with Macon Bibb County, or first six (6) months of working in a new position.

Evaluations should be completed before the end of the evaluation period no later than fifteen (15) days before the step increase is due.

Because of such events as shift assignment, new supervisor, etc., the employee may have been under the direction of more than one (1) supervisor during the evaluation period. In this instance, the involved supervisors should jointly evaluate (if possible) and sign the evaluation form.

New employees who have completed six (6) continuous months of service (probationary period) are eligible to receive their first merit step increase at the end of this six (6) month period, provided the Mayor and County Commission have approved merit increases for that fiscal year and their performance has been rated as satisfactory or above.

> **SPECIAL NOTE:** *It is the responsibility of all supervisors to constantly work with, correct and advise their employees of their performance status. The rating received and the comments made on the employee evaluation form should not come as a surprise to the employee. It is a responsibility of the supervisor and./or department head to assist his or her employees in developing to their fullest potential.*

**Approved and Adopted, December 31, 2013**                                        **MBCG Policies and Procedures**

Krage, et al-000307

# SECTION 5: EMPLOYEE BENEFITS

| POLICY | NUMBER |
|--------|--------|
| **Employee Assistance Program** | **5.01** |
| **Employee Service Awards** | **5.02** |
| **Health and Welfare** | **5.03** |
| **Holiday Pay** | **5.04** |
| **Retirement** | **5.05** |

Krage, et al-000309

**5.02**

# EMPLOYEE SERVICE AWARDS

Because government services in MBCG are enhanced by the professionalism and productivity of its employees, it is the policy of MBCG to recognize years of service of its employees in five (5) year increments. Employees who reach a five (5) year milestone will receive a pin and a certificate from the County Commission. Department heads have discretion in choosing how to recognize the service time of their respective employees. Options include individual recognition within the department, recognition at a department staff meeting, recognition at a special event meeting, or recognition by the County Commission at a regularly scheduled Commission meeting.

Department heads are encouraged to recognize contributions and achievements of employees not related to duration of service through both informal and formal recognition programs. Examples of such achievements include contributions which improve department processes, display outstanding customer service, result in cost savings for the Macon-Bibb County, and other work-related successes.

Krage, et al-000311

## 5.03

These programs may be paid for by the MBCG and the employee; by MBCG only; or by the employee only. Deductions for employee costs will be made from employees' pay. Only employees classified as full-time are eligible for the MBCG health and welfare benefits. Waiting periods apply for eligibility for some programs. See the "Employee Page" of the MBCG website for details, or call the Human Resources Department at (telephone).

Employees must enroll each year during an open enrollment period for benefits for the following year. This open enrollment period is generally held in the fall. Contributions, plan offerings, plan benefits and vendors may change from year to year. For each program in which they are enrolled each year, employees will have a Summary Plan Description ("SPD)") for each MBCG program available on the Employee Page of the MBCG website. All claims will be paid in accordance with the terms outlined in the SPD.

Each year, a list of approved vendors and health/welfare products for the upcoming plan year will be provided. Supplemental life insurance products, and products purchased through outside vendors may be added or discontinued from official MBCG offerings during annual open enrollment. Employees who wish to continue coverage with a vendor who is no longer approved by the County Commission to offer the product may choose to continue the coverage with that vendor. The contributions will continue to be deducted from the employee's pay for the coverage in effect at the time of the discontinuation. Any new products purchased by an employee which are not on the approved product and vendor list will not be eligible for payroll deduction for the premium on that product.

Elections made by employees during the open enrollment period will go into effect January 1 of the following year. Changes may not be made during the year to many of the programs unless the employee has a "Major Life Change," or a change in condition which necessitates a change in persons covered under the respective plan. Events which constitute a "Major Life Change" include:

Approved and Adopted, December 31, 2013                                    MBCG Policies and Procedures

95

Krage, et al-000313

## 5.03

Only employees or family members who are currently participating in the program which they wish to continue are eligible for continuation of benefits. However, eligible persons may choose to take less coverage than they had previously.

Eligible persons may continue their benefits by electing to do so within sixty (60) days of the date that they become ineligible for regular coverage. Full costs for the coverage must be paid each month by the covered individual, including the amount formerly contributed by Macon-Bibb County, plus a 2% administrative fee. Failure to pay contributions on a timely basis may result in loss of coverage going forward.

Information on continuation of benefits will be mailed by the vendor which administers the MBCG health plan to the eligible person following loss of regular coverage. Questions should be addressed to the Human Resources Department.

Approved and Adopted, December 31, 2013                    MBCG Policies and Procedures

Krage, et al-000315

## 5.04

The MBCG County Commission may declare other holidays during the year from time to time. Holidays falling on Saturday or Sunday will be observed either on the preceding Friday or following Monday as determined by the County Commission. Employees required to work on an official holiday will be granted a day off with pay at a time convenient to the department.

Employees who are required to work on a holiday shall be granted a day off with pay at time convenient to the department.  All holiday "days" off are to be used during the calendar year in which they fall with exception of the Christmas holiday which must be taken within 60 days following Christmas day. The following exceptions shall apply:

- Employees who work shift work with a variable work week, and who have worked their normal work time

- Employees on authorized paid vacation or paid sick leave the day before or the day after the holiday

- Public Works employees who are required to work on a holiday shall be paid holiday pay and additional pay for hours worked

- Public Works employees who are required to work on a regularly scheduled off day due to the holiday shall be paid holiday and additional hours for the time worked

- Part-time and temporary employees are not eligible for holiday pay.

NOTE:  Employees who work a compressed work week will be scheduled for four (4) eight-hour days during the week in which the holiday falls. Department heads will assign staggered work hours for employees in order to maintain department extended hours if needed.

Approved and Adopted, December 31, 2013                              MBCG Policies and Procedures

Krage, et al-000317

# SECTION 6: EMPLOYEE RESPONSIBILITIES

| POLICY | NUMBER |
|--------|--------|
| Arrest, Indictment, Conviction | 6.01 |
| Attendance and Absenteeism | 6.02 |
| Customer Service | 6.03 |
| Employee Dress Code | 6.04 |
| Health and Safety | 6.05 |
| On Call Policy | 6.06 |
| Second Jobs | 6.07 |
| Solicitation | 6.08 |
| Tobacco Use and Cessation | 6.09 |
| Travel | 6.10 |
| Workplace Violence | 6.11 |
| Zero Tolerance Drug and Alcohol Policy | 6.12 |

Krage, et al-000319

## 6.01

elements of a crime (e.g., whether the elements of the offense are substantially related to job duties, whether intent is a legal element of the offense). With respect to the gravity of an offense, offenses classified as misdemeanors may be less severe than those classified as felonies.

- **Date of the Offense and the Individual**
  MBCG will consider the length of time that has passed since the offense, conduct, and/or completion of sentence as probative of the risk the employee poses in his/her particular position of employment. Where possible, this assessment will include consideration of recidivism data and studies. MBCG will also consider the number and type of pending charges and convictions, the employee's participation in or completion of programs of a rehabilitative nature, the employee's probation or parole status, and the employee's ability to perform or continue to perform the job consistent with the safe, efficient, and effective operation of MBCG.

- **Nature of the Job Held**
  MBCG will conduct an individualized assessment to determine whether the employee's continued employment poses an unacceptable level of risk to MBCG. This factual inquiry will begin with identifying the job title of the employee, but will also consider the nature of the job's duties, essential functions of the job, (e.g., extent to which successful job performance requires public trust),  the circumstances under which the job is performed (e.g., level of supervision, level of oversight, interaction with co-workers and/or the public, opportunity the job presents for the commission of an offense), and the environment in which the job's duties are performed (e.g., outdoors, on MBCG property, access to or opportunity for access to private property).

Termination of employment based on a conviction may be imposed where a demonstrable relationship between the offense or underlying conduct and prejudice to MBCG's interest(s), the public trust, or to successful performance of the position of employment held by the affected employee exists.

Nothing herein shall prohibit MBCG from placing an employee on administrative leave based upon an arrest, indictment or information, or conviction.

Approved and Adopted, December 31, 2013

Krage, et al-000321

## 6.02

H. Excessive absenteeism or tardiness may result in disciplinary action, up to and including termination from employment.

I. Absences due to illness or injury may require written verification from a physician, or the employee's supervisor may request the employee undergo a physical examination by a certified physician of the MBCG's choice, at the MBCG's expense. Written verification by a physician must state the general nature of the employee's illness and that the employee was unable to work on the day or days of absence.

J. Attendance records will be considered in performance appraisals. Excessive absenteeism or tardiness may result in an unsatisfactory rating.

K. An employee who is absent for more than five (5) consecutive days for personal or family illness should contact the Human Resources Department to determine his/her rights under the Family Medical Leave Act.

L. No employee who is out of work for six (6) consecutive months may remain under MBCG active payroll, except where the employee has applied for and been approved for long term disability. Where an employee has applied and been approved for long term disability, his/her position of employment will be protected for twelve (12) months.

M. If an individual who is out of work for more than six (6) consecutive months other than Long Term Disability (see #12, above) is later able to return to work, he/she will be given consideration based upon:

   1. Length of time he/she has been off MBCG payroll (refer to Anniversary Date and Bridging of Service, policy 7.01.)

   2. Whether an open position for which the individual is qualified is available.

   3. Prior work record.

   If these conditions are satisfactory, re-hiring of the individual will be in the sole discretion of the hiring manager.

Approved and Adopted, December 31, 2013                         MBCG Policies and Procedures

Krage, et al-000323

**6.03**

# CUSTOMER SERVICE

All MBCG employees are expected to serve the public, business associates, suppliers, and other employees with courtesy, professionalism, and respect for the basic human dignity of all people, regardless of their station in life. Providing good customer service is a primary responsibility for everyone employed by MBCG, as well as, for MBCG's elected officials, contract employees and agents, State or Federal employees doing business or working with MBCG, visitors, and any person doing business for or with MBCG.

Citizens of Macon-Bibb County and fellow employees are the customers we serve each day. Employees are expected to treat one another and members of the public with respect, courtesy, and dignity, even when there is a disagreement or conflict. Employees are expected to remember the following principles and conform behavior to these standards in the course of their everyday duties:

1. Be respectful of all persons with whom you come into contact, without consideration for their appearance, race, gender, national origin, orientation, disability or frame of mind.

2. Citizens of Macon-Bibb County are our customers; their tax dollars pay our salaries.

3. Co-workers in our departments and other employees of MBCG are our internal customers, who are equally entitled to respect and good customer service.

4. Behavior speaks as loudly as words. A pleasant expression, eye contact, and a sincere interest in each request go a long way toward fostering public confidence and projecting the integrity of MBCG.

5. Professional appearance goes hand in hand with employee behaviors.

6. Employee behavior in each interaction with the public is an assessment of the employee's performance and MBCG's performance.

**6.03**

Krage, et al 000325

**6.04**

## EMPLOYEE DRESS CODE

The MBCG considers it very important that employees be well-groomed, neat, and dressed appropriately for their respective job functions. While the members of the County Commission trust each employee's common sense and good judgment, a dress code must be followed which is appropriate to the work environment MBCG has generally adopted a business casual dress code, but emphasizes that some positions of employment may call for more professional level attire. Appropriate dress and hygiene are important in promoting a positive image to our customers, both internal and external.

1. MBCG expects employees to be well groomed, clean, neat and professionally dressed at all times. Work attire should complement an environment that reflects an efficient, orderly and professionally operated organization.

