IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JUSTIN KRAGE and AIDEN RENFROE | |
| Plaintiffs, | |
| v. | Civil Action No.: 5:19-CV-00321-MTT |
| MACON-BIBB COUNTY GEORGIA, ET AL., | |
| Defendants. | |

## PLAINTIFFS' BRIEF OPPOSING DEFENDANT MACON-BIBB COUNTY'S MOTION FOR SUMMARY JUDGMENT

**COME NOW**, Plaintiffs in the above-styled civil action, and hereby file this brief opposing Defendant Macon-Bibb County's (hereinafter "Defendant County") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, showing this Honorable Court the following:

### I. INTRODUCTION

Plaintiffs filed suit against Macon-Bibb County, Georgia and the Bibb County Sheriff's Office (hereinafter "Defendant BCSO") to recover unpaid overtime wages for "on-call" time pursuant to the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. §201 *et. seq.*, and to recover unpaid "on-call" ("stand-by") wages pursuant to Sections 6.06 and 7.05 of the Macon-Bibb County Government Policies and Procedures Manual (adopted on December 31, 2013) ("the Manual"), and pursuant to Sheriff David Davis' October 6, 2017 Directive/On-call Pay Guidelines regarding "stand-by" pay (the "Directive").

Plaintiffs file this brief in opposition to Defendant County's Motion for Summary Judgment because questions of fact remain surrounding the existence of (1) an employer/employee relationship between Plaintiffs and Defendant County, and (2) a contract

1

between Plaintiffs and Defendant County. Therefore, dismissal of this case is not warranted as a matter of law and is best left as a question before a jury.

## II. STATEMENT OF FACTS

At all pertinent times herein, Plaintiffs were employed by the Bibb County Sheriff's Office ("BCSO") and worked in a variety of different divisions, including the Traffic Fatality Unit ("TFU"), Criminal Investigations Division ("CID"), Special Weapons and Tactics (SWAT) team, Special Investigations Unit ("SIU"), and Crime Scene Investigations-Forensics ("CSI-F"). Additionally, Defendant County is considered Plaintiffs' joint employer with Defendant BSCO under the theory of "joint employer liability" and is therefore, liable to pay Plaintiffs for "on-call" time pursuant to the FLSA.

When a constitutional officer or independently elected official begins his/her term, he/she is given the option to elect to have the employees of his/her office be governed by and subject to the terms of the Manual. Specifically, the officer can either elect to have his/her employees be bound by <u>all</u> of the terms in the Manual, <u>none</u> of the terms of the Manual, or to elect to have their employees bound by some of the terms and exempt others.[1]

When the city and county governments consolidated on January 1, 2014, Bibb County Sheriff David Davis (hereinafter "Sheriff Davis") was presented with the above-mentioned election form regarding his employees, deputies, and investigators. Sheriff Davis selected the option whereby the employees of his office would be "governed by and subject to the terms" of the Manual, except for the sections relating to hiring, discipline, and the Macon-Bibb County Government Employee Problem Solving (grievance) Procedure.[2] This election form was signed by Sheriff Davis on March 18, 2014, in his capacity as the Sheriff of Bibb County.[3]

---

1 Plaintiff's Exhibit 1 to Deposition of Alisha Duhart.
2 *Id.*
3 *Id.*

The County Board of Commissioners subsequently granted this request.[4] According to the County's HR Director, at no time has Sheriff Davis submitted a request to opt out of the Manual's "on-call" policy found in sections 6.06 and 7.05.[5] Additionally, there are no other County policies with the exception of those carved out in the election form that the Sheriff's deputies are not bound by.[6]

Within the Manual, under sections 6.06 and 7.05, there is a defined "on-call" policy. This policy states in pertinent part as follows:

> As for compensation for the on-call time, the employee will be paid as though he/she actually worked two hours for each day on which he/she is on-call and four hours for each Saturday, Sunday or Holiday he/she is on-call regardless of whether he/she is actually required to respond to a call.
> The rate of pay for actual work time while on-call shall be in accordance with MBCG pay policy regarding overtime pay. In the event the on-call employee must respond to a call during the on-call time, he/she will be paid for any time actually worked above and beyond the on-call listed above.[7]

