IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| SHAUN BRIDGER, KENNETH HESTER, ROBBIE JOINER, JEAN LEBEUF, DALLAS MALONE, NICHOLAS MCCANE, AARON MILLER, NEAL MOORE, MICHAEL PARROTT, BRIAN POWELL, DANIEL PUTNAM, CAREY VANN JOSEPH VAMPER, ROBERT SHOCKLEY, and DANIEL SHURLEY | : : : : : : : : : : : : : | Civil Action No. 5:19-cv-00324-MTT |
| **Plaintiffs,** | : : | |
| **v.** | : : | |
| MACON-BIBB COUNTY, GEORGIA and BIBB COUNTY SHERIFF'S OFFICE | : : : : | |
| **Defendants.** | : : | |
| _____ | : | |

## BIBB COUNTY SHERIFF'S OFFICE'S AMENDED BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW the Bibb County Sheriff's Office ("BCSO"), by and through the undersigned counsel, and files its Amended Brief in Support of its Motion for Summary Judgment, respectfully showing this honorable Court as follows:

**Introduction and Facts[1]**

---

[1] A more fulsome statement of facts—which Defendant adopts and incorporates herein-- is set forth in Defendant BCSO's Briefs in Civil Action No. 5:19-cv-00323-MTT and Civil Action No. 5:19-cv-00321-MTT, which concern claims brought by other BCSO deputies/investigators on the same bases as those in this case.

Plaintiffs are employed as deputy sheriffs and investigators in the constitutional office of Bibb County Sheriff David J. Davis[2], all of whom were assigned during the time period relevant to this case[3] to the Bibb County Sheriff's Office ("BCSO") Criminal Investigation Division ("CID") with the exception of Plaintiff Miller, who was assigned to Forensics. Doc. 1, ¶ ¶ 2-3. Other than Plaintiffs Joiner, LeBeuf, and Malone, the Plaintiffs became employees in the BCSO on January 1, 2014 when the former City of Macon and former Bibb County were consolidated to form a new unified government--Macon-Bibb County--and the Macon Police Department merged with the Bibb County Sheriff's Office. Affidavit of David J. Davis ("Davis Aff.") dated May 31, 2021, ¶¶ 6,18; Ex. C. to Davis Aff.

Employees in the BCSO have not been paid for time waiting to be called to work while assigned to on-call status for at least the last 40 years; they have, however, been paid for time they submitted for actually working when they had to respond to a call[4].

---

[2]Plaintiffs are not employees of Macon-Bibb County as a matter of law. Plaintiffs have not been employees of Macon-Bibb County at any time since the unified government's inception, including the time period relevant to Plaintiffs' claims. This is true irrespective of the fact that Macon-Bibb County's governing authority establishes the annual budget for operation of the BCSO; that Macon-Bibb County bears much of the burden of providing the funds budgeted annually for operation of the BCSO from the public coffers fed by taxpayers; and that Sheriff Davis chooses to utilize the assistance of Macon-Bibb County's Human Resources and Finance Departments to administer benefits, process payroll, and similar functions for his employees through its existing structures, processes, and technologies. Doc. 20-1, pp. 3-12; Doc. 20-29; Doc. 20-30; Affidavit of David J. Davis ("Davis Aff.") dated May 31, 2021, ¶¶ 3-6, 8-11, 22.

[3]Plaintiff Vann transferred from CID to the Corrections Division Detention Center by request as of March 11, 2018 and has had no on-call duties since being assigned to Detention. Doc. 20-17, 24:18-25:7; 32:17-33:4.

[4]This includes the Plaintiffs in this case, and those in Civil Action No. 5:19-cv-00323-MTT and Civil Action No. 5:19-cv-00321-MTT. Doc. 20-18, 68:1-13, 71:4-72:11; Doc. 20-14, 57:17-58:17; Doc. 20-9, 15:10-23; Doc. 20-8, 52:20-22; Doc. 20-11, 49:11-50:23, 71:5-10; Doc. 20-21, 39:5-40:6; Doc. 20-15, 54:8-55:21; Doc. 20-16, 42:22-46:11; Doc. 20-7, 61:6-10; Doc. 20-17, 51:24-52:24; Doc. 20-10, 54:1-55:6; Doc. 20-2, 20:4-21:17; Doc. 20-23, 44:6-45:19, 76:5-77:25; Doc. 20-4, 69:21-70:14; Doc. 20-6, 67:7-25; Doc. 20-5, 50:4-

Davis Aff. ¶ 12; Affidavit of Belgica Wall ("Wall Aff.), ¶ 3.   As part of their job duties, Plaintiffs are required to periodically be assigned to on-call status[5] during which they must answer the phone when it rings, and if the call requires that an investigator respond to a scene, arrive within one hour. Davis Aff. ¶ 21; Doc. 20-2, 118:4-16; Doc. 20-3, 64:8-18; Doc. 20-4, 58:3-5; Doc. 20-5, 71:14-18; Doc. 20-6, 47:14-17; Doc. 20-21, 40:7-42:20; Doc. 20-20, 35:7-40:20; Doc. 20-19, 37:8-38-25; Doc. 20-18, 40:5-41:17; Doc. 20-17, 45:11-47:19; Doc. 20-16, 55:4-58:20; Doc. 20-15, 55:24-57:25; Doc. 20-14, 50:22-52:12; Doc. 20-13, 38:1-40:4; Doc. 20-12, 40:2-9; Doc. 20-11, 57:20-59:10; Doc. 20-10, 44:1-45-24; Doc. 20-9, 62:21-24; Doc. 20-8, 76:1-5; Doc. 20-7, 49:22-51:12.

