IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JUSTIN KRAGE, *et al.*, ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:19-cv-321 (MTT) |
| ) | |
| MACON-BIBB COUNTY, Georgia, *et al.*, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ORDER

Plaintiffs—all sworn deputies with the Bibb County Sheriff's Office ("BCSO")—bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, against Defendant Sheriff David Davis and Defendant Macon-Bibb County ("the County"). Specifically, Plaintiffs allege Sheriff Davis and the County violated the FLSA by failing to pay deputies for time spent "on-call." Doc. 1 ¶ 3. Plaintiffs further allege Sheriff Davis and the County are liable under a state law contract theory because Sheriff Davis failed to pay his deputies in accordance with the County's compensation plan. *Id.* ¶ 5. The Defendants moved for summary judgment on all claims. Docs. 20; 27; 55-58. For the following reasons, Sheriff Davis's motion for summary judgment on Eleventh Amendment immunity grounds (Docs. 27; 56; 58)[1] is **GRANTED** as to Plaintiffs' FLSA claim, the County's motion for summary judgment on the grounds that the County is not a "joint-employer" within the meaning of FLSA (Docs. 20; 55; 57) is **GRANTED**, and the

---

[1] The Defendants' motions were filed in each of these cases that have now been consolidated. Doc. 54. The motions and briefs, in relevant part, are identical. The Court's record cites are to the *Krage* docket.

remaining contract claims against Sheriff Davis and the County will be dismissed without prejudice.

## I. BACKGROUND

The Georgia General Assembly consolidated the former City of Macon and former Bibb County to form a new unified government—Macon-Bibb County—effective January 1, 2014.  Docs. 27-2 ¶ 2; 46-1 ¶ 2.  Although deputies are not employees of the County, the County allows the Sheriff and other constitutional officers to subject their employees to some or all of the terms of the Macon-Bibb County Government Policies and Procedures Manual.  Doc. 23-1 at 11-12.  Following the consolidation, Sheriff Davis elected to subject his employees to the County's Manual except the sections relating to hiring, discipline, and employee problem-solving.  Doc. 20-28 at 16:8-17:4.  This election form was signed by Sheriff Davis on March 18, 2014.  *Id.* at 20:10-20.

Notably, Sheriff Davis did not expressly exempt his office from the on-call provision contained in sections 6.06 and 7.05 of the County's Manual.  *Id.* at 47:6-12.  This policy states in pertinent part:

> As for compensation for the on-call time, the employee will be paid their regular hourly rate for two hours for each day on which he/she is on call and four hours for each Saturday, Sunday or Holiday he/she is on call regardless of whether he/she is actually required to respond to a call.  On-call time is not time actually worked and will not be included when calculating overtime.  The rate of pay for actual work time while on call shall be in accordance with MBCG pay policy regarding overtime pay.  Employees who have not met the threshold for required overtime shall be paid regular rate until he/she meets the required threshold.  In the event the on-call supervisor must respond to a call during the on-call time, he/she will be paid for any time actually worked inclusive of the on-call time[.]

Doc. 23-1 at 63.

Plaintiffs worked in a variety of different divisions, including the Traffic Fatality Unit ("TFU"), Criminal Investigations Division ("CID"), Special Weapons and Tactics

("SWAT") team, Special Investigations Unit ("SIU"), and Crime Scene Investigations-Forensics ("CSI-F"). Since the consolidation, Plaintiffs allege Sheriff Davis failed to compensate his employees for any on-call time as required by sections 6.06 and 7.05 of the County's Manual. Doc. 1 ¶ 5. Sheriff Davis admits his deputies are not compensated merely for their on-call status. Doc. 27-3 ¶ 12. Rather, deputies are only compensated for their on-call time when they actively respond to calls. *Id.* Nevertheless, Sheriff Davis contends the County's on-call policy never applied to his deputies, and thus, the deputies are not entitled to compensation for their on-call status. *Id.* Plaintiffs disagreed and filed this action to recover unpaid overtime compensation pursuant to the FLSA and to recover unpaid wages for on-call time as required by the Manual.[2] Doc. 1 ¶ 6.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of