   Under no circumstances may employees wear halter tops, strapless tops, spaghetti straps, tank tops, cropped tops, clothing with offensive wording, clothing that shows undergarments (sheer), torn clothing, clothing with holes, or tight fitting, revealing, or oversized clothing, flip flops, or sandals. All clothing must be clean, neat, and proper fitting. Moreover, MBCG expects its employees to dress professionally every day.

2. Employees required to wear uniforms due to the nature of their work will have uniforms furnished by MBCG. If uniforms are provided, employees are expected to keep them cleaned, press and in good repair.

3. Proper personal hygiene is essential to and for all employees.

This policy applies to all MBCG employees, appointed officials, contract employees and agents, and to state or federal employees doing business or working on MBCG premises.

Approved and Adopted, December 31, 2013                              MBCG Policies and Procedures

Krage, et al-000327

**6.06**

## ON CALL (Standby) POLICY

The MBCG may require certain employees to be placed on call (standby) for emergency response after normal duty hours. Employees who are placed on call in any department may be required to be on-call on a weekly rotation. On call status is assigned on a rotating basis and should be assigned by a supervisor with prior approval of the department head. Employees who are scheduled to be on leave (vacation, sick or other scheduled leave) cannot be scheduled for on call (standby) duty.

When an employee is on call, MBCG will provide a pager and/or cell phone, which must be carried by the employee at all times inclusive of evenings, holidays and weekends. During the on call week, the supervisor will also be provided with a MBCG vehicle to drive to and from his/her residence; however, such MBCG vehicle may not be used for any personal use other than transportation to and from work.  In the event of a call, the employee should be able to respond to any occurrence within the territorial boundaries of Bibb County within thirty (30) minutes of the call being received.

The supervisor will be responsible for determining whether there is a need for additional employee assistance for a particular call, and for securing that assistance. However, the supervisor is not permitted to impose his/her requirement to be on call to other employees of his/her crew.

As for compensation for the on-call time, the employee will be paid their regular hourly rate for two hours for each day on which he/she is on call and four hours for each Saturday, Sunday or Holiday he/she is on call regardless of whether he/she is actually required to respond to a call. On-call time is not time actually worked and will not be included when calculating overtime.

The rate of pay for actual work time while on call shall be in accordance with MBCG pay policy regarding overtime pay. Employees who have not met the threshold for required overtime shall be paid regular rate until he/she meets the required threshold.

In the event the on-call supervisor must respond to a call during the on-call time, he/she will be paid for any time actually worked inclusive of the on-call time (Ex. An employee is on call during the work week, receiving two hours on-call pay, and is called into work. The employee works 3 hours.  The employee will be paid for 3 hours worked.)

Approved and Adopted, December 31, 2013                                    MBCG Policies and Procedures

Krage, et al-000329

**6.08**

# SOLICITATION

While MBCG recognizes the worthiness of many causes and organizations, in the interest of a productive and harmonious work environment, the following regulations shall apply to solicitation of donations, fundraising sales, and distribution of literature:

1. Solicitation and/or distribution of literature by non-employees in non-public areas of MBCG property is prohibited at all times. Solicitation and/or distribution of literature by non-employees on MBCG property which interferes with the work of MBCG employees is prohibited.

2. Solicitation and/or distribution of literature by employees on MBCG property during working hours which in any way interferes with the work of the employee soliciting or the work of other employees are prohibited. If a supervisor believes that the solicitation or literature distribution is interfering with work, he/she shall request that the employee immediately cease the disruptive activity and return to work activities.

3. Employees who wish to post an announcement of interest to employees in or on MBCG property must obtain permission from the Human Resources Department. Employee posted announcements must be removed from MBCG property by the posting employee when the information becomes outdated.

4. Distribution of literature by employees on MBCG property in non-public working areas, as designated by the Human Resources Department, is prohibited at all times.

5. Unless otherwise authorized by the Mayor and Commission, or their designee, MBCG buildings may not be used for activities unrelated to MBCG outside of normal business hours. This provision shall not be interpreted as applying to MBCG property that is leased to other parties.

6. This policy does not prevent any official MBCG solicitation or distribution of literature, open benefits enrollment, and in no way affects the annual charity drive(s) authorized by the Mayor and Commission or County Manager.

Approved and Adopted, December 31, 2013                              MBCG Policies and Procedures

Krage, et al-000331

**6.09**

# TOBACCO USE

Both Georgia law and the MBCG Code of Ordinances prohibit smoking in public buildings by both employees and visitors. Use of tobacco products, i.e., smoking and use of smokeless tobacco, in areas other than those designated as smoking areas in any MBCG building is strictly prohibited. For purposes of this policy, MBCG buildings include all buildings and structures owned or operated by MBCG.

This policy applies to all employees, elected and appointed officials, contract employees and agents, State or Federal employees doing business or working in MBCG facilities, visitors, and any person doing business for or with MBCG.

Failure to adhere to this policy may result in disciplinary action, up to and including termination of employment.

**Incentive for Cessation of Tobacco Use**

Incentives are available to full-time employees who would like to stop using tobacco and tobacco products. MBCG provides smoking cessation classes and offers a discount on health insurance premiums to employees covered by the MBCG health care plan. Screening for tobacco use may be part of the annual wellness screening for employees covered by MBCG's health care plan. Participation in annual wellness screening is required to receive the full incentive of premium reduction for the next plan year. Employees who are interested in tobacco use cessation should contact a Human Resources representative for more information.

Krage, et al-000333

## 6.10

check and will not be available before two (2) working days prior to the scheduled date of departure. No advance will be made for less than $25.00. For reimbursement of travel expenses of less than $25.00, the traveler must submit a travel expense report after the travel event has been completed.

**Registration, lodging and transportation payments**
Registration fees and fares for common carrier transportation will be paid in advance by the Finance Department by check made payable to the vendor providing the service. The employee shall be responsible for submitting the request for payment (along with the registration form, invoice or bill) in sufficient time for the payment to be processed and mailed prior to any deadline. Whenever possible, lodging accommodations should be paid for in advance in the same manner as registration fees and fares for common carrier transportation.

**Reimbursement of expenses and final settlement of advances**
If the sum advanced to a traveler exceeds actual reimbursable expenses, the traveler shall reimburse the excess to the MBCG Cash Manager in the Finance Department. If the amount advanced was not sufficient to cover the reimbursable expenses or in cases where the traveler used personal funds to pay travel expenses, a voucher will be processed to cover the difference. Reimbursement will be issued within four (4) working days of the receipt of an accurately completed and approved request for reimbursement.

A request for reimbursement of expenses and settlement of advances shall be submitted to the Finance Department within 72 hours following the date of the employee or officer's return to work. Such request and settlements shall be made on such forms as prescribed by the Finance Department. The forms must be signed by the employee's department head.

If a request for reimbursement of expenses is not filed within ten (10) calendar days following the date of the employee or officer's return to work, the Finance Director shall be authorized to void the reimbursement claim.

Should a report for final settlement of advances not be filed within then (10) calendar days following the date of  the employee or officer's return to work, the employee's

Approved and Adopted, December 31, 2013

Krage, et al-000335

## 6.10

Travelers will be reimbursed for actual cost of incidental expenses incurred in the use of private, rental or MBCG-owned vehicles such as parking fees, bridge and toll road fees, etc.

- **MBCG-owned Vehicle**
  If the department for which the traveler works is assigned a MBCG-owned vehicle, the traveler should, if at all possible, use the MBCG-owned auto rather than his personal vehicle.

  If a MBCG-owned vehicle is used, the traveler will not be reimbursed for mileage, but will be reimbursed for the actual cost of purchased gasoline and oil. In addition, small emergency repair expenses such as flat tire, battery charges, fan belt replacement, etc. will be reimbursed, provided that appropriate receipts are furnished. Automotive breakdowns requiring repairs in excess of $200 should be reported to the appropriate department head for instructions.

- **Personal Auto**
  The use of private autos or rental vehicles for MBCG business will be reimbursed at the current IRS rate. Reimbursable travel expenses do not include trips from the traveler's place of residence to a MBCG building or visa-versa. Travelers electing to use a private auto in lieu of travel by common carrier, where common carrier is practical, will be reimbursed the vehicle mileage expense or the amount of Economy Air Fare, whichever is less. Travelers who elect to use a rental vehicle in lieu of travel by common carrier, where common carrier is practical, will be reimbursed at the cost of the auto rental, not including mileage expense, or the amount of Economy Air Fare, whichever is less.

- **Ground Transportation**
  Ground transportation by taxi, bus, or limousine is an allowable expense when actually incurred in conjunction with common carrier transportation to and from terminals, hotels, restaurants, and meeting locations, if necessary. The most economical means of grounds transportation should always be used.

Approved and Adopted, December 31, 2013                                    MBCG Policies and Procedures

Krage, et al-000337

## 6.10

Travelers sharing a room with a traveling companion (other than an authorized MBCG traveler) will be reimbursed for the single occupancy rate.

Travelers requesting additional amenities including, but not limited to, suites, kitchenettes or a fireplace will be reimbursed for the standard single room rate. Travelers must pay for additional amenities.

- **Meals**
  Travelers are allowed a per diem meal allowance while traveling on MBCG business. The per diem allowance is based on the IRS Standard Meal Allowance and varies depending on the particular city to which the official or employee is traveling. The per diem rate for the city to which you are traveling may be obtained from the department head or from the Finance Department.

  The following breakdown will apply for partial days of travel:

  ### Breakfast
  *20% of the daily* per diem allowance when travel begins prior to or at 7:00 a.m. and extends to 9:00 a.m. or beyond.

  ### Lunch
  30% of the daily per diem allowance when travel begins prior to or at 12:00 noon and extends to 2:00 p.m. or beyond.

  ### Dinner
  50% of the daily per diem allowance when travel begins prior to or at 5:00 p.m. and extends to 7:00 p.m. or beyond

  Tips are included as part of the daily per diem allowance and will not be reimbursed as a separate expense.

- **Meals Within Bibb County**
  Expenses associated with meals for officials and/or employees occurring within the territorial limits of Bibb County may be reimbursed if one or more of the following conditions are met:

Krage, et al-000339

## 6.10

arrival of the individual shall be an allowable expense. Expenses for all other personal calls will not be reimbursed.

- **Tips and Gratuities**

  Tips and gratuities in conjunction with an authorized expense (other than meals) shall be allowable if they are determined to be reasonable by the Finance Director. The per diem meal allowance includes all tips and gratuities for meal expenses.

- **Parking Fees**

  Expenses for parking shall be allowable if documented by paid receipt, except however, that no payment shall be made for charges in connection with any illegal parking violation.

- **Credit Cards**

  Whenever allowable expenses are purchased or paid by the employee with a credit card, the receipt shall include an itemization of expenditures, or, in the alternative, a separate receipt must be obtained for each expense. A credit card receipt showing only an aggregate of charges, unless itemized, shall not constitute sufficient documentation and shall not be the basis for reimbursement of expenses.

- **Spouses**

  Reimbursable expenses for spouses include any registration fee in cases when spouses are invited to and considered part of the function or when protocol requires the attendance of spouses. Meals for spouses and/or traveling companions are not reimbursable.

- **Other Expenses**

  Upon justification, the Finance Committee of the County Commission may authorize reimbursement to officials and/or employees for expenses of the limitations prescribed in this policy where the Finance Committee finds that the expenses were reasonable and proper under the circumstances.