Since consolidation, the policies contained in the Manual have been in effect. Despite this fact, Defendant County and Defendant BCSO have willfully failed to compensate Plaintiffs for any of their stand-by time spent on-call, which constitutes a violation of the policies and procedures that Defendant County implemented and Sheriff Davis elected and adopted for Plaintiffs. Defendants have breached this contract and are responsible for Plaintiffs' unpaid overtime wages for "on-call" time pursuant to Sections 6.06 and 7.05 of the Manual, and pursuant to Sheriff Davis' Directive/On-Call Pay Guidelines regarding "stand-by" pay under breach of contract.

---

4 Alisha Duhart Dep. 17:5-7.
5 Alisha Duhart Dep. 21, 25: 22-24.
6 Alisha Duhart Dep. 40:15-19.
7 Exhibit 4 to the Deposition of Justin Krage p. 111.

### III. ARGUMENT AND CITATION OF LAW

Summary judgment is proper when no genuine issue as to any material fact is present and the moving party is entitled to judgment as a matter of law.[8] The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case."[9] Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.[10] The nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial."[11]

In the case at bar, the facts establish that Plaintiffs are employees of both BCSO <u>and</u> the County, such that liability against both Defendants is proper under the FLSA. The facts also establish that the policy in the County handbook calling for payment of on-call time created a valid, binding contract between the Plaintiffs and both Defendants.

**(A)   Defendant County and Defendant BCSO are joint employers over Plaintiffs pursuant to the FLSA.**

An employment relationship exists between Defendant County and Plaintiffs. Although there is no dispute that Defendant BSCO is an employer of Plaintiffs, Defendant County is also Plaintiffs' employer under the joint employer doctrine pursuant to the FLSA and is therefore liable to pay Plaintiffs for their "on-call" time.

The FLSA requires covered employers to pay their employees at least the federal minimum wage for every hour worked and overtime for every hour worked over 40 in a workweek.[12] To be liable for paying minimum wage or overtime, an individual or entity must

---

8 Fed.R.Civ.P. 56(c).
9 *Shah v. Clark Atlanta University, Inc.*, 1999 WL 1042979 (N.D. Ga. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986)).
10 *Shah*, 1999 WL 1042979 at 7 (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)).
11 *Celotex*, 477 U.S. at 324, 106 S.Ct at 2553.
12 29 U.S.C. §207(2).

4

be an "employer," which the FLSA defines as "any person acting directly or indirectly in the interest of an employer in relation to an employee."[13] Under the FLSA, an employee may have—in addition to his or her employer—one or more joint employers. The term joint employment means a condition in which a single individual stands in the relation of an employee to two or more persons at the same time.[14] A determination of whether the employment is to be considered joint employment depends upon all the facts in the particular case.[15]

When determining whether two employers are considered "joint employers," the Eleventh Circuit has recently used a more involved test than the four-factor test cited by Defendant County in its Motion.[16] Such test is frequently used in the context of agricultural employment pursuant to the Migrant and Seasonal Agricultural Worker Protection Act; however, the test is not limited to the agricultural employment context and has been used to determine joint employment in FLSA cases.[17] Such factors are as follows:

(1) Whether the employer has the power, either alone or through [the entity supplying the workers], to direct, control, or supervise the workers or the work performed (such control may be either direct or indirect, taking into account the nature of the work performed and a reasonable degree of contract performance oversight and coordination with third parties);

(2) Whether the employer has the power, either alone or in addition to another employer, directly or indirectly, to hire or fire, modify the employment conditions, or determine the pay rates or the methods of wage payment for the workers;

(3) The degree of permanency and duration of the relationship of the parties, in the context of the activity at issue;

(4) The extent to which the services rendered by the workers are repetitive, rote tasks requiring skills that are required with relatively little training;

(5) Whether the activities performed by the workers are an integral part of the overall business operation of the employer;

(6) Whether the work is performed on the employer's premises, rather than on premises owned or controlled by another business entity; and

(7) Whether the employer undertakes responsibilities in relation to the

---

13 29 U.S.C. §203(d).
14 29 C.F.R. §500.20(h)(5).
15 *Id.*
16 Defendant County MSJ, ¶15.
17 *Spears v. Choctaw Cnty. Comm'n*, No. 07-0275-CG-M, 2009 WL 2365188, at *6 (S.D. Ala. 2009).