Plaintiffs are provided vehicles in connection with their employment, which they are allowed to drive to and from work; Plaintiffs are also permitted to drive their assigned vehicles for certain personal activities while assigned to on-call status, which makes it easier to respond as required when they are called to work. Doc. 20-2, 140:23-142:20; Doc. 20-3, 62:3-63:2; Doc. 20-4, 54:17-56:25; Doc. 20-5, 30:19-32:5; Doc. 20-6, 41:25-45:16; Doc. 20-21, 42:21-43:20; Doc. 20-20, 41:2-4; Doc. 20-19, 57:4-12; Doc 20-18, 38:21-39:12; Doc. 20-17, 48:25-49:16; Doc. 20-16, 61:10-62:25; Doc. 20-14, 63:4-9; Doc. 20-13, 32:25-34:5; Doc. 20-12, 62:20-63:5; Doc. 20-11, 45:18-48:9; Doc. 20-10, 47:15-49:24; Doc. 20-9, 70:22-71:20; Doc. 20-8, 76:8-84:6; Doc. 20-7, 51:16-18; Doc. 20-15, 49:16-53:18. Plaintiffs are not permitted to consume alcohol[6] when they are assigned to be on call. Doc. 20-23, 25:9-30:19.

---

51:4, 65:9-66:22; 67:18-25; see also, Doc. 20-12, 59:4-60:2; 68:20-70:7 (Plaintiff Miller's testimony regarding compensatory time.)
[5]Plaintiff Miller specializes in digital forensics and is on call 24/7. See Doc. 20-25, 20:8-11.
[6]See also Doc. 20-22, 24:17; Doc. 20-26, 22:19-23:14; Doc. 20-27, 21:19, 40:4-17.

On October 6, 2017, Sheriff Davis issued a directive regarding eligibility for standby pay for BCSO employees required to be on call. See Davis Aff.¶¶ 23-25; Exhibit I to Davis Aff. The directive was rescinded October 13, 2017. Id. at ¶¶25-26; Exhibit J to Davis Aff.

**Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, a Motion for Summary Judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits … show that there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). No issue for trial exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. (emphasis added).

Where a party fails to make a sufficient evidentiary showing to establish an essential element of his case, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23. The movant carries the burden of showing there is "an absence of evidence to

support the nonmoving party's case." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the movant satisfies this burden, the burden shifts "to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* The non-movant is required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 334. A fact is material if it is relevant or necessary to the outcome of the case. *Anderson*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the non-movant. *Id.* If the nonmoving party fails to establish an essential element of his case, the moving party is "entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 322-23.

**The Bibb County Sheriff's Office is not an entity which can be sued in federal court, and Plaintiffs' claims against it should be dismissed.**

In a federal court, the capacity of an entity to be sued is determined by the law of the state where the court is located. Fed.R.Civ.P. 17(b)(3). In Georgia, only three classes constitute legal entities which are capable of suing or being sued: (1) natural persons; (2) corporations; and (3) quasi-artificial persons that the law recognizes as being capable of bringing suit. *Ga. Insurers Insolvency Pool v. Elbert Cnty.*, 258 Ga. 317, 500, 502 (1988) (citing *Cravey v. Southeastern Underwriters Association*, 214 Ga. 450, 453 (1958)). The Eleventh Circuit has found that sheriff's departments and police departments are "not usually considered legal entities subject to suit" under Georgia law and therefore may not properly be sued as a party in federal court. *Lawal v. Fowler*, 196 F. App'x 765, 768 (11th Cir. 2006) (quoting *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992)); see also *Lovelace v. DeKalb Cent. Probation*, 144 F. App'x 793, 795 (11th Cir. 2005) (affirming

5

dismissal of DeKalb County Police Department as a party defendant because under Georgia law it is not a legal entity subject to suit); *Chronister v. Butts Cnty.*, No. 5:15-cv-150-MTT, 2016 WL 1735860, at *3 (M.D.Ga. May 2, 2016) (dismissing Butts County Sheriff's Office as a defendant).

The Plaintiffs here brought their claims against Defendant BCSO and Defendant Macon-Bibb County, alleging that each Defendant was an employer within the meaning of the Fair Labor Standards Act ("FLSA"). Doc. 1, ¶ 17. Plaintiffs did not name Bibb County Sheriff David Davis as a party defendant and alleged no claims against him--whether in his official or individual capacity. For the reasons stated above, Plaintiffs' claims against the Bibb County Sheriff's Office should be dismissed because it cannot properly be sued as a party in federal court.

**To the extent Plaintiffs' claims are nevertheless construed as having been brought against Bibb County Sheriff David Davis in his official capacity, he is entitled to Eleventh Amendment Immunity over Plaintiffs' claims.**

The Eleventh Amendment bars actions for money damages against states or state officials acting in their official capacities. *Manders v. Lee*, 338 F.3d 1304, 1311 (11th Cir. 2003). Application of the Eleventh Amendment is not limited to the state; it extends to a defendant who acts as an "arm of the state." *Pellitteri v. Prine*, 776 F.3d 777 (11th Cir. 2015) (citing *Manders*, 338 F.3d 1304, 1308); *Kicklighter v. McIntosh Cnty. Board of Comm'rs*, 694 F. App'x 711, 714 (11th Cir. 2017). To determine whether a state entity is an "arm of the state", the Eleventh Circuit applies the following factors: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders*, 338 F.3d at 1309. A determination as to whether a defendant is an "'arm of the

state' must be assessed in light of the particular function in which the defendant was engaged when taking the action out of which the liability arose." *Dukes v. Georgia*, 428 F.Supp. 2d 1298, 1318 (N.D. Ga. 2006).