---

[2] On October 6, 2017, Sheriff Davis issued a directive regarding the eligibility of his employees for standby pay while assigned to duty in an on-call capacity. Docs. 27-2 ¶ 11; 46-1 ¶ 11. However, it is undisputed that directive was rescinded on October 13, 2017. *Id.* Other than briefly alluding to this fact in their response to the County's motion for summary judgment, Doc. 32 at 3, Plaintiffs do not explain how Sheriff Davis's rescinded directive is relevant to this case. In any event, the directive would only be relevant as to Plaintiffs' state law contract claim which the Court does not address here.

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (alterations in original) (quoting *Celotex*, 477 U.S. at 324).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]  The

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

**A. Sheriff Davis is Entitled to Eleventh Amendment Immunity**

The Eleventh Amendment bars federal courts from entertaining suits against states. U.S. Const. Amend. XI. Eleventh Amendment immunity acts as a limitation on the federal judiciary's Article III powers and protects a state's treasury from claims for damages brought by private entities in federal court. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Alden v. Maine*, 527 U.S. 706, 716-21 (1999).

"Under the traditional Eleventh Amendment paradigm, states are extended immunity, counties and similar municipal corporations are not, and entities that share characteristics of both require a case-by-case analysis." *United States ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*, 739 F.3d 598, 601 (11th Cir. 2014) (citing *Mt. Healthy Cty. Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). In the Eleventh Circuit, this case-by-case analysis is conducted by applying the factors set forth in *Manders v. Lee*, 338 F.3d 1304, 1308-09 (11th Cir. 2003). When a county or municipality is acting in concert with an agent or instrumentally of the state, a *Manders* analysis is appropriate to determine the agency's status as either a state or local government actor when performing the specific function at issue. *Monroe v. Fort Valley State Univ.*, ___F. Supp. 3d___, 2021 WL 5451145, at *6 (M.D. Ga. Nov. 22, 2021). In Georgia, this analysis is most frequently applied in cases involving sheriffs because the office of sheriff is constitutionally created by and accountable only to the State of Georgia but yet

exists to serve a particular county and derives significant funding from that county. *See Manders*, 338 F.3d at 1310-12.

Under the "function-specific" *Manders* inquiry, an agency's status as an "arm of the state" is determined by examining four factors: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309. The entity invoking the Eleventh Amendment "bears the burden of demonstrating that it qualifie[s] as an arm of the state entitled to share in its immunity." *Haven v. Bd. of Trustees of Three Rivers Reg'l Libr. Sys.*, 625 F. App'x 929, 933 (11th Cir. 2015) (citations omitted); *see also Lange v. Houston Cnty., Ga.*, 499 F. Supp. 3d 1258, 1267 n.3 (M.D. Ga. 2020) (citing cases).

Both parties agree the function at issue is Sheriff Davis's failure to compensate his deputies for additional compensation for time spent on-call. Docs. 27-1 at 12; 46 at 7. But the parties disagree as to whether Sheriff Davis has carried his burden of proving he is an "arm of the state" with regard to that specific function. *Id.* Plaintiffs argue there are some cases—specifically where the "function-specific" inquiry is an issue of first impression—that necessitate discovery. *Lange*, 499 F. Supp. 3d at 1267-69 (denying motion to dismiss because sheriff's office failed to carry its burden of showing it was acting as an "arm of the state" when it provided healthcare benefits to its employees). Sheriff Davis apparently agreed because he did not move to dismiss. Instead, the parties engaged in extensive discovery. Notwithstanding that discovery, Sheriff Davis and Plaintiffs cite few facts to support their positions on the Sheriff's Eleventh Amendment immunity. The Sheriff's argument is primarily legal not factual,

and Plaintiffs' argument is essentially that Sheriff Davis has not carried his burden to establish as a matter of law that he is entitled to Eleventh Amendment immunity. In short, it seems discovery turned up few facts relevant to the question of whether Sheriff Davis acted as an "arm of the state" when making compensation and scheduling decisions. Nevertheless, the Court finds that binding precedent provides the answer.