Krage, et al-000341

## 6.10

- **Information and Forms**

  Employees and/or officials who have questions concerning this policy or the application of this policy should contact the MBCG Finance Department. The Internal Revenue Service ("IRS") schedule of per diem rates by location for meal expenses, along with the MBCG Travel Advance Requisition Form and MBCG Travel Expense Requisition Form, can be found on the MBCG website, under the tab for Finance Department—Finance Forms.

- **Final Authority**

  The County Manager has final authority for interpreting, applying, and considering any appeals from, this policy.

Krage, et al-000343

## 6.11

- If the situation does not constitute an emergency, contact your immediate supervisor, the appropriate department director, and the Human Resources Department.

All reports of threats or violence will be evaluated immediately and appropriate action will be taken in order to protect employees and the public from further violence. Appropriate disciplinary action will be taken when it is determined that a MBCG employee has committed an act of violence. Where MBCG employees exhibit such behavior, MBCG reserves the right, under the direction of the Director of Human Resources, to determine fitness for duty. Employees may be suspended with or without pay pending this fitness for duty evaluation.

Where issues of employee safety are of concern, department directors and supervisors should evaluate the workplace and make appropriate recommendations regarding a reasonable response. Additionally, supervisors are encouraged to consult with the Director of Human Resources and /or Employee Assistance Program concerning appropriate resolution of instances of workplace violence. Each employee of MBCG and every person on MBCG property are encouraged to report threats or acts of physical violence of which he/she is aware.

*Workplace violence shall constitute a violation of MBCG policies and procedures. Violation by an employee of any provision of this policy will result in disciplinary action, up to and including termination of employment.*

Approved and Adopted, December 31, 2013                    MBCG Policies and Procedures

Krage, et al-000345

## 6.12

1. Unauthorized use, manufacture, possession, sale, or solicitation for the purpose of purchase/sale of drugs or alcohol on MBCG property, while the employee is on duty, or while wearing a MBCG uniform or insignia. Any MBCG employee—regardless of sensitivity of position or duties—who is reasonably suspected of being intoxicated, impaired, under the influence of a prohibited substance or not fit for duty shall be suspended from job duties pending an investigation and verification of condition. Employees found to be under the influence of a prohibited substance or who fail to pass a drug or alcohol test shall be terminated. A drug or alcohol test is considered positive if the individual is found to have a quantifiable presence of a prohibited substance in the body above the minimum thresholds defined in 49 CFR Part 40, as amended.

2. Hindering, obstructing, or refusing to cooperate or participate in any investigation involving suspected violations of this policy. This includes, but is not limited to, providing false, misleading, or incomplete information in response to any inquiry from a supervisor related to a suspected violation of this policy. It also includes refusing to undergo a drug or alcohol test(s). Refusal to undergo testing can include an inability to provide a sufficient urine specimen, saliva sample, or breath sample without a valid medical explanation, as well as a verbal declaration, obstructive behavior, or physical absence resulting in the inability to conduct the test.

3. Hindering, delaying, or obstructing a drug or alcohol test(s), including but not limited to, tampering with a sample or interfering in any way with the chain of custody. Any employee who is suspected of providing false information in connection with a test, or who is suspected of falsifying test results through tampering, contamination, adulteration, or substitution will be required to undergo an observed specimen collection.

4. Reporting to work or engaging in any work activity whatsoever on behalf of MBCG in a condition which could pose a threat of harm to the

Krage, et al-000347

## 6.12

drugs and over-the-counter medication is not prohibited. However, the use of any substance bearing a warning label which indicates that mental function, motor skills, or judgment may be adversely affected must be reported to the employee's immediate supervisor. If an employee obtains a performance altering prescription, he/she must also obtain a written release from the attending physician which states that the employee can perform his/her job duties while using the medication as prescribed. A lawful prescription must include the patient's name, name of the substance, quantity/amount to be taken, and the period of authorization. Misuse or abuse of prescription drugs while performing MBCG business is prohibited.

o   "Over-the-counter medication" includes any substance which does not require a prescription but which has the capacity to affect a person physically, mentally, or emotionally or which could otherwise affect a person's ability to safely perform any essential job function.

- **Safety-Sensitive Employees**
  Safety sensitive employees are those who perform safety-sensitive functions. Safety-sensitive functions include all time from the time an employee begins work or is on call for work and all responsibility for performing work. Safety-sensitive functions include, but are not limited to, any duty related to inspecting equipment; driving or operating, in any manner, a motor vehicle; driving or operating, in any manner, a commercial motor vehicle; loading or unloading a vehicle, supervising or assisting in the loading or uploading, remaining in readiness to operate a vehicle, or in giving or receiving receipts for shipments loaded or unloaded; repairing, obtaining assistance, or remaining in attendance upon a disabled vehicle; maintenance of any motor vehicle or motorized equipment; maintenance and custodial functions.   Safety-sensitive employees also include dispatch personnel; security personnel; law enforcement personnel; any employee who holds a commercial driver's license; and employees of the parks and recreation department who work closely with families and children of Macon-Bibb County.

Approved and Adopted, December 31, 2013                                        MBCG Policies and Procedures

Krage, et al-000349

## 6.12

An employee's name will remain in the pool after being selected so that every employee will have an equal chance of being tested each time selections are made. Therefore, it is possible that any employee who is randomly selected may be randomly selected again during the same year.

Any employee with a confirmed positive drug or alcohol test will be removed from his/her position and referred to a substance abuse professional for assessment at the employee's expense. A confirmed positive drug or alcohol test will result in termination of employment.

3. **After care testing**: Persons in safety sensitive positions returning to work from an approved, self-referred treatment program for drug or alcohol abuse will be subject to frequent, unannounced urine and/or breath testing following return to duty. Follow up testing will be performed for a period of one (1) to five (5) years with a minimum of six (6) tests to be performed during the first year following return to duty.

Employees who re-enter MBCG's work force following self-referral to a drug or alcohol treatment program or facility must agree to a re-entry agreement with MBCG. The agreement may include, but is not limited to:

A. A release to work statement from the substance abuse professional;

B. A negative test for alcohol and/or drug use;

C. An agreement to submit to unannounced and frequent follow-up testing for a period of one (1) to five (5) years with a minimum of six (6) tests to be administered during the first year following return to duty;

D. Statement of work-related behaviors;

E. An agreement to follow specified after-care requirements with the understanding that violations of the re-entry agreement shall be grounds for termination of employment.

Krage, et al-000351

**6.12**

C. The employee acted contrary to a safety rule, established safety practice, or otherwise engaged in demonstrably unsafe behavior for which there is no reasonable explanation;

D. The employee was arrested or received a traffic citation;

E. The employee or any person received medical attention as a result of the accident;

F. The employee has been involved, as a contributing factor, in a pattern of repetitive on-duty motor vehicle accidents whether or not they involved actual or potential injury.

- Drugs, drug paraphernalia, alcohol or containers indicating the presence of drugs or alcohol are observed or discovered in a location in which the employee had primary control or access, including but not limited to, desks, lockers, equipment, machines, or vehicles. The employee must have accessed the location within twelve (12) hours prior to the discovery of such items.

- Specific and objective facts showing the employee diluted, tainted, tampered, or interfered with any breath, blood, or urine sample, or any test(s) required under this policy, or that the employee attempted to do the same.

7. **Post-accident Testing**: When an employee is involved in an on-duty motor vehicle collision or an off-duty motor vehicle collision while operating a MBCG vehicle, or is injured during the course of their employment, alcohol and drug testing will be performed. Alcohol test(s) should be administered within two (2) hours of the accident and drug test(s) should be administered within thirty-two (32) hours of the accident. This testing is to be performed in addition to any drug or alcohol test(s) ordered by law enforcement authorities.

8. **Consent Testing**: When any employee has consented to a drug or alcohol test(s), the consent must be signed by the employee and a supervisor from the employee's department, or an authorized person from the Human Resources Department.

Krage, et al-000353

## 6.12

test by gas chromatography/mass spectrometry (GC/MS) analysis will be conducted. Test results will be certified, to the fullest extent possible under the circumstances, by a laboratory approved by the U.S. Department of Health and Human Services (DHHS). The confirmation test will be considered as having a positive result of the amounts present are above the minimum thresholds established by 49 CFR Part 40, as amended.

- In any instance in which there is reason to believe an employee is abusing a substance other than the seven (7) drugs listed above, MBCG reserves the right to test for additional drugs under its own authority using standard laboratory testing protocols.

- All positive drug test results will be interpreted by a physician approved by MBCG as a Medical Review Officer (MRO) before the results are reported to the MBCG. The MRO will make reasonable efforts to ascertain      whether here may be a legitimate medical explanation for any positive test result by requesting information from the employee prior to administering the test(s).

- Upon notification of a verified positive result for drugs, the employee may request that the remaining portion of his/her (original) split specimen undergo a second confirmation test at his/her expense at a different DHHS laboratory. If the test conducted at the employee's request is negative for the presence of drugs, a third test may be made at MBCG's sole expense at a separate DHHS facility of its choosing. The results of the third facility will be determinative. If the results from the third facility are negative, all prior positive tests will be disregarded and shall not be the basis for any disciplinary or adverse action.

- The method of collecting, storing, and testing the split sample will be consistent with the procedures set forth in 49 CFR Part 40, as amended.  The employee's request for a split sample test must be made to the Medical Review Officer (MRO) within 72 hours of notice of the original sample verified result. Requests after 72 hours will only be accepted if the delay in the request was due to documented facts beyond the control of the employee.

Krage, et al-000355

## 6.12

Failure to comply with all requirements of a treatment program, or continued use of drugs or alcohol during or after completion of such a program, will result in an appropriate disciplinary action if such use results in a violation of this policy. Nothing in this policy is intended to discriminate against any person on the basis of addiction to drugs or alcohol or on the basis of an individual's medical history of addiction to drugs

or alcohol pursuant to the Americans with Disabilities Act (ADA). However, MBCG reserves the right to take into account, for purposes of employment or disciplinary action, any history of criminal activity related to such use to the extent that such may lead to disqualification from employment.

**Proper Application of This Policy**
The MBCG is dedicated to assuring fair and equitable application of its drug and alcohol free workplace policy. Supervisors, managers and department heads are required to use and apply all aspects of this policy in an unbiased and impartial manner. Any supervisor, manager or department head who knowingly disregards the requirements of this policy or who is found to deliberately misuse the policy in regard to subordinates shall be subject to termination.

**Confidentiality**
All reports of test results for drugs and alcohol, searches, or any employee referral to or participation in an EAP program or treatment program for addictive disorders will be maintained in strict confidence. Any person authorized to have access to such confidential information who, without authorization, discloses it to another person shall have engaged in gross misconduct and shall be subject to severe disciplinary action up to and including termination of employment. The confidentiality of such information shall not apply to any use by or communication to the office of the MBCG Attorney, or where the information is relevant to the MBCG's defense in an administrative or civil action. Such information may also be disclosed to the extent required by any federal, state, or local law, statute, ordinance or regulation. All personal health information shall be maintained in accordance with the Health Insurance Portability and Accountability Act (HIPAA); access to such information shall be limited to individuals who need the information to process claims under a MBCG program, or to individuals for whom the employee has signed a release form and presented the form to the administrator of such program.