> workers which are commonly performed by employers, such as preparing and/or making payroll records, preparing and/or issuing paychecks, paying FICA taxes, providing workers' compensation insurance, providing field sanitation facilities, housing or transportation, or providing tools and equipment or materials required for the job (taking into account the amount of the investment).[18]

The *Spears* case cited by Defendant County is helpful when analyzing the above-referenced factors in relation to the case at bar. However, there are significant differences between the two, thereby warranting a different result by the Court in the present case.

**(1)** The first factor of the seven-factor analysis considers the "specific indicia of control" Defendant County has over Plaintiffs. This factor relates to one of the key pieces of evidence in this case, which is the fact that Sheriff Davis selected option number two on the Macon-Bibb County's election form, which meant that he was binding his deputies to those policies and procedures (aside from the ones carved out), and consequently giving Defendant County the power to enforce those policies and procedures against his deputies. The *Spears* court included in its analysis whether or not the county had the power to force the sheriff's deputies to follow the rules it passed. They found that the county's rules applied to the sheriff's deputies if, and to the extent that, the sheriff decided that the policies applied to the deputies. In the present case, Sheriff Davis did exactly that.[19] Although Defendant County does not direct or control the day to day activities of law enforcement, it does direct and control all other policies in the Manual to which law enforcement is bound. This factor weighs towards a finding that Defendant County is a joint employer of Plaintiffs.

**(2)** The Mayor of Macon-Bibb County has appointed five members to sit on a Civil Service Board ("the Board"), to interview applicants of the Sheriff's office for both initial hirings and promotions, and then making recommendations to the Sheriff.[20] The Board has

---

18 *Id.*
19 *Id.*
20 Alisha Duhart Dep. 31: 7-32: 12.

6

continued to perform this function, and Sheriff Davis has failed to object to them performing that role, even in light of the carved out exception for hiring in the election form he signed. Therefore, this shows that Defendant County has control over the hiring and promotion process within the Sheriff's office at least to some degree. The *Spears* court considered direct employment decisions such as hiring in analyzing this factor.[21]

Additionally, when deputies apply for promotions they must sit in front of the Board and undergo an interview. The Board then decides whether or not to add that applicant's name to a list, which they then submit to the Sheriff who decides whether or not to promote someone on that list. Furthermore, if the Sheriff initiates disciplinary action against one of the deputies, including termination, that deputy has a right to an appeal under the Board.[22]

Also relevant under this analysis is that the on-call policy at issue is included in the Manual, which includes the payment schedule for both stand-by time and time actually worked. The Manual also contains a formulation of pay rates and the method of payment to employees, which is via direct deposit or by a check if they prefer. Indeed, the paychecks that the deputies receive come on a County paycheck, and Defendant County also sets the budget for the Sheriff's office.[23] Further, Defendant County provides workers' compensation coverage to the deputies at the request of the Sheriff.[24] Defendant County having a role in hiring, promotion, termination, and methods of payment and pay rate of the sheriff's deputies supports the conclusion that Defendant County is a joint employer of Plaintiffs.

**(3)** The *Spears* court found that the third factor was not relevant to the employment arrangement such as the one at issue in the present case and therefore did not consider it. For that reason, the Plaintiffs will not provide an analysis under this factor.

---

21 *Spears*, 2009 WL 2365188 at 7.
22 Alisha Duhart Dep. 51: 4-9.
23 *Id.* at 35: 9-22.
24 *Id.* at 24: 13-17.

7

(4) Being that many of Plaintiffs work in different divisions with different job requirements, most of whom have different training from one another, it is challenging to analyze this factor without performing an in-depth analysis of each Plaintiff. However, for the sake of this Court's valuable time and based on the analysis of this factor by the court in *Spears*, because there are numerous law enforcement agencies and sheriff's departments in this state, that may tend to show that the deputies' skills are marketable and therefore does not weigh heavily in favor of Plaintiffs.