In this case, the function at issue is compensation of employees under the Fair Labor Standards Act ("FLSA") and otherwise. Georgia sheriffs derive their duties and authority from the State as elected, constitutional officers who are independent from the counties[7] they serve; a sheriff's authority to make employment decisions is derived from the State. See *Randolph County v. Wilson*, 260 Ga. 482, 482 (1990); *Pellitteri*, 776 F. 3d 777, 780. The first factor identified in *Manders* weighs in favor of immunity here because Sheriff Davis's authority to engage in the function at issue is derived from the State. The second *Manders* factor also weighs in favor of immunity under the Eleventh Amendment as the State "exercise[s] a great deal of control over the hiring and firing of deputy sheriffs, especially through the certification process for peace officers … including deputy sheriffs." *Pellitteri*, 776 F.3d at 781. Georgia's substantial control over a sheriff's personnel decisions is further demonstrated by its governor's power to discipline a sheriff and its requirement for annual training. *Manders*, 338 F.3d at 1309.

With respect to the third *Manders* factor, the State mandates that counties set a budget for the sheriff's office. *Id.* at 1323 (citing O.C.G.A. §§ 36-9-5, 42-5-2(a), 15-16-20,

---

[7] The independence of county sheriffs from the counties they serve is clearly established law in Georgia and the Eleventh Circuit. Defendant Macon-Bibb County set forth numerous citations to law regarding the independence of a county sheriff as an elected, constitutional officer who is not employed or controlled by the county governing authority on pages 9-10 of its brief in support of its motion for summary judgment in this case. For the sake of brevity and judicial economy, Defendant BCSO respectfully also refers the Court to those citations, which reflect the well-established and recognized separation between a county and an elected sheriff under Georgia and Eleventh Circuit law. See Doc. 20-1, pp. 9-10.

45-4-7). And while a county is the source of funding for operations of its sheriff's office, including for paying the sheriff and his or her deputies, it "cannot dictate how the sheriff spends those funds." *Pellitteri*, 776 F.3d at 782. On balance, this factor does not weigh against applicability of Eleventh Amendment immunity. Even if the fourth factor established in *Manders* weighs in favor of denying Eleventh Amendment immunity, as it would to the extent that any adverse judgment against Defendant BCSO will be paid out of the BCSO budget[8] which includes both State and County funds, Sheriff Davis, in his official capacity, nevertheless acted as an "arm of the State" when exercising his power to make compensation decisions[9] at issue in this case. See *Cunningham v. Fulton County*, No. 19-11269, October 1, 2019, 2019 WL 4795484, at *5, n. 3 (11th Cir.) Accordingly, and to the extent Plaintiffs' claims brought against Defendant BCSO are construed as having been brought against Defendant Davis in his official capacity as Sheriff of (Macon-) Bibb County, he is shielded by Eleventh Amendment immunity and entitled to judgment as a matter of law.

---

[8]Macon-Bibb County testified through the representative its Fed.R.Civ. P. 30(b)(6) deposition that it did not know whether claims for damages against the BCSO were paid from the Macon-Bibb County budget or from the BCSO budget.

[9]In *Pellitteri*, the court found that a Georgia sheriff was an arm of the State and entitled to Eleventh Amendment immunity for wrongful termination claims brought against him in his official capacity under 42 U.S.C. § 1983 and the Americans with Disabilities Act. 776 F.3d at 783. In *Manders*, the court held that a Georgia sheriff was an arm of the State in establishing use of force policy at the jail and in training and/or disciplining deputies in that regard. 338 F.3d at 1328. These cases involve employment-related decisions, as does the case at bar. Compensation paid to employees is a function of "employee-related decisions." *Walker v. Jefferson County Bd. of Educ.*, 771 F.3d 748, 757 (11th Cir. 2014). Under *Kicklighter*, functions of hiring, firing, and compensation of employees, albeit distinguishable, "have been treated as one for the purposes of the *Manders* inquiry" and Eleventh Amendment immunity protects one sued in his or her official capacity for damages under the FLSA. 162 F.Supp. 3d 1363, 1376 (S.D. Ga. 2016), aff'd 694 F.App'x 711 (11th Cir. 2017).

**The Plaintiffs are not entitled to compensation under the FLSA for time spent waiting to be called to work as deputy sheriffs and investigators employed by Bibb County Sheriff David J. Davis.**

On-call time is addressed by the FLSA's requirement that employees be paid a minimum wage and be paid for overtime work. In simplest terms, an employer is not required to pay an employee for time spent on call if the employee is not working during that time. But if on-call time constitutes "hours worked", the FLSA requires payment of a wage and, as appropriate, overtime compensation. The U.S. Department of Labor's regulations implementing the FLSA include the following provisions:

> An employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may be reached is not working while on call. Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits. Where, for example, an employee in fire protection activities has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable. On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable.

29 C.F.R. § 553.221(d). Similarly, under 29 C.F.R. § 785.17, "[a]n employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call'. An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call." 29 C.F.R. § 785.17. Being as these regulations are, that is, not paragons of practical guidance, the contours for determining whether on-call time is compensable as work under the FLSA have been established by the Courts.