### 1. How State Law Defines the Sheriff's Office

The first *Manders* factor weighs in favor of immunity when the authority to engage in the function at issue is derived from the State. *Manders*, 338 F.3d at 1310. As the Eleventh Circuit has noted, "sheriffs in Georgia derive their power and duties from the State, are controlled [as to certain functions] by the State, and counties cannot, and do not, delegate any law enforcement power or duties to sheriffs." *Pellitteri v. Prine*, 776 F.3d 777, 780 (11th Cir. 2015) (quoting *Manders*, 338 F.3d at 1313). As the Court in *Manders* stressed, under Georgia law, the Sheriff's Office and the County are independent, separate entities. *Manders*, 338 F.3d at 1319. Accordingly, the first factor supports a finding that Sheriff Davis was acting as an "arm of the state" with regard to the payment of on-call wages to his deputies.

### 2. Degree of Control the State Maintains over the Sheriff's Office

Georgia's Constitution provides that "[t]he Governor shall take care that the laws are faithfully executed and shall be the conservator of the peace throughout the state." Ga. Const. art. V, § 2, ¶ 2. In discharging this duty, the Governor necessarily acts through agents; the Sheriff is one of those agents. *Manders*, 338 F.3d at 1313. If a sheriff fails to uphold the law or keep peace in his county, he or she is subject to discipline by the Governor. O.C.G.A. § 15–16–26(a) (The governor may initiate an

investigation of a sheriff "as a result of criminal charges, alleged misconduct in office, or alleged incapacity of the sheriff to perform the functions of his office."); *see also Manders*, 338 F.3d at 1321 (citing O.C.G.A. § 15–16–26 and concluding "[t]he State legislature expressly has made [the Sheriff] answerable to the Governor for his conduct and policies."). When a sheriff makes employment decisions that directly bear on the constitutional duties of his office, he is subject to a high degree of control from the State and immunity is generally favored.[3]  *See Pellitteri*, 776 F.3d at 779 (holding that a Sheriff functioned as an arm of the state when he "exercis[ed] his power to hire and fire the deputies that enforce the laws of Georgia on his behalf").

In this case, Plaintiffs worked in a variety of different divisions within the Sheriff's Office including the TFU, CID, SWAT team, SIU, and CSI-F. Doc. 32 at 2. But despite these different jobs, it is undisputed Sheriff Davis exclusively determined when his deputies were on-call. Doc. 32-1 ¶ 9. When Sheriff Davis's deputies were on-call, Sheriff Davis alone determined the rules, restrictions, and requirements placed upon his deputies. *Id.* at ¶ 12. For example, members of the CID were required to abstain from drinking, while SWAT members could drink because they were required to be on-call twenty-four hours per day but could not respond if they were intoxicated. *Id.* at ¶¶ 22, 25, 26. Additionally, TFU and SWAT deputies were expected to respond as soon as possible, whereas CIU, SIU, and CSI-F deputies were allowed up to an hour to respond. *See id.* at ¶ 16. If a deputy continuously failed to respond while on-call, that deputy could be disciplined by Sheriff Davis. *See id.* at ¶¶ 23, 24, 25, 31.

---

[3] Plaintiffs cite *Keene v. Prine*, 477 F. App'x 575, 578 (11th Cir. 2012) for the proposition that "sheriffs are largely independent from the State when making day-to-day personnel decisions, such as terminations." Doc. 46 at 9. However, the Eleventh Circuit held *Keene* "is inconsistent with this Court's published precedent." *Pellitteri*, 776 F.3d at 782. Because the Eleventh Circuit's subsequent published ruling in *Pellitteri* is binding on this Court, the Court does not consider *Keene* in this analysis.