Approved and Adopted, December 31, 2013                                    MBCG Policies and Procedures

Krage, et al-000357

**7.01**

## ANNIVERSARY DATE AND BRIDGING OF SERVICE

An employee's anniversary date is defined as the date of hire for the latest period of employment with MBCG, City of Macon and Bibb County. The anniversary date is used as a benchmark in a variety of ways relating to qualification for various benefits, seniority, and the employee's performance evaluations.

Previous periods of service may be credited to the employee's service time under certain circumstances for pension purposes only. Employees who have already met their vesting period for pension, but have not yet met eligibility for drawing their vested pension will have their service time bridged after reemployment with MBCG. For non-vested employees rehired by MBCG, no more than five years may have elapsed between the last period of employment and the beginning of the latest period of employment for bridging of service time. *(Refer to appropriate Pension Plan)*

The Human Resources Department will determine whether an employee is eligible for bridging of service at the time of rehire. If the employee is granted credit, he/she will be given an adjusted hire date, which will then serve as the employee's Anniversary Date.

Krage, et al-000359

**7.03**

## COMPRESSED WORK WEEK AND TIMEKEEPING

The MBCG permits some MBCG departments and offices to work a compressed work week consisting of four (4) ten-hour days per week upon approval of the Mayor or County Manager. The department head has discretion to determine whether his/her department will participate. Hours of operation for departments participating in the compressed work week are 7:00 a.m. to 5:30 p.m., with one half-hour for lunch.

Individual employees within a department which offers the compressed work week may choose not to participate and to instead work the regular eight-hour, five (5) day work week.  Department directors will work a five day work week.

Once an employee agrees to the compressed work schedule he/she may opt out or make changes to his/her work schedule approved by his/her department head on one occasion only. The employee's work schedule may be changed in the discretion of the department head to meet the needs of the department. No employee will be permitted to alter his/her work schedule back and forth from regular work hours to the compressed work week schedule at his/her convenience.  The compressed work week schedule shall not be used as a "flex time" option for the convenience of individual employees. Each employee is expected to adhere to his/her chosen schedule once the schedule has been established.

If a department on a compressed work week schedule serves the public, the department's hours of operation are extended to include the compressed schedule hours to allow for availability of services to the public at all times on days when the MBCG facility is open to the public.

### Compressed Work Week Timekeeping

Overtime will be paid to any non-exempt employee who works a compressed work week schedule and who works more than forty (40) hours in one week—just as with any other non-exempt employee of MBCG. (Refer to Fair Labor Standards Act section of this handbook). To record hours worked on time sheets, non-exempt employees who work a compressed work week schedule should enter "10, 10, 10, 10" if they work each scheduled day during the week.

Approved and Adopted, December 31, 2013                                    MBCG Policies and Procedures

Krage, et al-000361

**7.04**

## DEDUCTIONS FROM PAY AND DIRECT DEPOSIT

In accordance with federal, state, and local laws, the following deductions will be made from employee paychecks:

- Federal Income tax
- Social Security tax
- State Income Tax
- Garnishments, Bankruptcies and/or Liens
- Deductions mandate by local, state, or federal law

Authorized deductions will also be made for employee benefit programs--primary and supplemental--chosen by the employee and for any charitable contributions authorized by the employee. Any employee benefit program must be officially approved, adopted and implemented by the MBCG County Commission. Deductions for employee benefit programs may include health and dental insurance, life insurance, retirement plans and deferred compensation programs, and other approved savings programs.

Employees should contact the Human Resources Department for information regarding voluntary deductions from pay, including deduction of union dues. Questions concerning deductions for taxes, garnishments, bankruptcies or levies should be directed to the Finance Department.

**Direct Deposit**
- Newly hired employees will be informed that direct deposit is the desired MBCG's standard method of paying employees.

- Employees may choose to deposit into two (2) bank accounts. This may be two (2) accounts at one bank or separate accounts at two (2) different banks.

    1. Employees at their discretion may elect to receive a check rather than direct deposit. Employees who are not currently using direct deposit may sign up to have their pay directly deposited by contacting the Finance or Human Resources Department.

Approved and Adopted, December 31, 2013                    MBCG Policies and Procedures

Krage, et al-000363

**7.05**

## OVERTIME PAY

From time to time, MBCG employees may be required to work overtime at the request of their immediate supervisor or department head. It is the policy of MBCG to comply with the Fair Labor Standards Act ("FLSA") with regard to overtime payment for non-exempt employees. All overtime hours must be approved in advance by the department head or his/her designee. An employee's base work week or work cycle for computing overtime compensation will be the actual hours worked. Annual leave, holidays, sick leave and other leave time will not count toward hours worked for overtime pay purposes.

Exempt employees and non-exempt employees are expected to work 40 hours per week.  Exempt employees are not eligible for overtime pay and are expected to work whatever hours are necessary in order to meet the performance expectations outlined by their supervisors. Exempt and non-exempt employees are required to record and track time.  All employees (exempt and non-exempt) are expected to discuss scheduling (including meetings off-site) with their supervisor in advance of absences, leaving early or coming in late.

Non-exempt hourly employees will be paid overtime at a rate of one and one-half times their regular hourly rate for all hours worked over forty (40) hours in a work week. For all employees, only actual hours worked count toward the computation of any weekly overtime.

**Employees Excluded From Overtime**
Exempt salaried employees do not receive overtime pay. Also excluded from the overtime pay requirements of the FLSA are:

- **Elected officials**--Includes holders of public elective office, members of the officeholder's personal staff, employees appointed by elective officials to policymaking positions, and employees who serve as immediate advisors to the constitutional or legal powers of the officeholder.

- **Executive personnel**--Includes employees who earn a salary of not less than $455 per week and  whose  primary  duties  include  management  of  an

Krage, et al-000365

## 7.05

**Definition of "hours worked"**

For purposes of FLSA compliance, "hours worked" includes all time that an employee is required to be on duty, or on the employer's premises, or at a prescribed workplace for the employer, and all time during which the employee is required or permitted to work for the employer. Hours worked have been established as at least all time spent in physical or mental exertion controlled or required by the employer and pursued necessarily  and primarily  for the benefit  of  the  employer or  his  business. This  term

includes any work which the employee performs on or away from the premises, if the employer knows or has reason to believe that the work is being performed.

Time spent by an employee in waiting for and receiving medical attention at the direction of MBCG during the employee's normal working hours on days when he is working constitutes hours worked. This includes time spent traveling to and from and visiting the doctor's office for workers compensation physician and physical therapy appointments.

*Annual leave, sick leave, worker's compensation time, and other leave time will not count toward the hours worked in the work cycle for overtime purposes.*

In addition, the following categories of time associated with work are further defined under the FLSA:

1. **Waiting Time**—In cases where an employee is unable to use his/her time effectively, but waiting is an integral part of the job, such time is considered to be hours worked.

2. **Off Duty**—Periods during which an employee is completely relieved from duty and which are long enough to enable the employee to use the time effectively for his/her own purposes are not hours worked.

3. **Meal Periods**--Bona fide meal periods are not working time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals.  Ordinarily thirty (30) minutes

Krage, et al-000367

## 7.05

any personal use other than transportation to and from work.  In the event of a call, the employee should be able to respond to any occurrence within the territorial boundaries of Bibb County within thirty (30) minutes of the call being received.

The supervisor will be responsible for determining whether there is a need for additional employee assistance for a particular call, and for securing that assistance. However, the supervisor is not permitted to impose his/her requirement to be on call to other employees of his/her crew.

As for compensation for the on-call time, the employee will be paid as though he/she actually worked two hours for each day on which he/she is on call and four hours for each Saturday, Sunday or Holiday he/she is on call regardless of whether he/she is actually required to respond to a call.

The rate of pay for actual work time while on call shall be in accordance with MBCG pay policy regarding overtime pay. In the event the on-call employee must respond to a call during the on-call time, he/she will be paid for any time actually worked above and beyond the on-call listed above. Employees who have not met the threshold for required overtime shall be paid regular rate until he/she meets the required threshold.

### Public Safety Activities (Sheriff, Fire)
Employees engaged in law enforcement activities, including correctional officers, on behalf of a public sector employer are subject to liberalized overtime standards under section 7(K) of FLSA.

Law enforcement personnel include an employee who:

- Is a uniformed or plain clothed member of a body of officers and subordinates who are empowered by State statute or local ordinance to enforce laws designed to maintain public peace and order and to protect both life and property from accidental or willful injury, and to prevent and detect crimes;

- Has the power to arrest;

Krage, et al-000369

## 7.05

Overtime pay is required to be paid to law enforcement and fire personnel in accordance with the following table:

| Work Period (Days) | Max. Hours Standards (Law Enforcement) | Max. Hours Standard (Fire) |
|---|---|---|
| 28 | 171 | 212 |
| 27 | 165 | 204 |
| 26 | 159 | 197 |
| 25 | 153 | 189 |
| 24 | 147 | 182 |
| 23 | 141 | 174 |
| 22 | 134 | 167 |
| 21 | 128 | 159 |
| 20 | 122 | 151 |
| 19 | 116 | 144 |
| 18 | 110 | 136 |
| 17 | 104 | 129 |
| 16 | 98 | 121 |
| 15 | 92 | 114 |
| 14 | 86 | 106 |
| 13 | 79 | 98 |
| 12 | 73 | 91 |
| 11 | 67 | 83 |
| 10 | 61 | 76 |
| 9 | 55 | 68 |
| 8 | 49 | 61 |
| 7 | 43 | 53 |

Questions concerning application of this policy should be addressed to the Human Resources Department.

Approved and Adopted, December 31, 2013

MBCG Policies and Procedures

Krage, et al-000371

**7.07**

## WAGE AND SALARY ADMINISTRATION

It is the policy of MBCG to maintain a wage and salary system which maintains internal and external equity. All wage and salary determinations are made based upon the duties of the position. The Human Resources Department is responsible for wage and salary determinations, job classification and re-classification, changes in job titles, and other compensation-related decisions, contingent upon approval by the MBCG County Commission.    The purpose of this written policy is to define the MBCG's pay administration philosophy and to establish a uniform and consistent method for adjusting the compensation and pay received by the employees of MBCG.

### Definitions

- **Pay grade**: Letter assigned to each position in the MBCG that identifies its position in the appropriate pay schedule. (Example: Pay Grade A, B, C, NN, OO, PP, etc.)

- **Pay range**: The minimum and maximum pay for the position and all steps in between.

- **Position**: A collection of duties and responsibilities performed by an employee that has been assigned a classification title and pay grade.

- **Classification title**: The approved title assigned to a position in the MBCG's organizational structure.

- **Job code**: A three-digit number assigned to all classification titles in the MBCG's organization for control and identification purposes.

- **Merit step increase**: Pay increase granted per schedule if work has met satisfactory performance standards if approved by the County Commission for that fiscal year.

- **Starting salary or pay**: Initial salary or pay received by a new employee at the beginning of his/her employment.

- **Promotional increase**: The increase received at the time an employee moves at least one pay grade to a different classification than his or her present pay grade.

Krage, et al-000373

## 7.07

3. Reviews all merit step increases, promotions, demotions, compensations and adjustments for approval.

- **General Salary Administration**

  MBCG's employee compensation policy is to pay salaries commensurate with the value of service performed. Each position will be assigned a pay grade which reflects the level of duties and responsibilities performed.

  The assignment of positions to pay grades is reviewed periodically to ensure that they correspond to competitive levels of compensation for similar positions in local government and industries.

  Recommendations for pay adjustments will be made by the employee's immediate supervisor or department head, reviewed by the Human Resources Director and approved by the Human Resources Committee.