(5) The the activities and functions that the Plaintiffs perform are an integral part of Defendant County's "overall operation" in that they provide an indispensable service to Defendant County by protecting its residents from crime and accidents, providing traffic control, participating in specialized programs involving driving under the influence and drug and alcohol prevention, as well as engaging in community involvement to better the communities in Macon-Bibb county as a whole. Without sheriff's deputies, Defendant County could not function or perform its necessary operations. Through their protection of the citizens of Macon-Bibb County, as well as the multitude of other ways in which they help to keep the County running smoothly, it is clear that their roles are indispensable to Defendant County. Therefore, this factor weighs in favor of finding Defendant County to be a joint employer of Plaintiffs.

(6) Plaintiffs contend that this factor should be analyzed differently than by the court in *Spears*. In the present case, Plaintiffs have brought a claim against Defendant County as a whole. As sheriff's deputies for the county, Plaintiffs were required to work on a variety of different premises as a part of their job responsibilities. However, all of those premises are within the boundaries of Macon-Bibb County. This factor should not be analyzed in terms of how much time the Plaintiffs worked on exclusive county property compared to how much time they spent on the sheriff's office premises. If this Court did so choose to analyze this

factor in that way, it should be noted that many of the Plaintiffs only spend a fraction of their working time at the location of the sheriff's office.[25] The nature of their jobs as deputies/investigators would not allow them to solely or even routinely work only on the premises of BCSO-owned property. The Plaintiffs' presence in Macon-Bibb county and on county property has a direct bearing on their work responsibilities. Accordingly, this factor weighs in favor of finding Defendant County to be a joint employer of Plaintiffs.

(7)    This final factor looks to activities such as: preparing and/or making payroll records, preparing and/or issuing paychecks, providing workers' compensation insurance or providing tools and equipment or materials required for the job. Here, Defendant County does all of the above for the sheriff's deputies. In addition, Defendant County: posted available positions within the Sheriff's Department through their human resources department, offers benefits to the deputies, including medical, vision, dental, and basic life, makes contributions to retirement and pensions on behalf of the deputies, provides certain deputies with county-issued vehicles, provides IT support to the deputies, assigns the deputies county emails, provides employee assistance programs to the deputies, lists themselves as the employer of the deputies on tax documents for tax return purposes, and budgets for the cost of legal defense on behalf of the Sheriff's office if an attorney is required to be hired.[26]

Being that Defendant County handles all of the above activities, this factor weighs very heavily in favor of finding Defendant County to be a joint employer of the Plaintiffs.

When weighing all of the above factors together, it is clear that Defendant County meets the definition of "employer" under the FLSA and should be classified as a joint employer with Defendant BCSO over the Plaintiffs. To find otherwise would allow Defendant County and Sheriff Davis to bind the deputies to its policies and procedures unilaterally in that the

---

[25] Renfroe Dep. 26: 16-25; Thompson Dep. 39: 2-6; Robinson Dep. 26: 19-25, 27: 1-17; Baker Dep. 28: 12-25.
[26] Alisha Duhart Dep. 14: 15-20, 21: 18-25, 22: 1-12, 27: 5-18; 29: 9-14, 30: 2-5, 42: 6-25, 43: 1, 59: 10-13.

deputies can be held responsible for abiding by the Manual or else risk being punished, but Defendant County, Defendant BCSO, and Sheriff Davis cannot be held responsible for their own violations of the Manual. Such an allowance would be a gross abuse of power against those who dedicate themselves to protecting the residents of Macon-Bibb county.