According to the U.S. Supreme Court, under the FLSA[10],

> [P]eriods of inactivity are not properly counted as working time even
> though the employee is subject to call. Examples are an operator of a
> small telephone exchange where the switchboard is in her home and
> she ordinarily gets several hours of uninterrupted sleep each night; or a
> pumper of a stripper well or watchman of a lumber camp during the off
> season, who may be on duty twenty-four hours a day but ordinarily has
> a normal night's sleep, has ample time in which to eat his meals, and
> has a certain amount of time for relaxation and entirely private pursuits.

*Skidmore v. Swift & Co.*, 323 U.S. 134, 138 (1944). The relevant inquiry depends on "the

degree to which the employee is free to engage in personal activities during periods of

idleness when he is subject to call and the number of consecutive hours that the employee

---

[10]The *Skidmore* case was decided by the U.S. Supreme Court in the same year as *Armour & Co. v. Wantock*, 323 U.S. 126 (1944), a case brought by private firefighters who were required to remain on call at the employer's premises. 323 U.S. 126, 127-128. The employees were not permitted to leave except to go to dinner at a nearby restaurant with their employer's permission. *Id.* at 128. The employer provided "cooking equipment, beds, radios, and facilities for cards and amusements with which the men slept, ate, or entertained themselves pretty much as they chose." *Id.* In analyzing the case, the High Court observed as follows:

> We think the Labor Standards Act does not exclude as
> working time periods contracted for and spent on duty in the
> circumstances disclosed here, merely because the nature of
> the duty left time hanging heavy on the employees' hands and
> because the employer and employee cooperated in trying to
> make the confinement and idleness incident to it more
> tolerable. Certainly they were competent to agree, expressly
> or by implication, that an employee could resort to
> amusements provided by the employer without a violation of
> his agreement or a departure from his duty. Both courts below
> having concurred in finding that under the circumstances and
> the arrangements between the parties the time so spent was
> working time, we therefore affirm.

*Id.* at 134. The *Armour* case  has been the subject of a considerable amount of criticism and negative treatment, including superseding statutes and refusal to follow based on state law, as well as often being distinguished on its unique facts. Its facts are also distinguishable from those in the instant case as there is no evidence that the Plaintiffs were required to remain at their offices or on premises of Defendant BCSO while on call.

is subject to call without being required to perform active work." *Id.* The question has otherwise been formulated as a "predominant benefit test"—that is, whether time on call is spent predominantly for the benefit of the employer rather than for the benefit of the employee. *Halferty v. Pulse Drug Co., Inc.*, 864 F.2d 1185, 1187 (5th Cir. 1989); *Boehm v. Kansas City Power and Light Co.*, 868 F.2d 1182 (10th Cir. 1989). This determination must be made based upon "all the circumstances of the case" *Skidmore*, 323 U.S. at 136.

The Eleventh Circuit has found that whether a certain set of facts and circumstances constitute work for purposes of liability under the FLSA is a question of law. *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 807 (11th Cir. 1992) (citing *Bright v. Houston Northwest Medical Center Survivor, Inc.*, 934 F.2d 671 (5th Cir. 1991) (en banc)). "Certain sets of facts, if found by a fact finder, will give rise to liability under the FLSA while other sets of facts will not. It is for the court to determine if a set of facts gives rise to liability; it is for the jury to determine if those facts exist." *Birdwell*, 970 F.2d 802 at 808. A claimant seeking relief under the FLSA based upon on-call time "must make out a prima facie case before the jury can determine the factual issues". *Id.*

To be considered predominantly for the benefit of the employer, an employee's use of time must be "severely restricted." *Smith v. Ideal Towing, LLC*, No. 1:16-CV-1359-TWT, 2017 WL 5467154, at *3 (N.D. Ga. Nov. 13, 2017). This standard is a stringent one, and employees are entitled to on-call pay under the FLSA only under circumstances which amount to unusually onerous on-call duties. *Id.* Indeed, as the Northern District of Georgia noted in *Ideal Towing*[11], the Eleventh Circuit has observed that "undesirable and

[11]The court in *Ideal Towing* determined that summary judgment was not appropriate because the plaintiffs adduced and presented evidence from which a reasonable jury could conclude that the waiting time of two former tow truck drivers was compensable

perhaps oppressive" on-call requirements do not necessarily reach this level. *Id.* (citing

*Birdwell*, 970 F.2d 802, 804)[12].

---

under the FLSA. 2017 WL 5467154, at *3. In that case, there was evidence that the plaintiffs could be assigned as many as twelve to fifteen towing jobs in a day, a frequency of call-outs that prevented the plaintiffs from using their waiting time for their own benefit. *Id.* at *4. In reaching its decision to deny the employer's motion for summary judgment on this issue, the court observed that the tow truck operators were more analogous to firefighters in *Renfro v. City of Emporia*, 948 F.2d 1529 (10th Cir. 1991) than to the police detectives in *Birdwell*, 970 F.2d 802. In *Renfro*, city firefighters filed an action for declaratory judgment and for relief under the FLSA. 948 F.2d 1529, 1531. The Tenth Circuit upheld a district court's granting of summary judgment in favor of the firefighters for liability and assessment of damages under the FLSA based upon frequency of call-outs and response-time requirements that prevented the employees from using on-call time predominantly for their own benefit. 924 F.2d 1532, 1538. The district court had noted a number of conditions it believed restricted the firefighters, including: "'the firefighter must be able to hear the pager at all times; that the firefighter must be able to report to the stationhouse within twenty minutes of being paged or be subject to discipline; that the on-call periods [were] 24–hours in length; and primarily, that the calls [were] frequent—a firefighter may receive as many as 13 calls during an on-call period, with a stated average frequency of 3–5 calls per on-call period'". *Id.* at 1532 (quoting *Renfro v. City of Emporia*, 729 F.Supp. 747 at 751 (D. Kan. 1990). Further, the firefighters were required to answer each callback or be subject to discipline; were subject to discipline if they took longer than 20 minutes to respond to a callback; and were not compensated for any waiting time. *Id.* at 1537.