The reason for Sheriff Davis's exclusive control over the rules, restrictions, and requirements governing his on-call deputies is clear.  Maintaining effective and available staff is critical to the discharge of the Sheriff's state-imposed public safety responsibilities.  If Sheriff Davis failed to have on-call deputies available to respond to emergencies within the community, Sheriff Davis would be subject to discipline by the governor.  *See Manders*, 338 F.3d at 1321; *Pellitteri*, 776 F.3d at 782.  If Sheriff Davis permitted CID and SWAT members to show up drunk, plainly the Governor could discipline the Sheriff.  If Sheriff Davis failed to have deputies respond to investigate traffic fatalities and crime scenes, Sheriff Davis would similarly face discipline.  And if a SWAT callout went unanswered and a violent criminal was left unchecked, clearly the Governor would hold Sheriff Davis—and Sheriff Davis alone—accountable.  Because Sheriff Davis's on-call policies are directly linked to the Sheriff's constitutional duty to protect his community by ensuring deputies are available to respond to emergencies, the second factor heavily supports a finding that Sheriff Davis is entitled to Eleventh Amendment immunity.

   *3. Where the Sheriff's Office Derives Its Funds*

As to the third factor, source of funding, "each county in Georgia bears the major burden of providing funds to the sheriff's office, including the salaries of the sheriff and his deputies." *Pellitteri*, 776 F.3d at 782.  However, the Eleventh Circuit has held that this factor does not weigh against immunity because (1) state law requires counties to fund sheriff's offices and (2) counties cannot dictate how the funds are spent.  *Id.*[4]

---

[4] With respect to funding, the Court in *Pellitteri* stated first that "we cannot conclude that this factor weighs in favor of Eleventh Amendment immunity."  776 F.3d at 782.  Yet in the Court's conclusion, it stated the funding factor weighed in favor of immunity.  *Id.* at 783.  The first statement was seemingly a typographic mistake, and the Court intended to write, "we cannot conclude that this factor weighs against Eleventh

Similarly, the County here cannot dictate how Sheriff Davis spends his funds. Accordingly, this factor does not weigh against immunity.

*4. Liability for and Payment of Adverse Judgments*

In Georgia, as a general matter, "neither the State nor the County will be required to directly pay for any adverse judgment against the Sheriff's office." *Id*. at 783 (citation omitted). Typically, therefore, this factor weighs against immunity. *Id*. In this case, the record is still unclear as to whether judgments against Sheriff Davis are taken from the coffers of the County or the Sheriff's Office. Doc. 20-28 at 35:1-23. In any event, neither party contends the State's treasury would be subject to liability. Thus, this factor likely weighs against a finding of immunity.

In sum, the first and second factors support a conclusion that Sheriff Davis was acting as an "arm of the state," the third does not support a finding that the Sheriff is not entitled to immunity, and the fourth supports a conclusion that Sheriff Davis was not acting as an "arm of the state." After balancing the *Manders* factors, it is clear Sheriff Davis is entitled to Eleventh Amendment immunity from Plaintiffs' FLSA claim, and therefore, his motion for summary judgment as to that claim (Docs. 27; 56; 58) is **GRANTED**.

**B. The County is Not a Joint Employer Pursuant to the FLSA**

29 U.S.C. § 203(d) defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency[.]" "Employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). An employee can

---

Amendment immunity." *See Nelson v. Jackson*, 2015 WL 13545487, at *10 n.10 (N.D. Ga. Mar. 31, 2015), *report and recommendation adopted,* 2015 WL 13546505 (N.D. Ga. Apr. 21, 2015) ("Although the court in *Pellitteri* wrote, '[W]e cannot conclude that this factor weighs in favor of Eleventh Amendment immunity,' it seems clear that this was a misstatement.").

have more than one employer for purposes of FLSA liability. *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996); *see also Falk v. Brennan*, 414 U.S. 190, 195 (1973) (recognizing two employers for purposes of FLSA liability).