- **Hiring Range**

  The Mayor and County Commission has established the first three (3) steps of each grade as the hiring range for the positions associated with that grade in order to provide flexibility in the hiring of exceptionally qualified candidates. Hiring above step 3 in a particular pay grade shall be reviewed by the Human Resources Director and approved by the County Commission.

- **Compensation Program**

  A compensation evaluation study (salary survey) will periodically be made for the entire MBCG pay structure, with a goal of conducting such a study at least every three (3) years. Pay ranges and individual compensation may be adjusted as necessary by the MBCG to maintain a competitive compensation program.

- **Merit Step Increases—Non-Promotional**

  New employees may be granted one (1) merit step increase at the end of six (6) months continuous service for satisfactory performance if merit increases have been approved by the County Commission for that fiscal year. This first six (6) months of employment is the new employee's probationary period.

  Step dates will be adjusted to compensate for time loss through any unpaid leave of absence.

Approved and Adopted, December 31, 2013                                    MBCG Policies and Procedures

Krage, et al-000375

## 7.07

**NOTE**: *Employees reclassified and placed above step one of a pay grade will retain the same step date held previously.*

### Demoted Employee's Pay

Employees demoted for cause to positions for which they are qualified will have their compensation adjusted to the hourly wage rate of the step in the lower pay grade which is equal to one step less than the step the employee holds in his or her present pay grade.

**NOTE:** *Employees demoted for cause will have a new step date coinciding with the date of the demotion.*

### Transfers

An employee transferring from one position classification to another position classification will continue to be paid at their present rate of pay or at step one of the new position, whichever is higher.

**NOTE:** *Transferred employees will retain their same step date.*

### Unsatisfactory Performance Pay

An employee whose performance is not satisfactory (after the employee has been appropriately counseled and warned) may have his or her pay decreased by one step in his or her present pay grade.

An employee whose pay is reduced should be given a maximum of 90 days to bring his or her performance to a standard at which time his or her pay will be returned to the level held prior to decrease. Employees who cannot or do not improve in the time period stipulated should be considered for demotion or possible termination.

When an employee's merit step increase is due and the employee is evaluated as an unsatisfactory performer, the employee is not eligible for an annual merit increase. Department heads must receive the concurrence of the Director of Human Resources before reducing employee's pay due to unsatisfactory performance.

Approved and Adopted, December 31, 2013                    MBCG Policies and Procedures

Krage, et al-000377

# SECTION 8: LEAVE

| POLICY | NUMBER |
|--------|--------|
| Annual Leave | 8.01 |
| Family and Medical Leave Act (FMLA) | 8.02 |
| Funeral Leave | 8.03 |
| Jury Duty Leave | 8.04 |
| Sick Leave Bank | 8.05 |
| Military Leave | 8.06 |
| Sick Leave | 8.07 |
| Request / Report Time Off | 8.08 |

Krage, et al-000379

## 8.01

Annual leave entitlement is paid at the rate of pay received at the time of the leave (normal hourly wage) but not including overtime pay. Employees (or their supervisor if the employee is unavailable) will record on the weekly time sheet any annual leave taken. Employees working on a compressed work week schedule will record ten (10) hours for each day of annual leave taken; all others will record eight (8) hours for each day of annual leave taken. This does not apply during a week in which a holiday recognized by MBCG falls; all employees work eight (8) hour days during holiday weeks.

If an employee records annual leave on his/her weekly time sheet and the employee does not have an annual leave balance to cover such leave, the leave will be charged to any banked compensatory time to cover the leave. If the employee has no accrued annual leave or banked compensatory time, the leave will be unpaid. Unpaid leave cannot be taken where an employee has an existing annual leave balance.

Negative balances of annual leave hours will not be allowed. Annual leave cannot be used until the week following the week in which the accrual was earned.  No more than 480 hours of accumulated annual leave may be carried over into the next calendar year for all employees except firefighters. No more than 720 hours of annual leave may be carried over into the next calendar year for firefighters who work a 60 hours week. For employees participating in the Bibb County Pre May 2011 Pension Plan, all annual leave hours in excess of 480 hours on December 31st of each year will be credited toward "service time" when calculating the employee's pension benefit. Former City of Macon sworn employees hired prior to 1977 leave accumulation will remain the same, but will follow the new accrual rates. On December 31 of the requisite year, for employees not in the Bibb County Pre May 2011 Pension Plan, any hours over 480 (720 where applicable) will be lost. During the year an employee retires or terminates employment with MBCG, he/she will be paid for the full balance of hours, including any accrued over the 480 hours carried over from the previous year. No former City of Macon employee will have vacation leave applied to service time at retirement. Accrued
annual leave may be used in lieu of sick leave when an employee's sick leave has been exhausted. For exempt employees, annual leave should not be used—or marked on the

Krage, et al-000381

## 8.01

| Accrued Leave | Work Days | Hours Per Week | Hours Per Pay Period | Sworn Firefighter (60 hours per week) |
|---|---|---|---|---|
| 6 months to 5 years | 10 | 1.54 | 3.08 | 4.62 |
| 5 years to 10 years | 12 | 1.85 | 3.70 | 5.55 |
| 10 years to 15 years | 15 | 2.31 | 4.62 | 6.93 |
| 15 years to 20 years | 20 | 3.08 | 6.16 | 9.24 |
| 20 years plus | 25 | 3.85 | 7.70 | 11.55 |

*The "20 years plus" accrual rate will not be available to former Bibb County and City of Macon employees hired after May 1, 2011.*

Employees terminating employment with MBCG after six (6) months of service will be paid their annual leave entitlement in one lump sum, on the pay period following the final pay check. Part-time employees are not eligible for annual leave or accrual of annual leave.

Krage, et al-000383

**8.02**

leave entitlements provided under federal, state, and local law. Leave that qualifies as both leave to care for a covered service member and leave to care for a family member with a serious health condition during a single 12-month period may not be designated and counted as both types of leave. Such leave will be designated first as leave to care for a covered service member.

- Unless otherwise required by law, no employee will be entitled to more than a combined total of 26 weeks of leave in a single 12-month period for any FMLA-qualifying reason.

- The FMLA permits eligible employees to take leave intermittently or on a reduced-schedule leave when medically necessary for the serious health condition of the employee's or the employee's family member or to care for a covered service member with a serious injury or illness. In the case of planned medical treatment, the employee must attempt to schedule the intermittent or reduced-schedule leave so as not to unduly disrupt MBCG's operations. Intermittent leave is not available for the birth, adoption or placement of a child unless agreed to by MBCG. MBCG may transfer the employee temporarily to an alternative position with equal pay and benefits that better accommodates any recurring periods of intermittent leave.

- If an employee is entitled to paid leave under another benefit plan or policy, which includes, but is not limited to, short-term disability, unused paid vacation, sick leave, annual leave, or banked compensatory time, the employee must substitute the paid leave for FMLA leave. Such available paid leave will be counted against the unpaid FMLA leave entitlement. The employee is required to satisfy any procedural requirements for receiving payment under paid leave as provided in this Manual when substituting paid leave for FMLA leave.

**Definition of Serious Health Condition**
A serious health condition is an illness, injury, impairment, or physical or mental condition that involves either an overnight stay in a medical care facility, or continuing treatment by a health care provider for a condition that either prevents the employee from performing the functions of the employee's job, or prevents the qualified family

**8.02**

Krage, et al-000385

## 8.02

business days whether the leave will be designated and counted as FMLA leave, absent extenuating circumstances.

- When scheduling elective medical treatment, the employee must consult with the MBCG in advance to ensure that their department's operations are not unduly disrupted by the employee's absence(s).

- Employees out of work due to an injury which is covered by worker's compensation for more than seven (7) days must utilize FMLA leave hours concurrent to time out of work for worker's compensation.

**Certification and Recertification of Leave**

1. MBCG requires that an employee provide a complete and sufficient certification of a serious health condition of the employee or the employee's family member, of a qualifying exigency, or of the need to care for a covered service member with a serious injury or illness. Certification forms are available from the Human Resources Department. The employee must submit the completed certification form to the Human Resources Department within fifteen (15) calendar days, unless it is not practicable to do so under the particular circumstances. Failure to provide such certification may result in the delay or denial of FMLA leave.

2. If the MBCG has reason to doubt the validity of a medical certification, the MBCG, at its own expense, may require a second medical opinion from a physician it chooses. If the first and second opinions differ, the MBCG, at its own expense, may require the opinion of a third health care provider that is approved jointly by the MBCG and the employee. The third opinion will be considered final and binding.

3. Where the employee's need for leave due to the serious health condition of the employee or the employee's covered family member lasts beyond a single leave year, the MBCG requires the employee to provide a new medical certification in each year the employee subsequently takes leave.

Approved and Adopted, December 31, 2013                    MBCG Policies and Procedures

Krage, et al-000387

## 8.02

- Employees will be required to periodically advise the MBCG of their status and intent to return to work at the conclusion of the FMLA leave. Employees also must provide notice to the MBCG at least two (2) business days prior to their return to work. If an employee unequivocally indicates his or her intent not to return to work after taking FMLA leave, the employee is subject to termination.

### Return from Leave

Employees returning from FMLA leave will be restored to the same or an equivalent job. The FMLA does not entitle a restored employee to any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave.

Krage, et al-000389

## 8.04

# JURY DUTY LEAVE

Any full-time MBCG employee is eligible for a leave of absence for jury duty.

To receive a leave of absence for jury duty, the MBCG employee must present to his/her department head, official notification that he/she has been called for jury duty. Any employee who is released from jury duty, or who is dismissed early from jury duty, is responsible for reporting back to work as soon as possible. A copy of the Jury duty notice must be forwarded to payroll.

Employees serving jury duty during their regularly scheduled work hours will receive their regular salary for jury duty hours served, as long as the department head has confirmed the leave of absence for jury duty. The hours spent serving on jury duty will be considered hours worked. Additionally, the employee is entitled to keep his/her remuneration for serving on jury duty in addition to his/her pay from MBCG.

Krage, et al-000391

## 8.05

If the member has not accumulated sick leave at the time of the assessment, the first accrued hours up to the equivalent of one workday will be assessed. Deposits into the sick leave bank are not refundable or transferable.

### Eligibility for Sick Leave Bank Withdrawals

A member of the sick leave bank may request withdrawal of sick leave from the bank provided that:

1. The member is absent due to a personal illness, non-job related injury or temporary disability that requires the employee to be absent from work for five (5) or more consecutive days. An employee's family illness does not qualify for withdrawal.

2. The member has exhausted all accumulated sick leave and banked compensatory time (where applicable).

3. Vacation leave balances do not have to be used unless needed after the withdrawal of bank hours.

4. The member is not receiving workers' compensation

5. The member has not received any disciplinary actions due to violations of the leave and attendance policies within the last twelve (12) months.

### Procedure for Requesting Withdrawals

Requests for withdrawals must meet the following requirements:

1. The request for leave must be accompanied by a physician's statement verifying the member's illness, injury (non-job related) or temporary disability and attesting to the member's incapacity to performed assigned duties. The statement must be presented at the time of request for withdrawals of hours except in cases where the employee is confined to a hospital. In case of hospital confinement, a statement must be sent within ten (10 work days) of application. The member

Krage, et al-000393

## 8.05

on misstated information, erroneous or false information will be required to repay MBCG for the time granted and will be subject to disciplinary action pursuant to the Conduct and Discipline Guideline.   "Group Offense III #5, making false claims or misrepresentations in an attempt to obtain sickness benefits."