**(B)     The Manual constitutes a contract between both Defendants and the Plaintiffs.**

In Georgia, the essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom.[27] Under Georgia law, to constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate.[28] An action for breach of contract requires breach of a valid contract and resultant damages to the party who has the right to complain about the breach.[29] The burden is on the plaintiff to show both the breach and the damage.[30]

In the case at bar, regardless of whether or not Defendant County is a joint employer of the Plaintiffs for FLSA purposes, a contractual relationship nonetheless exists between the two based on the above referenced Manual. Courts have consistently held that employee handbooks can be considered a contract with respect to the employment benefits provided therein.[31] Additionally, it is accepted law of this State that "provisions in an employee manual relating to additional compensation plans, of which an employee is aware, may amount to a binding contract between the parties," as may "a promise of future compensation made at the beginning of the employment relationship."[32]

---

27 *Brooks v. Branch Banking and Trust Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015).
28 O.C.G.A. §13-3-1.
29 *Kabir v. Statebridge Co., LLC*, 2011 WL 4500050, at *6 (N.D. Ga. 2011).
30 *Atlantech Inc. v. American Panel Corp.*, 743 F.3d 287, 292 (1st Cir. 2014).
31 *Fulton-Dekalb Hosp. Auth. v. Metzger*, 203 Ga. App. 595, 596 (1992) (See *Georgia Ports Auth. v. Rogers*, 173 Ga. App. 538, 327 S.E.2d 511 (1985)).
32 *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 693-694 (1981); *Ellison v. Dekalb Cnty.*, 236 Ga. App. 185, 186 (1999); *Shelnutt v. Mayor*, 333 Ga. App. 446 n.6 (2015) (distinguishing from *Tackett v. Georgia Dept. of Corrections*, 304 Ga. App. 310 (2010), "we interpret *Tackett* as holding that the permissive policy at issue in

The *Ellison* court cited to three cases as examples of this principle of law: the first case held that an employee handbook that contained a disclaimer almost identical to the one in the present case was a binding contract with respect to the employment benefits provided therein (payment of full salary if injured on the job) because it constituted an additional compensation plan offered by the employer and impliedly accepted by the employee at the time that employment relationship began.[33] In the second case, the court held that a plan for severance pay, offered by the employer and impliedly accepted by the employee, constituted a contract between them and was therefore not void based on the accepted law cited above regarding additional compensation plans.[34] In the third case, the court found that the employee had received the employees' handbook, which contained the employer's policy on vacation pay and how vacation is earned. Again, based on the law regarding employment benefits and additional compensation plans, the court held that the policies in that employee handbook constituted a part of the employee's contract of employment.[35]

The *Ellison* court stated that the reasoning in the three above-mentioned cases was that the employment benefits and/or additional compensation plan set forth in the manual represented an offer by the employer which the employee implicitly accepted by remaining in employment.[36] However, the Court also noted that not <u>all</u> provisions in employee manuals are to be considered binding agreements.[37] For example, the *Ellison* court noted that they had previously held that personnel manuals stating that employees can be terminated only for cause and setting forth termination procedures are not contracts of employment and that failure to

---

that case was more akin to policies setting forth certain procedures to be followed in connection with employment decisions than to policies providing for additional amounts or kinds of compensation.").
33 *Fulton* at 596.
34 *Fletcher* at 695.
35 *Shannon v. Huntley's Jiffy Stores, Inc.*, 174 Ga. App. 125, 126 (1985).
36 *Ellison* at 186.
37 *Id.*

follow the termination procedures contained in them is not actionable.[38] The reason why this case is synonymous to the *Shannon*, *Fletcher*, and *Metzger* cases is that the subject "on-call" provision constitutes an additional compensation plan or an employment benefit, not a condition of employment or violation thereof. The key takeaway from these cases is that a handbook can be a contract with respect to employment benefits provided therein, as we have here with the provision for payment of on-call time.

When Sheriff Davis exercised his option of electing coverage of policies in the Manual by which his deputies would be governed, this resulted in Sheriff Davis entering into a contract with Defendant County on behalf of his employees. The consideration for this agreement was that Defendant County would provide valuable services to the Sheriff's office/deputies, such as those outlined in the Manual, and in return, the deputies provide their own valuable services to Defendant County. A part of that contract included the provision for and calculation of on-call pay to be paid to the sheriff's deputies. At consolidation, Plaintiffs were required to review the Manual and sign off on it as part of their new employment with the County.[39] Sheriff Davis signed that election form shortly after consolidation, thereby constituting the beginning of the employment relationship between Defendant County, Sheriff Davis, and the sheriff's deputies, including Plaintiffs.