[12]The plaintiffs in *Birdwell* were law enforcement officers who were put on-call for a one-week period. 970 F.2d 802, at 804. During this period, they were expected to be prepared to work immediately upon being called; they were to remain near a phone or pager, avoid consuming alcohol, and avoid leaving town. *Id.* The law enforcement officers were not required to remain at the police station during this time; they could leave their homes as long as they provided a forwarding number or owned a beeper. *Id.* at 808. The plaintiffs could go on outings with their families, but they would have to take separate cars in case the officer got called out. *Id.* Despite those restrictions, most of the law enforcement officers in *Birdwell* worked multiple jobs. *Id.* The Eleventh Circuit found that the plaintiffs' on time call was not predominantly used for the employer's benefit; the plaintiffs were able to spend their time as they normally did as long as they responded to the call-out quickly and soberly. *Id.*

The *Birdwell* case marked the Eleventh Circuit's application of the "predominant benefit" test to claims for compensation for on-call time under the FLSA. While the restrictions placed on the police detectives in *Birdwell* are easily analogous to those which apply to the Plaintiffs in this case, the one-time nature of the on-call assignment for one week combined with the fact that the detectives were not actually called out (and perhaps did not have meaningful reason to expect to be called) in *Birdwell* differs from the

In *Bright*, which the Eleventh Circuit examined in *Birdwell*, the Fifth Circuit Court of Appeals held that an employee's on-call time was not working time under the FLSA and summary judgment was affirmed in favor of the employer. *Bright v. Houston Nw. Med. Ctr. Survivor, Inc.*, 934 F.2d 671, 672 (5th Cir. 1991). The plaintiff was a hospital employee required to keep a beeper on him and be on-call to perform emergency repairs to medical equipment if needed; he was on call throughout all of his off-duty time. *Id.* at 672-73. The plaintiff was paid when he was called out to make repairs, but not for the time spent on-call. *Id.* at 673. The employee was not required to remain at the hospital during this time; he was, however, required to (1) avoid consuming alcohol to the point where he could not repair the equipment if called, but he was not totally prohibited from drinking; (2) be reachable by beeper; and (3) be able to arrive at the hospital within about twenty minutes of being called. *Id.* "Not once during eleven months was [the employee] free from these restrictions. No other employees shared his on-call duty. He took no vacation. He had no days off." *Id.* at 679 (Williams, J., dissenting). The employee stated he was nonetheless able to engage in normal activities while on-call; he still went shopping, watched television, and went out to restaurants. *Id.* Though the court in *Bright* acknowledged that the employee's job was "undesirable and perhaps oppressive" it found the employee's on-call time was not "work" and was not compensable under the FLSA. *Id.* at 678-79.

This Court applied the "predominant benefit" test recognized by the Eleventh Circuit to claims concerning compensability of on-call time under the FLSA in *Arrington v. City of Macon*, 986 F.Supp. 1474 (1997), where 39 police officers employed by the City

scheduled, rotating periods of being on call—and actual occurrence of call-outs—at issue in this case.

of Macon[13] who were subject to being on call sought compensation, including overtime, under the FLSA. 986 F.Supp. at 1476. The plaintiffs in that case alleged that their on-call time was governed by numerous restrictions which required them to: (1) be readily accessible at all times during stand-by period; (2) be available to be reached immediately by phone, pager, or radio; (3) remain rested and alert during the stand-by period in the event they were called to service; (4) notify dispatchers of their movements and whereabouts at any time they left their homes; (5) be able to respond to a call-out within 30 minutes, properly dressed and equipped; and (6) remain in a geographical area which allowed the officer to maintain telephone, radio, or pager contact and respond within 30 minutes. *Id.* They maintained that they could not engage in most normal and family activities during their personal off-duty time, and that officers who wanted to work second jobs found it difficult if not impossible to find secondary work, because of the restrictions posed by response time and geographical limitations. *Id.* at 1477. The *Arrington* plaintiffs further alleged that besides being dispatched to calls[14] by the radio room, they were

---

[13]The officers were classified as exempt from overtime pay requirements, which the plaintiffs disputed based on the salary test provisions of Department of Labor regulations. *Arrington v. City of Macon*, 973 F.Supp. 1467, 1469 (M.D. Ga. 1997). The Court had earlier denied the city's motion for partial summary judgment as whether the salary test regulations applied to a public employer, *Arrington v. City of Macon*, 864 F.Supp. 1345 (1994), and had granted the plaintiffs' partial motion for summary judgment as to whether the city had violated the FLSA by impermissibly making deductions from paychecks issued to exempt employees which destroyed their exempt status for the relevant period. 973 F. Supp. 1467 (1997). The Court examined the plaintiff's claims relating to on-call time and meal breaks on a motion for partial summary judgment as to those issues filed by the employer. 986 F.Supp. 1474, 1475.