To determine whether an individual falls into the category of covered "employee" courts look to the "economic reality" of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013) (citing *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)). Courts have applied various multifactor tests to guide the "economic reality" inquiry. *Id.* at 1311. In this case, Plaintiffs urge the Court to apply a seven-factor test developed in *Charles v. Burton*, 169 F.3d 1322, 1329 (11th Cir. 1999).[5] Doc. 32 at 5. But binding precedent forecloses this possibility because that test only addressed whether joint employment exists within the context of the Agricultural Worker Protection Act ("AWPA"). *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1177 (11th Cir. 2012) ("The court in *Charles* was considering only AWPA claims, not FLSA claims; therefore, *Charles* does not dictate the factors we must utilize in our evaluation of FLSA claims.").[6] While the County also appears content with using the *Charles* test, Doc. 39 at 4-6, the Court cannot apply a test that precedent precludes. *See Layton*, 686 F.3d at 1177.

The County also addresses a test articulated in *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997). Doc. 20-1 at 8. Under that four-factor test, the Court

---

[5] Specifically, Plaintiffs cite *Spears v. Choctaw Cnty. Comm'n*, 2009 WL 2365188, at *6 (S.D. Ala. July 30, 2009)—an unpublished Southern District of Alabama opinion—for the application of this test.

[6] "Although the AWPA defines joint employment by reference to the definition provided in the FLSA, that does not mean that the reverse holds true—that joint employment under the FLSA is invariably defined by AWPA regulations." *Layton*, 686 F.3d at 1177.

considers "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* The *Villarreal* four-factor test addresses the core factors set forth in *Charles,* Plaintiffs' test of choice. *Spears*, 2009 WL 2365188, at *7 ("The court will consider the seven factors enunciated in *Charles,* which incorporate all of the factors in … *Villarreal* [.]"). But regardless which test is applied,[7] it is legally impossible for the County to be an employer of sheriff's deputies under Georgia law. Ga. Const. art. IX, § 2, ¶ 1(c)(1).

In Georgia, the sheriff is an elected constitutional officer. *Id.* "[C]ounties delegate no power or authority to sheriffs"—they are "separate entit[ies] independent of the sheriff's office." *Manders*, 338 F.3d at 1311. The County "does not, and cannot, direct the Sheriff how to ... hire, train, supervise, or discipline his deputies, what policies to adopt, or how to operate his office." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1347 (11th Cir. 2003). Simply put, just because Sheriff Davis chose to adopt certain policies and procedures from the County as a matter of convenience, those policies were only applicable to Plaintiffs to the extent that Sheriff Davis chose to adopt and enforce them. In a similar vein, the County cannot be characterized as Plaintiffs' employer merely because Sheriff Davis chose to have the County provide a variety of administrative support functions to avoid the duplication of resources. Georgia's Constitutional mandate is clear: the County is expressly prohibited from controlling or

---

[7] The Eleventh Circuit also utilizes a six-factor test, *Scantland*, 721 F.3d at 1311-12, and an eight-factor test. *Layton*, 686 F.3d at 1178-81 (citing *Aimable v. Long & Scott Farms*, 20 F.3d 434, 437 (11th Cir. 1994)). Neither party asks the Court to apply those tests here.

directing Sheriff Davis in any manner whatsoever. *Pellitteri*, 776 F.3d at 780 (citing Ga. Const. art. IX, § 2, ¶ I(c)(1)).

Legal impossibility aside, Plaintiffs advance four arguments which the Court will address under the *Villarreal* framework.