### Administration

The Human Resources Director or his/her designee will administer the sick leave bank in accordance with the regulations contained herein. The Human Resources Director or his/her designee has the responsibility of receiving, verifying and acting on requests for membership and withdrawals.

Krage, et al-000395

## 8.06

- ***Leave of absence while attending service schools*** – If you are or become a voluntary member of any force of the organized militia or of any reserve force or reserve component of the armed forces of the United States, you may take a leave of absence while in attendance at any service school conducted by the armed forces of the United States for a period up to and including six (6) months, and while going to and returning from the school. However, you are not entitled to leave in excess of a total of six (6) months during any four-year period.

- **Employment rights** - Time during which you are on military leave shall not constitute an interruption of continuous employment, and you will not be subject to any loss or diminution of time, service, increment (merit increase), vacation, holiday privileges, or any other right or privilege by reason of such absence.

  You will be paid your full salary or other compensation for any periods of absence while engaged in the performance of ordered military duty and while going to and returning from duty, not exceeding a total of eighteen (18) days (144 hours total) in any one federal fiscal year.

  In the event the Governor of Georgia declares an emergency and orders you to perform military duty as a member of the National Guard, you will be paid your full salary or other compensation during such military service for a period not exceeding thirty (30) days (240 hours total) in any one federal fiscal year.

  **NOTE:** *The military leave requirement does not apply to employees who are employed on a temporary basis.*

- **Reemployment rights** – You have the right to be reemployed in your civilian job if you leave that job to perform service in the uniformed service and:

  1. You ensure that your employer receives advance written or verbal notice of your service, unless such notice was precluded by military necessity or otherwise impossible or unreasonable;

Krage, et al-000397

## 8.06

3. **181 days or more**: You must apply for reemployment no later than ninety (90) days after completion of military service.

4. **Absence for any length of time for purposes of an examination to determine your fitness to perform service in the uniformed services**: By the beginning of the first regularly scheduled work period after the end of the calendar day of duty, plus time required to return home safely and an eight (8) hour rest period. If this is impossible or unreasonable through no fault of your own, then as soon as possible.

5. **Service-connected injury or illness**: Reporting or application deadlines are extended for up to two (2) years for persons who are hospitalized or convalescing.

If you fail to report or apply for employment or reemployment within the appropriate period, you do not automatically forfeit your entitlement to your rights and benefits, but will be subject to the MBCG's conduct rules, established policy, and general practices, pertaining to explanations and discipline with respect to absence from scheduled work.

USERRA establishes a five-year cumulative total for military leave with a single employer, with certain exceptions allowed for situations such as call-ups during emergencies, reserve drills, and annually scheduled active duty for training. However, an employee may complete an initial period of active duty that exceeds five (5) years.

An employer is not required to reemploy a person if:

1. The employer's circumstances have so changed as to make such reemployment impossible or unreasonable;

2. In the case of a person entitled to reemployment under 38 U.S.C. § 4313(a)(3), (a)(4), or (b)(2)(B), such employment would impose an undue hardship on the employer;

3. The employment from which the person leaves to serve in the uniformed service is for a brief, non-recurrent period and there is no reasonable expectation that such employment will continue indefinitely or for a significant period.

Approved and Adopted, December 31, 2013

Krage, et al-000399

## 8.06

For assistance in filing a complaint, or for any other information on USERRA, contact VETS at **1-866-4-USA-DOL** or visit its **website at** **http://www.dol.gov/vets**. An interactive online USERRA Advisor can be viewed at **http://www.dol.gov/elaws/userra .htm**.

If you file a complaint with VETS, and VETS is unable to resolve it, you may request that your case be referred to the Department of Justice or the Office of Special Counsel, as applicable, for representation.

You may also bypass the VETS process and bring a civil action against an employer for violations of USERRA.

- **Penalties/Sanctions** – A court may order an employer to compensate a prevailing claimant for lost wages or benefits. USERRA allows for liquidated damages for "willful" violations.

Krage, et al-000401

## 8.07

managers may develop policies for reporting absences which employees in that department are expected to follow. Employees who cannot come to work due to personal illness should inform their supervisor or manager that they are sick, and how long they expect to be out of work.

If an employee is out of work on sick leave for three (3) days or more, he/she must present a statement from a physician verifying the dates that he/she needed to be out of work due to illness. At the discretion of the department head, an employee may be requested to bring a statement from a physician for an absence of less than three (3) days.

Failure to report an absence at or before the start of the employee's shift as required may result in disciplinary action, up to and including termination of employment. Frequent absences, excessive use of sick leave, patterned absences, or failure to follow reporting requirements will result in an unsatisfactory attendance record which may be considered in the employee's performance evaluation, and may justify disciplinary action up to and including termination of employment.

Non-exempt employees (or the supervisor if the employee is unavailable) must record on the weekly time sheet all sick leave time taken. Employees who work on a compressed work week schedule should record ten (10) hours of sick leave for each day of sick leave taken. This does not apply during a week in which a holiday recognized by MBCG occurs, as all employees work eight (8) hour days during holiday weeks.

Supervisors and MBCG officials are responsible for ensuring that all sick leave utilization is properly used and recorded on the employee's weekly time sheet, and for ensuring that accrued sick leave entitlement is not exceeded. Sick leave is a privilege and benefit of employment provided by the County Commission to MBCG's full-time employees. Sick leave is not an absolute right, and it must be used for the purpose for which it was intended.

If an employee is awarded long term disability, any unused sick leave will remain in the employee's sick leave account. Sick leave will not be accrued while an employee is on unpaid leave for more than one (1) week.

Approved and Adopted, December 31, 2013                    MBCG Policies and Procedures

185

Krage, et al-000403

## 9.01

# ANTI-IDLING

The MBCG has committed to conserve fuel and lessen pollutants that pose a detriment to the region's air quality. These pollutants include nitrogen oxide, carbon dioxide, particulate matter and volatile organic compounds.

- Vehicle idling gets zero miles per gallon of fuel.

- Unnecessary idling wastes fuel and pollute the environment.

- Running an engine at low speed also causes twice the wear on internal parts compared to driving at regular speeds.

- The break-even point for shutting off and restarting gasoline engines or leaving it to idle is 30 seconds – from the point of view of both emissions and fuel consumption.

- Idling of vehicles consumes approximately 17% of the fuel that a vehicle has on board.

Unless exempted in the following section, no MBCG vehicle or piece of equipment is to be idled in a non-emergency situation. The operator of the vehicle/equipment is to turn off the unit and the keys are to be removed from the ignition.

## EXEMPTIONS

The following situations will allow idling, when necessary:

- Emergency vehicles at scenes where lights, PTOs and/or other accessories are needed to accomplish the mission

- Law Enforcement vehicles working traffic enforcement details

- Macon-Bibb County Fire Department, Public Works, Engineering, Lake Tobesofkee, Animal Welfare, and Buildings and Properties vehicles at job sites requiring the use of emergency lights, PTOs and/or other accessories to accomplish their assignment

- Inclement weather situations where use of the heater/defroster is authorized by a supervisor for the work crew's comfort according to the guidelines listed below:

Approved and Adopted, December 31, 2013                                        MBCG Policies and Procedures

Krage, et al-000405

**9.02**

# COMPUTER USAGE

### Introduction

This policy is set forth to communicate to users the accepted and appropriate use of computer systems and services.  It is to ensure that the integrity of the systems is maintained at the highest level while establishing a standard which will create a professional work environment. In addition, this policy is in place to protect MBCG's technological resources and ensure that the rules and regulations set forth by the State of Georgia and the United States concerning the operation of local administrative and criminal justice computer systems are met.

### Scope

This policy applies to every employee, contractor or remote user who is provided access to the system of MBCG computer and network resources, which encompasses:  1) computers provided by MBCG 2) users of computers provided by other sources, but housed in a MBCG Facility 3) any computer used by a MBCG employee in the course of their job responsibilities 4) users connected directly or indirectly to  MBCG's network and/or who directly or indirectly use MBCG computer services 5) any electronic appliance (blackberry, iPhone, iPad, Smartphone, PDA, cell phone, etc.) that is connected to the MBCG network or associated with any MBCG telephone plan.

1. **Ownership of computer and electronic files**

   All computer and electronic files belong to MBCG. Data created by a MBCG employee while working under the auspices of MBCG is owned exclusively by MBCG. Employees are prohibited from unauthorized removal or deletion of computer or electronic files or data compiled during the course of their employment which is considered vital to departmental operations as determined by the Department Director.

2. **Unauthorized access to files and directories**

   Employees shall not engage in any activity intended to circumvent computer security controls. Employees shall not attempt to break passwords, uncover

Krage, et al-000407

## 9.02

such transmissions. Users are advised to use discretion in drafting e-mail messages, and are cautioned not to "say" things by e-mail that they would not want to be viewed by others.

The MBCG's computer systems shall not be used to harass anyone. This includes the use of insulting, sexist, racist, obscene, or suggestive electronic mail.

4. **Electronic mail retention**

Due to the substantial expense involved in an archive system, the MBCG Information and Technology Systems (ITS) Department does not own or manage an Email Archive System. The only emails that are retained are in the Microsoft Exchange files and the server backup system.

All users of MBCG electronic mail are responsible for maintaining their email boxes and any archives they may establish. ITS will assist with the creation of any archives that the user would like to manage. These archives may be created on one of the servers in the ITS department. The user is responsible for retention times and items on the Exchange server, and in their email archive.

ITS performs a backup of all servers on a weekly basis with incremental backups during the week. Up to thirty (30) days' worth of data may be stored on the backup tapes at any time they are needed, but ITS cannot guarantee that an email requested will be retrievable. The user may have deleted the email before any backups were run. In addition, depending on the amount of data backed up during any given week, tapes may cycle earlier than thirty (30) days.

Electronic mails retrieved for e-discovery requests will be provided as a PST file.

5. **No expectation of privacy**

Users have no expectation of privacy regarding e-mail, text message or anything else created, stored, sent or received using the MBCG's IT Network or phone plan. The IT Network is the property of MBCG and all e-mail messages and attachments created or transmitted on the MBCG's IT Network become the property of the MBCG, regardless of the subject matter or purpose. The MBCG

Krage, et al-000409

## 9.02

The use of any element of the MBCG's computer system, including Internet access, for the receipt or transmission of information disparaging to others based on race, national origin, sex, sexual orientation, age, disability, genetic information, or religion is not permitted under any circumstances.   When you are not using the internet, please close your browser (Internet Explorer/Netscape). Do not leave your browser minimized.

The MBCG reserves the right to monitor the user's history of web sites visited, and internet access use in order to ensure compliance with this policy. Employees are prohibited from blogging, i.e., keeping online journals that chronicle various aspects of the blogger's life such as problems on the job, issues in their personal life, politics, favorite television shows, etc. Prohibited under this policy is spending work time writing blogs or reading those created by others.

Many of the materials on the internet are protected by copyright laws. Though materials may seem to be freely accessible, intellectual property laws which apply to print media still apply to software and material published on the Internet. Copying or disseminating material which is copyrighted is prohibited.

8. **Computer Software**

Only software licensed to MBCG or provided to MBCG with proof of license may be installed on MBCG computers. Software must be procured by and installed by MBCG Information and Technology Services. Personal interest, free, shared or any other software of unknown source shall not be installed on any MBCG computer.  Virus protection is crucial to the welfare of our system; therefore, under no circumstances is your virus protection software to be turned off.