In addition to holding that promises of future compensation made at the beginning of the employment are enforceable, courts have also required that the promise be for an exact amount or based upon a "formula or method for determining the exact amount of the bonus."[40] The Manual in this case does exactly that. Specifically, it provides that

> [a]s compensation for the on-call time, the employee will be paid their regular hourly

---

38 *Id.*
39 (Krage Dep. 57: 8-10); (Renfroe Dep. 25: 22-25, 26: 1-5).
40 *Arby's v. Cooper*, 265 Ga. 240 (1995) (citing *Christensen v. Roberds of Atlanta, Inc.*, 189 Ga. App. 289 (1988)).

12

rate for two hours for each day on which he/she is on-call and four hours for each Saturday, Sunday or Holiday he/she is on-call regardless of whether he/she is actually required to respond to a call. On-call time is not time actually worked and will not be included when calculating overtime.

This method helps determine the exact way the employees' on-call pay will be calculated.

If it is determined that the Manual as a whole does not constitute a contract, this Court should at a minimum find that the provision regarding on-call pay creates a binding contract. Courts have allowed provisions in an employee manual relating to employment benefits and additional compensation plans to amount to a binding contract, reasoning that the additional compensation plan set forth in the manual represents an offer by the employer, which the employee implicitly accepts by remaining in employment.[41] The Manual's provision for payment of on-call time, which equates to an employee benefit or an additional compensation term, was offered to and impliedly accepted by the Plaintiffs and forms a binding contract under Georgia law.

Although the Manual contains boilerplate language disclaiming the creation of a contract, it also contains language stating that employees are expected to comply with the policies and procedures set forth in the Manual and that failure to do so could result in termination of employment. Defendants should not be permitted to force the Plaintiffs to abide by the Manual while simultaneously refusing to abide by their own representations and obligations within that same document. Therefore, if this Court finds that the terms within the Manual are contradictory and/or ambiguous, the Court should construe the terms against Defendant County as the drafter of the agreement. Defendant County was in a superior bargaining position in that if Sheriff Davis did not elect to have his employees covered by the

---

[41] *Ellison* at 186; *Fulton* at 596 (holding that "the policies in the employee handbook of which [appellee] was aware form[ed] a part of [his] contract for employment.").

Manual, he would have no other means to obtain such resources. Construing the Manual against Defendant County warrants a finding that all parties intended to be bound by the Manual, and specifically the policy regarding payment of on-call time.

Furthermore, the *Johnson* case cited by Defendant County in support of its contention that the Manual cannot serve to form the basis of a contract between the parties has substantial differences to the case at hand. First, in *Johnson*, the court found that the pertinent handbook did "not establish the specific and comprehensive terms of employment with the county," but "merely summarizes and acquaints employees with their rights, privileges, and obligations."[42] They further found that "[t]he specific rules actually governing employee rights (…) are found in the county personnel regulations, which implement the Civil Service Act" and that "[t]he handbook and the regulations expressly notify employees that they must consult the personnel regulations to be fully informed about their rights, privileges, and obligations."[43]

Here, the Manual is a standalone instrument that does not refer to any separate document that the employees should consult with regards to the substantive details of their employment. Instead, the Manual was intended to provide the employees with a summary of the rules and regulations governing their relationship with Defendant County, as well as providing information on what is expected of them, and the standards by which their performance is evaluated.[44] Because the terms of the Manual in the present case are comprehensive, *Johnson* is distinguishable and fails to provide a helpful analysis in the present case.

---

42 *Johnson v. Fulton Cnty.*, 235 Ga. App. 277, 278 (1988).
43 *Id.*
44 Exhibit 4 to the Deposition of Justin Krage p. 6 ¶2.