[14]The plaintiffs in *Arrington* alleged their stand-by status resulted in frequency of call-outs and interruptions as follows:

*"**Detective Division**:*

Crimes Against Persons: Interruptions average 12 times per week; call-outs average 6 times per week;

subject to call-outs while on stand-by status and interruptions while on meal breaks "from superior officers, the chief of police, the deputy chief of police, majors, officer of the day, secretaries, and other officers needing help" and that off-duty officers were required to "respond to any citizen's complaint which they may receive." *Id.*

As to the plaintiffs' claims regarding on-call time in *Arrington*, this Court found that all of the plaintiffs failed to show that their free time was so severely restricted that their on-call time was time worked within the meaning of the FLSA. *Id.* at 1480. With regard to plaintiffs who claimed they were placed on call 24 hours a day, 7 days a week during all hours in which they were not on duty, the Court noted that

> a review of the answers to the City's first interrogatories shows that Captain Terry Timley of the Detective Division Fugitive Squad is either on duty or on call twenty-four hours a day, seven days a week and is called in approximately once a week and called on the phone twice a week. Major Brady Fields in the Services Division wears a pager at all times and is on call twenty-four hours a day every day, is called in or called up "often," and never leaves Bibb County except on vacation. Captain Joe Stiles, Commander of the Administrative Division, is on call every day of the year except vacation, wears a pager at all times, and notifies the Chief when he leaves town. Lt. Charles Groover in the Administrative Division is subject to similar restrictions and must notify

---

Crimes Against Property: Interruptions average 10 times per week; call-outs average 1 time per week;
Crime Lab (Gary Ussery): Interruptions average 7 times per week; call-outs average 4.5 times per week;
Intelligence (George Richardson): Interruptions average 2 times per week; call-outs average 1 time per week;
Commander (Robert Allen): Interruptions average 7 times per week; call-outs average 3 times per month;
Fugitive Squad (Terry Timley): Interruptions average 5 times per week; call-outs average 2 times per week.
***Patrol Division***:
Traffic Fatality Unit (Mike Burns): Interruptions average 4 times per week; call-outs average 3 times per week;
Officer of the Day: Interruptions average 1 5 times per week; call-outs average 5 times per week." 986 F.Supp. at 1476-77.

Lt. Stiles if he is away from the office or out of town. If Lt. Stiles is out of town Groover must be available for the Chief of Police if needed.

*Id.* at 1479[15]. Otherwise, the plaintiffs were "subject to being on call for varying amounts of time with varying expectations of actually being called." *Id.* at 1480. Having compared the restrictions placed on the plaintiffs with those that applied in *Bright*, 934 F.2d 671; *Halferty*, 864 F.2d 1185[16]; *Boehm*, 868 F.2d 1182[17]; *Norton v. Worthen Van Services, Inc.*, 839 F.2d 653 (10th Cir. 1988)[18]; *Renfro*, 948 F.2d 1529; and *Cross v. Arkansas Forestry Commission*, 938 F.2d 912 (8th Cir. 1991)[19], the Court found them more

---

[15]Compare to Plaintiff Miller's testimony that he is on call "around the clock." Doc. 20-12, 11:18-13:2; 38:18-40:21; 65:2-67:14.

[16]In *Halferty*, the Fifth Circuit held the employee was not entitled to compensation under the waiting to be engaged doctrine because the employee "could visit friends, entertain guests, sleep, watch television, do laundry, and babysit." 864 F.2d at 1189. The time at issue was used for the employee's own benefit, as opposed to situations where an employee was compensated for idle time in which the employee generally had almost no freedom at all. *Id.* at 1189-1190.

[17]In *Boehm*, the Tenth Circuit held the plaintiffs were not entitled to overtime compensation for time spent "on-call." *Boehm,* 868 F.2d at 1183. Plaintiffs were linemen required to be on stand-by to work during storms and other emergencies. *Id.* The linemen were allowed to refuse call-outs the majority of the time; they were only required to "report for work an average of at least once for each three counted call-outs made" *Id.* Call outs were not counted during periods of vacation, illness, or family emergency. *Id.*

[18]*Norton*, a case in which van drivers had to wait near company premises during 8-10 hour shifts but were not paid unless they received a call and were subject to discipline for failure to respond to a call, and to being fired after 3 instances of discipline, resulted in finding by the Tenth Circuit that the employees were not working because they had opportunities to pursue personal interests during waiting time and noted that purchase of a pager would have alleviated some of the restrictions on employee use of time. 839 F.2d at 655-56.

[19]*Cross* involved facts which the Eighth Circuit noted were unlike those in typical on-call cases in two respects: (1) the Arkansas Forestry Commission which employed the plaintiffs required them to monitor radio transmissions continuously during each work period rather than using pagers or phone contact to reach the employees, which limited employees' ability to enjoy even common activities like watching TV and reading, as well as to attend social gatherings or entertain visitors in their homes; and (2) the employees were on call 24 hours a day every day of a work period with no relief unless a supervisor agreed to substitute and cover an employee's duties for a period of time. 938 F.2d at 917. On those facts, the court determined that a reasonable jury could have found that the

comparable to those in *Bright*, *Halferty*, and *Boehm* than to the more severe restrictions in *Norton*, *Renfro*, and *Cross*. 986 F.Supp. 1474, 1478-1479.