*1. Whether the County had the Power to Hire and Fire Sheriff's Deputies*

Plaintiffs argue the first factor weighs in their favor because the Mayor of Macon-Bibb County created a five-member Sheriff's Office Civil Service Board to provide hiring and promotion recommendations to Sheriff Davis. Doc. 32 at 6-7. As part of that process, deputies and prospective deputies were interviewed by the Board, and the Board determined whether the applicant's name was added to a list which was later submitted to Sheriff Davis. Doc. 20-28 at 32:23-33:6. Nonetheless, it is undisputed that any names submitted by the Board were merely recommendations with ultimate hiring authority retained by Sheriff Davis. *Id.* at 33:7-11. Termination, perhaps, is less clear. While Sheriff Davis had the authority to initiate disciplinary action against his deputies, including termination, that deputy has a right to appeal to the Board. *Id.* at 51:4-9.

Most of the facts relevant to the first factor do not support the conclusion that the County employed Plaintiffs. The County certainly provided a layer of control over personnel matters because the Civil Service Board determined who was recommended to Sheriff Davis and sheriff's deputies were allowed to appeal any disciplinary actions initiated by Sheriff Davis directly to the Board. But despite this small layer of control, there is nothing in the record to suggest Sheriff Davis could not disregard the recommendation of the Board, nor is it a disputed fact that anyone but Sheriff Davis had

ultimate authority over personnel matters. As such, this factor weighs against finding that the County was Plaintiffs' employer.

### 2. Whether the County Supervised and Controlled the Work Schedules or Conditions of Employment of Sheriff's Deputies

In this case, Plaintiffs admit Sheriff Davis had the sole and ultimate authority to determine the time, place, and manner in which sheriff's deputies perform their duties. Doc. 32-1 at ¶ 5. Moreover, it is undisputed that the County never assigned any deputy a job, duty, project, work schedule, or on-call assignment. Doc. 39 at 5. Instead, Plaintiffs contend that because Sheriff Davis elected to subject his employees to the County's Manual except the sections relating to hiring, discipline, and employee problem-solving, he bound his deputies to the policies and procedures set forth in the County's Manual, and consequently gave the County the power to enforce those policies and procedures against Sheriff Davis's deputies. Doc. 32 at 6. But just because Sheriff Davis chose to adopt certain policies and procedures from the County as a matter of convenience, those policies were only applicable to the extent Sheriff Davis chose to adopt them. Plaintiffs point to nothing in the record to support their argument that the County had *enforcement* power over the policies Sheriff Davis chose to adopt from the County's employment manual. *See* Doc. 32 at 6. This is likely because such an arrangement would be constitutionally infirm. Ga. Const. art. IX, § 2, ¶ I(c)(1)). As such, this factor weighs heavily against finding that the County was Plaintiffs' employer.

*3. Whether the County Determined the Rate and Method of Payment of Sheriff's Deputies*

The third factor addresses how sheriff's deputies are paid.  Plaintiffs contend that because deputies receive paychecks from the County and the County sets the budget for Sheriff Davis, this factor weighs in their favor.  Doc. 32 at 7 (citing Doc. 20-28 at 42:12-43:23).   Moreover, the County's Manual—as adopted by Sheriff Davis—provides guidance on pay rates deputies receive.  Docs. 27-2 ¶ 5; 32-1 ¶ 5.  But Sheriff Davis correctly counters that these duties are best characterized as administrative functions that the Sheriff's Office delegated to the County to avoid the duplication of resources.  Doc. 39 at 6.  It is also undisputed that Sheriff Davis alone sets the work schedules of his deputies, including whether a deputy is on-call, and such schedules impact the amount of money each individual deputy can earn.  *Id.* at 5.  In sum, the third factor weighs against finding that the County was Plaintiffs' employer.

*4. Whether the County Maintained Employment Records of Sheriff's Deputies*

This factor weighs in favor of finding that the County was Plaintiffs' employer.[8]  Sheriff's deputies are included in the County's civil service system, and as such the County provided sheriff's deputies with medical, vision, dental, and basic life insurance.  Doc. 20-28 at 21:18-22:9.  The County also provided sheriff's deputies with retirement and pension plans, with the County contributing on behalf of sheriff's deputies.  *Id.* at 23:19-20.  In addition, the County posted available positions within the Sheriff's Office on the County's human resources website and provided workers compensation insurance to sheriff's deputies at the request of the Sheriff Davis.  *Id.* at 24:9-17.