9. **Computer Hardware**

All computer hardware and computer upgrades must be purchased and made by the MBCG Information and Technology Services (ITS) department.  Unless there is a special need expressed to the ITS department, all computers purchased by MBCG will be a standard issue computer with Microsoft Office Software. Computer hardware, network hardware and network connections may not be

Krage, et al-000411

C.  Placing confidential or proprietary information of MBCG or a third party on any Internet site without proper authorization or transmitting it to persons who are not permitted to receive such information.

D.  Broadcasting personal views on social, political, religious or other non-business related matters.

E.  Creating or transmitting chain letters.

F.  Soliciting for commercial purposes unrelated to MBCG business.

G.  Sending electronic mail or other electronic communications in a manner which hides or misrepresents the identity of the sender.

H.  Gaining unauthorized access to another employee's user ID or electronic mail messages.

I.  Establishing Internet or other external network connections that would allow unauthorized persons to gain access to the MBCG's communications systems.

J.  Using non-licensed, pirated software.

K.  Transmitting without authorization any internal documents to external parties.

L.  Using MBCG computers in Internet scams or criminal activities.

M.  Doing anything else that conflicts with the intent of this policy or other policies of MBCG.

N.  Unauthorized transfer of MBCG files, data, or information to a home or other personal computer.

Krage, et al-000413

**9.03**

## GREEN COMPUTING

In the interest of conservation of energy, reduction of MBCG's carbon footprint, and extending the life of computers and related equipment, this policy defines steps that employees should take to conserve the energy used by computers and shared-use equipment.

This policy applies to all employees, contractors, vendors, volunteers and other personnel who use, manage, or are responsible for the approval or procurement of computers and shared-use equipment, including servers, network devices, office printers, copy machines, and fax machines.

### 1. Overview

Computers and other office machinery consume power and generate heat whenever they are on. Employees should seek to optimize the power consumption of office machinery in order to reduce the waste, environmental impact, and energy costs associated with its use. Even small changes to the way we typically use and manage common devices can significantly reduce the amount of energy consumed by office machines.

To help reduce MBCG's carbon footprint, save costs related to energy consumption, and extend the life of computers and other equipment, MBCG requires employees to follow energy efficient computing strategies for the devices for which they have direct responsibility. Moreover, we encourage employees to apply the same principles of energy conservation to shared-use devices within office environments.

### 2. Policy

#### Desktop (Personal) computer usage and management

A. Comply with any MBCG remote power management systems. It will be possible to turn some computers on and off to suit an individual's work schedule.

Approved and Adopted, December 31, 2013

Krage, et al-000415

## 9.03

G. Use email or other electronic communication media whenever practical as an alternative to paper memos and faxes

H. Copiers, faxes, and shared-use office devices should be turned on only when needed. On a daily basis, the first person who requires the use of a device should turn it on. Employees should turn off shared-use devices at the end of each work day or, on a daily basis, at whatever time it becomes unlikely that the equipment will be used again before the next day.

I. Always use the most convenient shared printer/copier in your department.

J. You can continue printing confidential documents at your desk.

### Development, architecture, and infrastructure management

A. IT, project, and development managers should factor energy-efficiency and utility cost savings into technology decisions. Virtualization technologies that optimize server use, for example, can improve the operating efficiency of server and data center environments.

B. Development managers should consider the need for information availability in server allocation and selection. When possible, resources or processes that may be made periodically unavailable (e.g., overnight, on weekends, and over holidays) should be housed on servers that can be periodically shut down to reduce energy consumption.

### Data Center Management

A. The MBCG IT Department must review and document data center equipment use at least once every 2 years for:

1. Excess numbers of data copies, indicating inefficient use of server resources

2. Dormancy of information resources stored in the data center. Data that has not been accessed at least once in the previous 2 years should be marked for removal to offline storage media.

Krage, et al-000417

## 9.03

B. Procurement should prefer equipment that is certified by the U.S. Environmental Protection Agency's (EPA) "Energy Star" program at a Plus 80 rating or higher. Where the cost difference between a technology alternative rated at Plus 80 is less than ten (10) percent higher than an alternative rated at a lower energy efficiency (all other factors being equivalent), the more energy efficient alternative should be purchased.

C. Flat-panel liquid crystal display (LCD) monitors should be preferred over conventional cathode-ray tube (CRT) monitors.

D. Printers that can print on both sides of paper (duplex printing) should be preferred over single-side printers.

E. Except in cases of a specific business or security need for the procurement of a dedicated printer assigned to a single individual, departmental management and procurement should encourage the use of network/shared printers.

F. When procurement of a personal/dedicated printer is indicated, procurement should prefer more energy-efficient inkjet printers over laser printers.

G. Procurement should actively seek and evaluate energy efficient and "green computing" offerings, noting computer vendors that offer resource-efficient machines designed for eventual recycling.

### 4. Equipment Reclamation, Recycling, and Disposal Management

A. Employees who are *not* in charge of equipment disposal should not throw away computers or other equipment, even if they are non-functional. Employees should contact the MBCG IT Department to properly dispose of unused or unusable equipment.

B. Employees who *are* responsible for equipment disposition should seek, whenever possible and always in compliance with secure disposal policies, to recycle, reallocate, or reuse reclaimed equipment.

Krage, et al-000419

## 9.03

D. Reduce the font size on your document which will allow more information on each page.

E. Do not print in color, unless it is entirely necessary. All color printers have an option to print as black and white.

F. Keep your used printed documents to be used again. You should allow the paper to cool from previous printing before using. Print on the unused side for unimportant documents. If possible, load one tray of your printer with paper that has already been printed on one side and use that paper for draft documents.

G. Use email or other electronic communication media whenever practical as an alternative to paper memos and faxes

H. Copiers, faxes, and shared-use office devices should be turned on only when needed. On a daily basis, the first person who requires the use of a device should turn it on. Employees should turn off shared-use devices at the end of each work day or, on a daily basis, at whatever time it becomes unlikely that the equipment will be used again before the next day.

I. Always use the most convenient shared printer/copier in your department.

J. You may continue printing confidential documents at your desk.

## 6. Enforcement

Willful violation of this policy may result in disciplinary action which may include performance sanctions, termination of employment for employees and temporary employees, termination of employment relations in the case of contractors or consultants, or dismissal for interns and volunteers. Additionally, individuals may be subject to restriction or suspension of MBCG electronic mail privileges.

Approved and Adopted, December 31, 2013                                    MBCG Policies and Procedures

Krage, et al-000421

In the event that an employee's personal hand-held device becomes subject to a legal hold or electronic discovery requests, the employee must surrender the device if asked to do so. All files on the device may be subject to copying, and relevant files may be used in a MBCG legal proceeding. The ITS Department has no obligation to provide a replacement device during the period of legal hold. By utilizing personal hand-held device access to MBCG network resources, the employee specifically agrees to allow the MBCG Attorney or his designee to review and copy information on the personal device at any time the MBCG Attorney deems it necessary.

In the event of a legal event hold affecting an employee's device, the ITS Department will inform the employee of any restrictions on services which may be used on a particular device.

Krage, et al-000423

## 9.05

    3. Implementation plan, as well as process for managing site accounts such as frequency and protocol associated with posting information. While social media sites do not entail a direct financial cost, they do require human resources. The department is responsible for tasks such as updating, monitoring content, and fulfilling public information requests.

B. MBCG's web site will remain MBCG's primary and predominant Internet presence. MBCG's best and most appropriate use of social media tools falls generally into two (2) categories:

    1. As channels for disseminating time-sensitive information as quickly as possible (e.g., emergency information).

    2. As marketing/promotional channels to increase the MBCG's ability to broadcast its messages to the widest possible audience.

C. Wherever possible, content posted to MBCG social media sites will also be available on the main MBCG web site.

**Wherever possible, content posted to MBCG social media sites should contain links directing users back to the official MBCG web site for in-depth information, forms, documents, or online services necessary to conduct business with MBCG.**

D. As is the case for MBCG's web sites, a designee of the department director may be responsible for the content and upkeep of any social media sites their department may create.

All social media sites shall comply with all appropriate MBCG policies and standards, including, but not limited to:

    1. Computer usage policy
    2. Personal hand held device usage policy
    3. Electronic correspondence policy

Approved and Adopted, December 31, 2013                       MBCG Policies and Procedures

Krage, et al-000425

related to MBCG business, including a list of subscribers and posted communication, may be subject to production under the Open Records Act. The department maintaining the site will be responsible for providing records in response to any request for records on social media made pursuant to the Open Records Act. Content related to MBCG business shall be maintained in an accessible format and so that it can be produced in response to such a request. Wherever possible, such sites shall clearly indicate that any articles and any other content posted or submitted for posting are subject to public disclosure. Users shall be notified that open records requests must be directed to the relevant departmental information officer.

Georgia state law and relevant MBCG records retention schedules apply to social media formats and social media content. Unless otherwise addressed in a specific social media standards document, the department maintaining a site shall preserve records required to be maintained pursuant to a relevant records retention schedule for the required retention period on a MBCG server in a format that preserves the integrity of the original record and is easily accessible.

### Social Media Use By MBCG Employees

1. Social media will only be used as a vehicle for communicating MBCG's message.

2. When utilizing social media activities for MBCG business, those activities are considered an extension of MBCG's information network and are governed by the computer usage policy, electronic mail policy, and personal hand-held device usage policy.

3. Outside the workplace, your rights to privacy and free speech protect online activity conducted on your personal social networks with your personal e-mail address. However, what you publish on such personal online sites should never be attributed to MBCG, and should not appear to be endorsed by or originated from MBCG. If you choose to list your work affiliation on a social network, then you should regard all communication on that network as you would in a professional network. Online lives are ultimately linked, whether you choose to mention MBCG in your personal online networking activity or not.

Krage, et al-000427

**9.06**

## TELEPHONE USE

The MBCG telephones are intended to be utilized for conducting MBCG business. Employees who make or receive personal calls must limit them to short conversations. Excessive use of telephones for personal calls not only interferes with completion of work duties by employees, but also ties up telephone lines that are intended for citizens and for MBCG business. Continued excessive or frequent use of telephones for personal calls is grounds for disciplinary action, up to and including termination of employment.

### Use of Cellular Telephones

The MBCG cellular telephones are provided to employees who, due to the nature of their jobs, have a routine and continuing **business** need for use in performing **official MBCG business**. The MBCG expects appropriate and responsible use of MBCG cellular telephones.

Elected officials and department heads will apply the following guidelines in issuing MBCG cellular telephones and in regulating use of such phones by employees:

1. Ensure that the need for and utilization of cellular telephones are clearly justified for MBCG business purposes.

2. Consider alternative solutions for work production and communication prior to issuance of a MBCG cellular telephone.

3. Ensure that employees provided with cellular telephones understand the purpose and limitations of usage.

4. Terminate cellular telephone accounts when no longer justified by MBCG business needs or when an employee has demonstrated disregard for the policy.

5. Ensure that employees are responsible for understanding and following all policies relating to use of MBCG cellular telephones.

Krage, et al-000429

## 9.07

# USE OF MBCG-OWNED VEHICLES

### General Policy

The MBCG-owned vehicles are assigned to individual full-time employees of departments for the purpose of facilitating MBCG-oriented and authorized activities of full time employees or the department. Operation of MBCG vehicles on MBCG's streets and roadways is constantly under the watchful eye of the public, so it is imperative that the use and operation of MBCG vehicles be lawful and in complete accordance with this policy. Departure from the terms of this policy not only brings discredit to MBCG and to the individual driver, but also increases the potential for liability on the part of the MBCG, which directly affects taxpayer funding of MBCG. Violation of the terms of this policy may result in disciplinary action up to and including termination of employment.

### Use of MBCG Vehicles

Vehicles owned by, titled to or otherwise controlled by MBCG are authorized for use in the performance of all essential, MBCG-related travel and transportation duties. Unless specifically excluded under this policy, use is not authorized for unofficial travel, unofficial duties or tasks, the transport of unauthorized persons or items, or the performance of tasks outside the rated capabilities of the vehicle. If an employee is uncertain as to whether use of a MBCG vehicle constitutes an authorized use, he/she should evaluate the nature of the travel task to determine whether it is directly related to MBCG business, and should also consider the extent to which the task would be defensible in the event of public criticism or questioning of the task by some higher authority.

Authorized and unauthorized uses of MBCG vehicles are categorized as follows:

### Authorized Uses

1. Performance of law enforcement duties
2. When on official travel status, between place of official business and place of temporary lodging

Krage, et al-000431

## 9.07

4. Transport of hitch-hikers, except in the case of law enforcement personnel

5. Transport of items or cargo having no relation to the conduct of official business

6. Transport of acids, explosives, weapons, ammunition or highly flammable material except in an emergency police situation or performance of an authorized task in the normal performance of duties

7. Transport of any item, equipment or cargo projecting from the side, front or rear of any vehicle in such a manner as to constitute a hazard to safe driving

8. Extending the length of dispatch beyond that required to complete the official business purpose of the trip

9. Transportation between place or residence and place of employment, other than is specified in this policy

10. Outings except planned official MBCG activities

11. Loan of vehicle for use in non-MBCG authorized functions

12. Use of MBCG vehicle while under the influence of alcohol or illegal drugs

Unless approved by the Mayor or his/her designee, no one other than an employee operating within the scope of his or her employment is permitted to operate a MBCG vehicle.

### Vehicle Assignments

The department head is responsible for approving all vehicle assignment within his/her department. A written record of all vehicle assignments will be maintained by the Risk Management staff. In addition, the department head for the affected employee will maintain a similar record. All vehicles shall be clearly identified as required by the MBCG Coed of Ordinances.

Approved and Adopted, December 31, 2013                    MBCG Policies and Procedures

Krage, et al-000433

## 9.07

Minimally, the following guidelines shall be observed in approving exclusive assignment-restricted vehicle assignments:

1. Full-time employee is subject to call for work at any hour due to emergencies. (Also applies to emergency standby vehicles driven home on a rotating basis by more than one full-time employee).

2. Full-time employee must report to a project or work site rather than to his/her assigned office, provided such practice is in the best interest of the MBCG and the function being performed.

3. Full-time employee is a law enforcement officer or assigned to special investigation work and routinely called out for public safety reasons.

4. Full-time employee is on temporary assignment outside his normal assigned area.

5. Full-time employee is a key administrative person who is responsible for projects requiring calling back or is routinely required to attend and participate in various functions/meeting after normal working hours and on weekends, and is a supervisory person not reimbursed for overtime work. Justification for assignment of vehicle to such a key administrative person must include evaluation of nature of employee's work, type of meetings or functions the employee is required to attend, and the frequency of same.

6. Full-time employee is a field technician and/or supervisor required to carry large quantities of tools, equipment or materials that cannot be conveniently loaded and unloaded each day and appropriate security measures to protect tools and equipment are not available.

7. Critical shortage of secured parking facilities.

8. Other circumstances not anticipated herein where the elected official or department head determines that exclusive vehicle assignment is in the best interest of the MBCG and approval is given by the Mayor.

Approved and Adopted, December 31, 2013                                                  MBCG Policies and Procedures

Krage, et al-000435

## 9.07

schedule. Such assignment allows for use of the MBCG vehicle for all authorized uses with the exception of commuting between work site and personal residence.

1. An Eight-Hour Assignment of MBCG vehicle may be approved when:

2. A vehicle is needed and used extensively each working day

3. The need for a vehicle or use of a vehicle does not meet the criteria of Exclusive Assignment

4. Expense associated with furnishing a vehicle for the employee's use is less than expense associated with reimbursement of the employee for mileage based on the number of miles traveled

5. The nature of the employee's work may result in unusual depreciation and wear on a personal vehicle

6. A vehicle other than a passenger car is required due to the need for hauling or handling construction or other specialty equipment

### D. Pool Assignment

Pool assignment is defined as the assigned use of a MBCG vehicle by full-time employees of one or more specific departments for the efficient performance of MBCG business on an "as needed" basis.

MBCG vehicles not assigned to a specific full-time employee/position are designated as Pool Assignment vehicles. These vehicles are to be utilized by department personnel as directed by the department head or elected official. Pool assignment vehicles may be used by any department personnel for out-of-town travel on MBCG business, or as Eight-Hour Assignment vehicles on a temporary basis when approved by the department head. For purposes of this policy, "temporary basis" shall refer to a period not to exceed one (1) week.

### E. Personal Vehicle Assignment

Personal vehicle assignment is allowed for the performance of MBCG business when a MBCG vehicle is not otherwise appropriate or available.

Krage, et al-000437

## 9.07

### Driver Responsibilities

All drivers who operate vehicles owned by, titled to or otherwise controlled by the MBCG are responsible for proper care, use and safety of MBCG property. Drivers must adhere to the following minimum responsibilities:

1. Possess and maintain valid Georgia driver's license approved for the vehicle class appropriate for the MBCG vehicle operated by the employee

2. Exercise best judgment in obeying all traffic rules, regulations, and laws

3. All drivers and all passengers must wear seat belts at all times when the vehicle is in operation

4. Ensure that vehicles are used for authorized purposes only

5. Ensure that vehicles are maintained within the manufacturer's safe standards of operation

6. Report to the supervisor any damage or breakdown of vehicular equipment immediately

7. Report any and all accidents or motor vehicle collisions to the supervisor as soon as possible following the accident

8. Accept legal responsibility for violations and fines resulting from actions of the driver

9. Attend MBCG's defensive driving course at least once every three (3) years. New hires whose job duties require operation of a MBCG vehicle must attend the defensive driving course within ninety (90) days of the date of hire. Other employees must attend the defensive driving course *before* operating a MBCG vehicle where possible, but in no circumstance shall more than sixty (60) days elapse between the  time the employee

Krage, et al-000439

## 9.07

**Use of Seat Belts**

*All persons, while riding in or while operating a MBCG vehicle or motoring equipment, must wear seat belts at all times while the vehicle is in operation.* For purposes of this policy, a vehicle or motorized equipment is in operation when the engine is on.

**Texting while driving**

Texting while driving is illegal in the State of Georgia and is also in violation of this policy. MBCG employees are strictly prohibited from using a wireless telecommunications device to write, send, or read any text based communication, including, but not limited to, a text message, instant message, electronic mail, or any internet data while operating a motor vehicle. This prohibition applies even when the vehicle is stopped at a traffic light. In accordance with Georgia law, these activities may be conducted only when the vehicle is legally parked and the engine is turned off.

**Commercial Vehicle Use**

A commercial vehicle is identified by class, weight and/or use. Operation of a commercial vehicle requires a valid Commercial Driver's License (CDL).  No MBCG employee shall be permitted to operate any commercial vehicle without a valid CDL.

A CDL is required to operate any of the following vehicles:

1. A single vehicle with a Gross Vehicle Weight Rating ("GVWR") of more than 26,000 pounds

2. A trailer with an OVWR of more than 10,000 pounds if the gross combination weight rating (for both vehicle and trailer) is more than 26,000 pounds.

3. A vehicle designed to transport more than fifteen (15) people (including the driver).

4. Any size vehicle which requires hazardous materials placards.

**Use of Commercial Equipment**

1. Any time a commercial truck is parked, the brakes must be set and the wheels chocked.

Krage, et al-000441

## 9.07

### Violations

Any person violating these vehicle regulations must appear before the Mayor and will be held accountable for his or her actions. Violations of this policy may result in disciplinary action.

### Tax Consequences

The taxable benefit received by full-time employees from the personal use of MBCG-owned vehicles shall be reported pursuant to the following Internal Revenue Service ("IRS") valuation methods:

A. *Lease Value Rule.* The value of an automobile provided to a full-time employee is determined by using its annual lease value, based upon the IRS published Annual Lease Value Table. The annual lease value is applicable for a four-year period. At the end of the fourth year, the lease value must be recalculated. The annual lease value does not include the value of fuel, which must be calculated separately. Pursuant to IRS Announcement 85-113, a special accounting period may be utilized for calculating and reporting the benefit. The MBCG utilizes the annual reporting period of November 1 through October 31.

B. *Commuting Rule.* The value of a vehicle provided to a full-time employee for use is determined by multiplying each one way commute by $1.50, which includes the cost of fuel. The calculated amount must be included in the full-time employee's wages or reimbursed by the full-time employee. This rule can be used if all the following requirements are met:

   1. The vehicle is provided for use in the trade or business and, for bona fide non-compensatory business reasons, the employer requires the full-time employee to commute in the vehicle.

   2. The employer establishes a written policy under which full-time employees are not allowed to use the vehicle for personal purposes other than commuting or de minimis personal uses.

   3. The full-time employee does not use the vehicle for personal purposes other than commuting and de minimis personal use.

Krage, et al-000443

# SECTION 10:  ANNEXES

| | |
|---|---|
| **Organizational Chart** | **10.01** |
| **Request/Report For Time Off** | **10.02** |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Krage, et al-000445

## 10.02

# REQUEST/REPORT FOR TIME OFF

NAME: _____     DATE OF REQUEST: _____

## FULL DAY(S) REQUESTED OFF

Date(s) / Time Requested Off: _____

# Annual Leave Hours _____     # Sick Leave Hours_____     # Unpaid Hours _____

- Request for time off should be turned in to your supervisor as soon as you know you desire time off.
- Time off around holidays will not be approved until everyone in the department has made their requests known. Coverage issues, who worked other holidays, and in the event of a tie, seniority, will determine who gets approved time off.
- "No Change" airline tickets or rental down payments, etc. will not necessarily be a reason to approve time off for one person over another.

| ☐ Approved ☐ Denied | _____ <br> *Employee Signature* | _____ <br> *Authorization Signature* |
|---|---|---|

## REQUEST TO BE TARDY/LEAVE EARLY

Date(s) / Time Requested Off: _____

Reason for time away from work?   ☐ Sick Leave      ☐ Annual      ☐ Unpaid Leave      ☐ Make Up      ☐ Exempt

Explanation (if necessary): _____

_____

- While exempt employees do not have to record hours worked, the positions are designed for at least 40 hours per week. Excessive time away from work during regularly scheduled hours may result in corrective action.
- Unless there is an emergency situation, approval must be given in advance to allow time to arrange for coverage of position while employee is away.
- If there is an emergency situation, employees should call their Department Head to report their tardiness, and when they might be expected. If employees are incapacitated and cannot call, they should have someone call on their behalf to inform HR.

| ☐ Approved ☐ Denied | _____ <br> *Employee Signature* | _____ <br> *Authorization Signature* |
|---|---|---|

Approved and Adopted, December 31, 2013                                    MBCG Policies and Procedures

229

Krage, et al-000447