14

### (C) The Manual is not void because it does not seek to improperly bind future authorities.

This Court should first look to the four factor test set forth in *City of Powder Springs* when considering whether or not the contract as contained in the Manual is even subject to the prohibitions of O.C.G.A. §36-30-3(a).[45] Those factors include: (1) whether the contract is governmental in nature and hence subject to the prohibition, or proprietary and hence not subject to the prohibition; (2) if governmental in nature, is the contract subject to an exception; (3) if not, is the contract subject to ratification and has it been ratified; and (4) if not, is the municipality estopped from relying on the statutory provision. In *City of Athens v. McGahee et. al.*, the court found that the ordinance providing severance pay to retiring employees fell within the "express authority" exception to O.C.G.A. §36-30-3.[46] Specifically, the court stated:

> The trial court here properly considered the four tests of whether a municipal contract is subject to the prohibition of O.C.G.A. §36-30-3(a) as set forth in *City of Powder Springs* [citation omitted], and we agree with its finding that in view of the charter provisions conferring broad authority upon the city to 'establish a pension system…upon such terms and conditions as the Mayor and Council of the City of Athens shall deem proper,' the contract clearly fell into the express authority exception.[47]

The contract within the Manual in the present case is clearly governmental in nature, however, similarly to *City of Athens*, it is subject to an express authority exception.[48] In the Macon-Bibb County Charter section 11(b)(4), the Macon-Bibb County Commission is given the broad power to "adopt ordinances establishing any and all personnel policies it deems

---

[45] *City of Powder Springs v. WMM Properties, Inc.*, 253 Ga. 753, 756-757 (1985).
[46] *City of Athens v. McGahee*, 178 Ga. App. 76 (1986).
[47] *Id.* at 78-79.
[48] *City of Summerville v. Georgia Power Co.*, 205 Ga. 843 (1949) (holding that contracts within the express authority of a city charter are not within the prohibition that one city council may not bind another).

15

necessary for an adequate and systemic handling of personnel affairs." Because the contract at issue is within the express authority of the County Charter, it is not subject to the prohibition set forth in O.C.G.A. §36-30-3(a).

While still analyzing the application of O.C.G.A. §36-30-3(a) under the test set forth in *City of Powder Springs*, even if this Court finds that the express authority exception does not apply, it should still find that Defendant County has essentially ratified the on-call provision by paying its other employees for on-call time pursuant to the same provision, and that the County is therefore estopped from relying on the statute. Defendant County argues that the on-call policy is void under O.C.G.A. §36-30-3(a) because it would create long-term relationships with employees limiting the authority of the successor of local governments to modify those relationships. However, Defendant County has failed to acknowledge it has provided on-call pay to all of its other employees that are bound by the Manual, except for the sheriff's deputies.[49] Defendant County should be estopped from arguing that the on-call provision is void as to the sheriff's deputies because it violates the statute but at the same time pay their other employees on-call pay based on the exact same provision.

Lastly, even this Court finds that O.C.G.A. §36-30-3(a) does indeed apply to the on-call policy within the Manual, it should find that the on-call policy nonetheless does not improperly bind future authorities because it is merely another employment term that is part of an employment compensation package such as salary, sick leave, or vacation pay. Defendant County inaccurately concludes that the on-call pay provision in the Manual seeks to improperly bind future authorities and is therefore, void. However, what Defendant County has failed to appreciate is the difference between the subject on-call provision and the various provisions in the cases that they have cited in their Motion. For example, Defendant County highlights the

---

49 Alisha Duhart Dep. 46:1-21. (Ms. Duhart deposed that Macon-Bibb County employees that are on-call will receive payment that is provided based on the same formulation as mentioned above).

holding in *Johnson*, which states that a requirement of the county to give annual four percent salary increases to its employees cannot legally bind the county to approve or fund pay increases in the future because that would prevent free legislation by binding future county authorities to approve annual salary increases.[50]

Defendant County also cites to a case that held that a provision in a contract between a city and its employees guaranteeing twelve months salary as severance pay was unenforceable because it restricted the ability of a successor council to terminate an employee's employment and to enter into an agreement with others.[51] The true issue with the severance pay provision in *City of McDonough* was that if the city elected to terminate the contract between themselves and their employees, they were still required to pay the employees for twelve months salary, plus insurance and retirement benefits.[52]

The provisions in the above-referenced cases cited by Defendant County were all held to be unenforceable because they violated O.C.G.A. §36-30-3, which contains the prohibition against binding subsequent council. However, the on-call provision at issue does not violate that statute because it does not have the effect of unlawfully binding subsequent council. Unlike in those cases, the on-call provision at issue does not guarantee annual salary increases for an indeterminable period of time, nor does it provide for a required lump sum if the contract is terminated that still has to be paid to the employees regardless of who occupies the governing position. What it instead does is simply authorize payment for time spent on-call and provide the formula for calculating said payment. The on-call provision is akin to a policy authorizing payment of overtime, vacation pay, or personal leave. There is no part of the provision that binds a successor to future payments. Furthermore, if the Sheriff and County follow the

---

50 *Johnson* at 279; (Defendant County also cites to *Int'l Broth. of Police Officers Local #471 et al. v. Chatham Cnty.*, 232 Ga. App. 507 (1998) in their motion, which also involves an unenforceable provision for annual salary increases with similar reasoning and holding to that by the *Johnson* court.).
51 *City of McDonough v. Campbell*, 289 Ga. 216, 710 S.E.2d 537 (2011).
52 *Id.*

17

Manual and pay Plaintiffs on-call time as it is earned, at the time the contract is terminated, there would be no additional money or lump sum that they or their successors would be required to pay out in the future.

## **CONCLUSION**

Defendant County is a joint employer of the Plaintiffs and therefore is liable under the FLSA to pay them for the unpaid, on-call time that they have earned. However, if this Court finds that Defendant County is not a joint employer of the Plaintiffs, it should still find that the Manual, or at the least the policy requiring payment of on-call time, creates a binding contract between all relevant parties based on the facts above and that Defendant County has breached that contract, thereby causing damages to Plaintiffs. Lastly, this Court should find that the on-call provision is not subject to O.C.G.A. §36-30-3(a) because it falls within the "express authority" exception. However, if it finds that the provision is not subject to the exception, it should find that Defendant County is estopped from relying on O.C.G.A. §36-30-3(a) because it pays on-call time to all other County employees except for the Sheriff's deputies. If this Court finds that Defendant County is not estopped, it should find that the on-call policy does not have the effect of binding subsequent council. Therefore, summary judgment should be denied in favor of the Plaintiffs.

Respectfully submitted,

This 17th day of June 2021.

STEPHEN M. WELSH
Georgia Bar No. 747900
*Attorney for Plaintiffs*

**BUZZELL, WELSH & HILL, LLP**
200 Third Street
P. O. Box 1017
Macon, GA   31202-1017
Telephone:      (478) 742-8820
Facsimile:       (478) 742-3088
E-Mail:           swelsh@bwhlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PLAINTIFFS' BRIEF OPPOSING DEFENDANT MACON-BIBB COUNTY'S MOTION FOR SUMMARY JUDGMENT was mailed first-class mail, postage prepaid, to attorneys for Macon-Bibb County:

Grant Greenwood, Esq.
Duke R. Groover, Esq.
Christopher R. Conley, Esq.
James-Bates-Brannan-Groover, LLP
231 Riverside Dr # 100
Macon, GA 31201
dgroover@jamesbatesllp.com
ggreenwood@jamesbatesllp.com
cconley@jamesbatesllp.com
*Attorneys for Macon-Bibb County, Georgia*

Dawn Maynard Lewis, Esq.
Virgil L. Adams, Esq.
Adams, Jordan & Herrington, P.C.
577 Mulberry St, Suite 1250
Macon, GA 31201
dlweis@adamsjordan.com
vadams@adamsjordan.com
*Attorneys for Defendant Bibb County Sheriff's Office*

This 17th day of June, 2021.

/s/ Stephen M. Welsh
STEPHEN M. WELSH
Georgia Bar No.: 747900
Attorney for Plaintiffs

**BUZZELL, WELSH & HILL, LLP**
200 Third Street
P.O. Box 1017
Macon, GA 31202-1017
(478) 742-8820
swelsh@bwhlegal.com