In the case at bar, the Plaintiffs are not subject to restrictions which are onerous enough to make their time spent waiting to be called to work compensable under the FLSA. The Plaintiffs are allowed to engage in numerous activities unrelated to their employment while assigned to on-call status, including watching television, cooking dinner, doing chores, sleeping, playing golf, going to church, enjoying hobbies, running errands, and spending time with their children and families. Doc. 20-2, 140:23-142:20; Doc. 20-3, 62:3-63:2; Doc. 20-4, 54:17-56:25; Doc. 20-5, 30:19-32:5; Doc. 20-6, 41:25-45:16; Doc. 20-21, 42:21-43:20; Doc. 20-20, 41:2-4; Doc. 20-19, 57:4-12; Doc 20-18, 38:21-39:12; Doc. 20-17, 48:25-49:16; Doc. 20-16, 61:10-62:25; Doc. 20-14, 63:4-9; Doc. 20-13, 32:25-34:5; Doc. 20-12, 62:20-63:5; Doc. 20-11, 45:18-48:9; Doc. 20-10, 47:15-49:24; Doc. 20-9, 70:22-71:20; Doc. 20-8, 76:8-84:6; Doc. 20-7, 51:16-18; Doc. 20-15, 49:16-53:18. They are allowed to drive their assigned vehicles when engaged in personal activities while they are assigned to on-call status, which makes it easier to respond if they are called to work. *Id*. Moreover, the Plaintiffs are allowed to switch their on-call schedules with other deputies, and request leave in advance of their on-call shifts. Doc. 20-2, 157:17-159:6; Doc. 20-3, 57:9-59:11; Doc. 20-4, 64:3-65:13; Doc. 20-5, 42:21-45:14; Doc. 20-6, 58:5-60:10; Doc. 20-21, 37:1-22; Doc. 20-20, 59:24-60:7; Doc. 20-19, 45:7-20; Doc. 20-18, 41:22-44:2; Doc. 20-16, 60:9-23; Doc. 20-15, 39:24-40:22; Doc. 20-

---

employees were engaged to wait while on call and that summary judgment was not appropriate. *Id.*

14, 55:19-56:1; Doc. 20-13, 60:14-20; Doc. 20-11, 51:7-53:17; Doc. 20-10, 53:1-20; Doc. 20-9, 81:18-21; Doc. 20-8, 72:10-74; Doc. 20-7, 46:24-49:3.

If Plaintiffs are required to respond to a call, they must do so within one hour[20]. Doc. 20-2, 118:4-16; Doc. 20-3, 64:8-18; Doc. 20-4, 58:3-5; Doc. 20-5, 71:14-18; Doc. 20-6, 47:14-17; Doc. 20-21, 40:7-42:20; Doc. 20-20, 35:7-40:20; Doc. 20-19, 37:8-38-25; Doc. 20-18, 40:5-41:17; Doc. 20-17, 45:11-47:19; Doc. 20-16, 55:4-58:20; Doc. 20-15, 55:24-57:25; Doc. 20-14, 50:22-52:12; Doc. 20-13, 38:1-40:4; Doc. 20-12, 40:2-9; Doc. 20-11, 57:20-59:10; Doc. 20-10, 44:1-45-24; Doc. 20-9, 62:21-24; Doc. 20-8, 76:1-5; Doc. 20-7, 49:22-51:12.

The Plaintiffs' time spent waiting to be called to work while assigned to on-call status is not "severely restricted" and is not used predominantly for the benefit of Defendant BCSO. Accordingly, Plaintiffs are not entitled to compensation for such time under the FLSA and are not entitled to the relief sought in their Complaint.

**To the extent Plaintiffs have alleged or sought to establish claims against Defendant BCSO (or Sheriff Davis in his official capacity) under a contract or quasi-contract theory or theory of promissory estoppel, such claims likewise fail.**

To the extent that Plaintiffs have sought to assert claims sounding in contract, quasi-contract, or promissory estoppel based upon Macon-Bibb County's Policies and

---

[20]Contrary to the allegations in their Complaint, the Plaintiffs admitted--and their supervisors confirmed--that they have never been required to respond to a call within 30 minutes. Doc. 20-2, 118:4-16; Doc. 20-3, 64:8-18; Doc. 20-4, 58:3-5; Doc. 20-5, 71:14-18; Doc. 20-6, 47:14-17; Doc. 20-21, 40:7-42:20; Doc. 20-20, 35:7-40:20; Doc. 20-19, 37:8-38-25; Doc. 20-18, 40:5-41:17; Doc. 20-17, 45:11-47:19; Doc. 20-16, 55:4-58:20; Doc. 20-15, 55:24-57:25; Doc. 20-14, 50:22-52:12; Doc. 20-13, 38:1-40:4; Doc. 20-12, 40:2-9; Doc. 20-11, 57:20-59:10; Doc. 20-10, 44:1-45-24; Doc. 20-9, 62:21-24; Doc. 20-8, 76:1-5; Doc. 20-7, 49:22-51:12; Doc. 20-22, 60:3-62:15; Doc. 20-23, 56:2-24; Doc. 20-24, 53:4-55:22; Doc. 20-25, 40:4-7; Doc. 20-26, 37:20-39:3.

Procedures, such claims cannot be sustained. The manual containing Sections 6.06 and 7.05 of the County's personnel policies specifically states that the manual "… is being provided to you as source of information for a variety of human resources, issues, programs, and policies. This manual is for informational purposes only and is not intended as an employment contract or guarantee of benefits. [Macon-Bibb County] reserves the right to alter, amend, modify, change or delete any of the policies, practices or benefits described in this manual at any time, with or without notice." (Doc. 20-2, Exhibit 4, p. 6.) This language belies any contention that the manual was intended as a binding contract. Moreover, the manual reiterates this intent in its section regarding employment at will: "Nothing in these policies is intended to create or establish a contract for employment between [Macon-Bibb County Government] and the employees covered by their terms, nor shall this manual constitute a promise to provide any benefits … Employees of any Constitutional Officer or independent elected official work at the pleasure of that elected official. Sworn personnel of the [BCSO] are under the Civil Service System[21]." (*Id.* at p. 26.) If, as Plaintiffs can be expected to argue, Sheriff Davis's election as to coverage under Macon-Bibb County's policies for employees of his office constituted an agreement to be covered by the manual, except for matters of hiring, discipline, and the County's problem solving procedure for employees, then the manual as a whole—including its

---

[21]This refers to the Bibb County Police Civil Service Board & System ("Civil Service Board"). (*See* Davis. Aff., ¶¶ 5, 13; *see, generally* 1955 Ga. Laws 682; 1988 Ga. Laws 5122; 2012 Ga. Laws 5595; 2013 Ga. Laws 3501, 3942. The provisions establishing the Civil Service Board and setting forth its functions with respect to hiring and promotions of members of the classified service (i.e., sworn personnel of the BCSO except for those holding the rank of colonel, chief deputy, and sheriff) do not include provisions regarding pay increases, entitlement to overtime, or on-call pay.

unequivocal indication that it is non-binding and subject to change at any time—would apply.

Similar to the personnel regulation at issue in *Johnson v. Fulton County*, 235 Ga.App. 277 (1998)[22], Sheriff Davis's October 6, 2017 directive regarding on-call pay guidelines used permissive language with limitations as to who could assign employees to on call status ("… will be *eligible for* "Stand-by" pay if they are required to be on call…On call status may be assigned … only by supervisors holding the rank of major or higher), and, in any case, the directive was rescinded on October 13, 2017. Further, the Plaintiffs have not alleged that they relied to their detriment on the identified sections of the County's manual or the directive, but even if they did, no promissory estoppel claim can be established because there was no binding promise of on-call (standby) pay. Accordingly, Plaintiffs are not entitled to any relief sought in their Complaint on the basis of a contractual, or quasi-contractual right, or on a theory of promissory estoppel.

**Conclusion**

For these reasons, Defendant BCSO is entitled to summary judgment as to all of Plaintiffs' claims in this case.

---

[22]In *Johnson*, a group of firefighters, deputy sheriffs, and their unions filed a class action against Fulton County, arguing that the employees had a contractual right to annual salary increases of 4 percent based upon the following provision in an employee handbook: "[a]" multi-step salary range is established for each class and position. These steps or 'increments' provide for regular annual increases of one step (4%) each year." 235 Ga.App. 355 at 278. The Georgia Court of Appeals found that reliance on that language, standing alone, was misplaced because the handbook did not establish the specific and comprehensive terms of employment. Specific rules governing employee rights, such as pay increases, were outlined in personnel regulations which implemented the county's civil service act. *Id.* at 278-79. Contrary to the employees' contentions, the applicable personnel regulation did not require that the county pay raises to all employees each year; instead, it established that the county had discretion in deciding whether raises would be awarded. *Id.* at 279.

Respectfully submitted this 3rd day of June 2021.

/s/ *Dawn Maynor Lewis*____

**DAWN MAYNOR LEWIS**
Georgia Bar No. 479696
**VIRGIL L. ADAMS**
Georgia Bar No. 004625

**Attorneys for Defendant BCSO**

**ADAMS, JORDAN & HERRINGTON, P.C.**
**Fickling & Co. Building**
**577 Mulberry Street, Suite 1250**
**Post Office Box 928**
**Macon, GA  31202-0928**
**(478) 743-2159 telephone**
**(478) 743-4938 facsimile**
**dlewis@adamsjordan.com**
**vadams@adamsjordan.com**

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that the undersigned has this day filed the foregoing **BIBB COUNTY SHERIFF'S OFFICE'S AMENDED BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** using the CM/ECF document filing system, which will generate a Notice of Electronic Filing and an electronic service copy of same to the following CM/ECF participants and counsel of record:

**Stephen M. Welsh, Esq.**
**BUZZELL, WELSH & HILL, LLP**
**200 Third Street**
**P.O. Box 1017**
**Macon, GA 31202-1017**
**swelsh@bwhlegal.com**

*Attorney for Plaintiffs*

**Duke R. Groover, Esq.**
**G. Grant Greenwood, Esq.**
**Christopher R. Conley, Esq.**
**James Bates Brannan Groover, LLP**
**231 Riverside Drive, Ste. 100**
**Macon, Georgia 31201**
**dgroover@jamesbatesllp.com**
**ggreenwood@jamesbatesllp.com**
**cconley@jamesbatesllp.com**

*Attorneys for Macon-Bibb County*

This 3rd day of June 2021.

/s/ *Dawn Maynor Lewis*
Dawn Maynor Lewis
Georgia Bar No. 479696

**ADAMS, JORDAN & HERRINGTON, P.C.**
**Fickling & Co. Building**
**577 Mulberry Street, Suite 1250**
**Post Office Box 928**
**Macon, Georgia 31202-0928**
**(478) 743-2159 – telephone**
**(478) 743-4938 – facsimile**
**dlewis@adamsjordan.com**