---

[8] The Court also addresses whether the County undertook responsibilities in relation to sheriff's deputies that employers commonly perform in this factor.  These arguments are articulated by Plaintiffs under the seventh factor of the *Charles* test, but do not otherwise fit squarely within the *Villarreal* framework.

It is also undisputed the County's finance department provided payroll services to the Sheriff's Office. *Id.* at 26:14-20. Similarly, the County issued vehicles to certain sheriff's deputies, although the cost of those vehicles was taken out of Sheriff Davis's budget. *Id.* at 27:14-25:3. The County provided IT support to the Sheriff's Office, with all sheriff's deputies assigned a County email address. *Id.* at 29:9-30:8. Employee assistance programs are likewise provided by the County, and the County is listed as the employer of sheriff's deputies on tax returns. *Id.* at 42:8-43:8. Finally, the County foots the bill for any legal defense costs incurred by the Sheriff's Office. *Id.* at 59:4-13. Because it is undisputed the County performs all the above functions for Sheriff Davis, this factor weighs in favor of finding that the County is Plaintiffs' employer.

Even if Plaintiffs' employment with the County wasn't a legal impossibility under Georgia law, the *Villarreal* framework favors a finding that the County is not an employer of Plaintiffs within the meaning of the FLSA. It is undisputed that Sheriff Davis had ultimate hiring and firing authority over his deputies and that deputies are subject only to the supervision and control of Sheriff Davis himself. To the extent that the County issued paychecks to sheriff's deputies, maintained employment records of sheriff's deputies, and undertook other responsibilities that employers commonly perform, these functions are best characterized as administrative functions that Sheriff Davis delegated to the County to avoid the duplication of resources. Most importantly, there is nothing in the record to suggest Sheriff Davis could not perform these functions himself if he so chose or that in the performance of these functions the County exercised any actual control over the deputies. Accordingly, the County's motion for summary judgment (Docs. 20; 55; 57) is **GRANTED** as to the FLSA claim.

**C. State Law Contract Claims Against the Sheriff's Office and the County**

Finally, Plaintiffs bring state law claims asserting the County's Manual created a contractual relationship between Plaintiffs and both Sheriff Davis and the County.  Doc. 32 at 10-18.  But the Court will not address those claims here.

Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise jurisdiction as to those claims over which it has supplemental jurisdiction once it has dismissed the claims over which it had original jurisdiction.  In exercising its discretion, the court should consider comity, judicial economy, convenience, and fairness to the parties.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994) (finding that the test as outlined in *Gibbs* should be used in accordance with § 1367).  The Eleventh Circuit has recognized "when all federal claims are eliminated before trial, the *Gibbs* factors will ordinarily point toward dismissing the state claims as well." *Edwards v. Okaloosa Cnty.*, 5 F.3d 1431, 1433 (11th Cir. 1993) (citing *Carnegie-Mellon v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Because the Court is dismissing the FLSA claims—the claims over which it has original jurisdiction—the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.  *See Gibbs*, 383 U.S. at 726.  Accordingly, those claims will be dismissed without prejudice.[9]

## IV. CONCLUSION

For the reasons noted, Sheriff Davis's motion for summary judgment (Docs. 27; 56; 58) is **GRANTED** as to the FLSA claim because he is entitled to Eleventh Amendment immunity.  The County's motion for summary judgment (Docs. 20; 55; 57)

---

[9] It is clear to the Court that Plaintiffs' state law claims can be renewed.  **The parties shall confirm within ten days that the claims can be renewed**.  The Court will then dismiss this action.

is **GRANTED** as to the FLSA claim because the County is not an employer within the meaning of FLSA.  The remaining state law claims, therefore, are (1) Plaintiffs' breach of contract claim against Sheriff Davis, and (2) Plaintiffs' breach of contract claim against the County.

**SO ORDERED**, this 7th day of December, 2021.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT